JASON A. GELLER, SBN 168149
E-Mail: jgeller@fisherphillips.com
JUAN C. ARANEDA, SBN 213041
E-Mail: jaraneda@fisherphillips.com
BAILEY K. BIFOSS, SBN 278392
E-Mail: bbifoss@fisherphillips.com
BRANDON K. KAHOUSH, SBN 311560
E-Mail: bkahoush@fisherphillips.com
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
San Francisco, California 94111
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Attorneys for Defendants
TOPCON MEDICAL SYSTEMS, INC.;
TOPCON HEALTHCARE SOLUTIONS, INC.

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND COURTHOUSE

CARL ZEISS MEDITEC, INC.,

        Plaintiff,

        v.

TOPCON MEDICAL SYSTEMS, INC.,
TOPCON HEALTHCARE SOLUTIONS,
INC., TOBIAS KURZKE, GREG
HOFFMEYER, GENEVIEVE FAY,
KATALIN SPENCER, KEITH BROCK,
CHARLES GUIBORD, JR., JOSEPH
CICCANESI, MELISSA GOEKE, AND
DOES 1-50,

        Defendants.

Case No. 4:19-cv-04162 SBA

**DEFENDANTS TOPCON MEDICAL
SYSTEMS, INC. AND TOPCON
HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF CARL ZEISS
MEDITEC, INC.'S MOTION FOR
PRELIMINARY INJUNCTION AND
REQUEST FOR EXPEDITED DISCOVERY**

**Date:** **September 11, 2019**
**Time:** **2:00 p.m.**
**Location:** **Oakland Courthouse**
          **1301 Clay Street**
          **Oakland, CA 94612**

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.   STATEMENT OF FACTS ........................................................................1

    A.    TMS And THS Are Well-Established Competitors Of CZMI In The Ophthalmology Industry ...........................................................1

    B.    Topcon's Industry-Recognized Products Have Lawfully and Legitimately Competed with CZMI's Products Since At Least 2007.....................................2

    C.    As THS Has Grown, Several CZMI Employees Have Been Hired by Topcon ..........................................................................3

    D.    CZMI's Motion Presents No Credible Evidence Supporting Its Theory That Topcon Misappropriated Its Trade Secrets....................................4

        i.    The February 22, 2019 E-mail Exclusively Discusses Information Available in the Public Domain ...........................................4

        ii.    The White Paper That CZMI Contends Mr. Kurzke Wrote in March 2019 Does Not Exist and the Poster Does Not Evidence Any Trade Secret Use ...........................................5

        iii.   CZMI's Allegation that Topcon Says It "Cracked the Code" Is Not Credible Evidence ...........................................5

III.  PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION ABSENT A "CLEAR SHOWING" OF IRREPARABLE HARM AND A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS ........................5

IV.  CZMI IS UNLIKELY TO PREVAIL ON ITS TRADE SECRET CLAIM BECAUSE CZMI CANNOT SPECIFICALLY IDENTIFY ITS TRADE SECRETS OR DEMONSTRATE THAT TOPCON MISAPPROPRIATED THOSE SECRETS..........................................................................6

    A.    CZMI Cannot Succeed on Its Trade Secret Claims Because It Fails to Identify a Trade Secret with Reasonable Particularity .........................6

    B.    CZMI Cannot Succeed on Its Trade Secret Claims Because It Presents No Evidence That Topcon Misappropriated Its Confidential Information................8

        i.    The Fact that CZMI Former Employees Now Work for Topcon is Not Evidence of Misappropriation Because California Does Not Recognize the Inevitable Disclosure Doctrine....................................8

        ii.    The February 22, 2019 E-Mail is Not Evidence of Misappropriation Because the E-Mail Contains Exclusively Publicly-Available Information ...........................................9

        iii.   The March 2019 Poster is Not Evidence of Misappropriation and, Instead, is Sheer Speculation ...........................................9

V.   CZMI HAS FAILED TO SHOW AN IRREPARABLE INJURY .................10

    A.    There is No Presumption of Irreparable Harm in the Ninth Circuit ..................11

    B.    CZMI Does Not Face a Likelihood of Irreparable Harm ..................12

    C.    CZMI's Delay in Filing This Action Refutes a Finding of Any Alleged Irreparable Harm ..........................................................13

VI.  THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST STRONGLY DISFAVOR AN INJUNCTION ..........................................................13

VII.    EXPEDITED DISCOVERY IS NOT PROPER BECAUSE CZMI HAS FAILED TO IDENTIFY ITS TRADE SECRETS WITH REQUISITE PARTICULARITY AND NO URGENCY JUSTIFIES THE PROPOSED INVASION OF DEFENDANTS' PRIVACY ........................................................................................14

VIII.   CONCLUSION..............................................................................................15

OPP. TO PLAINTIFF'S MOTION FOR PRELIM. INJUNCATION AND REQUEST FOR EXP. DISCOVERY

FPDOCS 35883181.10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AccuImage Diagnostics Corp. v. Teraecon, Inc.*,
 260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................ 6

*Action Learning Sys., Inc. v. Crowe*,
 2014 WL 12564011 (C.D. Cal. Aug. 11, 2014) .............................................. 6, 7

*Am. LegalNet, Inc. v. Davis, Inc.*,
 673 F.Supp.2d 1063 (C.D. Cal. 2009) ............................................................. 15

*Bayer Corp. v. Roche Molecular Sys., Inc.*,
 72 F.Supp.2d 1111 (N.D. Cal. 1999) ............................................................ 9, 14

*Blackmon v. Tobias*,
 No. C 11-2853 SBA, 2011 WL 2445963 (N.D. Cal. June 16, 2011) .............. 13

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
 331 F.Supp.3d 977 (N.D. Cal. 2018) .............................................................. 10

*Caribbean Marine Servs. Co. v. Baldridge*,
 844 F.2d 668 (9th Cir. 1988) ...................................................................... 11, 12

*Delphon Indus. LLC v. Int'l Test Sols, Inc.*,
 No. 11-CV-1338-PSG, 2011 WL 4915792 (N.D. Cal. Oct. 17, 2011) ............ 13

*Dept't of Parks & Recreation v. Bazaar Del Mundo Inc.*,
 448 F.3d 1118 (9th Cir. 2006) .......................................................................... 11

*In re Excel Innovations, Inc.*,
 502 F.3d 1086 (9th Cir. 2007) .......................................................................... 12

*Express Scripts v. Lavin*,
 2017 WL 2903205 (E.D. Mo. Jul. 7, 2017) ....................................................... 7

*Flexible Lineline Sys., Inc. v. Precisions Lift, Inc.*,
 654 F.3d 989 (9th Cir. 2011) ............................................................................ 11

*Friends of the Wild Swan v. Weber*,
 767 F.3d 936 (9th Cir. 2014) ............................................................................ 11

*GEICO v. Nealey*,
 262 F. Supp. 3d 153 (E.D. Pa. 2017) ................................................................. 8

*GSI Tech., Inc. v. United Memories, Inc.*,
 C 13-1081 PSG, 2013 WL 12172990 (N.D. Cal. Aug. 21, 2013) ............... 11, 12

*Hiramanek v. Clark*,
No. C-13-0228 EMC, 2013 WL 5082640 (N.D. Cal. Sept. 13, 2013) ................................. 13

*Iconix, Inc. v. Tokuda*,
457 F.Supp.2d 969 (N.D. Cal. 2006) .................................................................................. 7

*KLA-Tencor Corp v. Murphy*,
09-01922 (RMW) (N.D. Cal. May 4, 2009), ECF No. 16 .................................................... 15

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
No. C 12-03762 SI, 2013 WL 244999 (N.D. Cal. Jan. 22, 2013), aff'd, 51 F.
App'x 298 (9th Cir. 2013) ................................................................................................. 13

*Larsen v. City of San Carlos*,
No. 14-CV-04731-JD, 2014 WL 5473515 (N.D. Cal. Oct. 28, 2014) ................................. 13

*Lear, Inc. v. Adkins*,
395 U.S. 670 (1969) ........................................................................................................ 14

*Lillge v. Verity*,
No. C 07-2748 MHP, 2007 U.S. Dist. LEXIS 73543 (N.D. Cal. Oct. 1, 2007) ................... 12

*Loop AI Labs, Inc. v. Gatti*,
195 F.Supp.3d 1107 (N.D. Cal. 2016) ............................................................................. 14

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) .......................................................................................................... 5

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
762 F.2d 1374 (9th Cir. 1985) ......................................................................................... 13

*Pellerin v. Honeywell Intern., Inc.*,
877 F.Supp.2d 983 (2012) ................................................................................................. 9

*In re Providian Credit Card Cases*,
96 Cal.App.4th 292 (2002) ................................................................................................ 9

*Religious Technology Center v. Netcom On-Line Communication*,
923 F.Supp. 1231 (N.D. Cal. 1995.) .................................................................................. 7

*Riley v. California*
(2014) 573 U.S. 373 ......................................................................................................... 15

*Segerdahl Corp. v. Ferruzza*,
2019 WL 77426 (N.D. Ill. Jan. 2, 2019) ............................................................................. 7

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) ...................................................................................... 15

*Sierra Club v. Hickel*,
    433 F.2d 24 (9th Cir. 1970) *aff'd on other grounds in Sierra Club v. Morton*,
    405 U.S. 727 1972 ........................................................................................... 5

*Stanley v. Univ. of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ......................................................................... 12

*Washington v. Lumber Liquidators, Inc.*,
    No. 15-CV-01475 (JST), 2015 WL 2089992 (May 5, 2015 N.D. Cal.) ............. 15

*WeRide Corp. v. Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) .................................................. 6, 14, 15

*Western Directories, Inc. v. Golden Guide Directories, Inc*,
    2009 WL 1625945, at *4-5 (N.D. Cal. June 8, 2009). ...................................... 11

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ...................................................................................... 6, 11

*Yamashita v. Wilbur-Ellis Co.*,
    No. C 06-01690 (WHA), 2006 WL 1320470 (N.D. Cal. May 15, 2006) ........... 14

**Statutes**

18 U.S.C. § 1839(3) .................................................................................................. 7

Cal. Civ. Proc. Code § 2019.210 .......................................................................... 6, 14

**Other Authorities**

Fed. R. Civ. P. 65 ...................................................................................................... 6

Fed. R. Civ. P. 65(d)(1) .............................................................................................. 6

Fed. R. Civ. P. 801 .................................................................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Despite conceding that it is lawful for an employee to move to a competitor company, Plaintiff Carl Zeiss Meditec, Inc. ("CZMI") initiates this lawsuit based on just that – the fact that several of its employees -- Tobias Kurzke, Greg Hoffmeyer, Genevieve Fay, Katalin Spencer, Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi, and Melissa Goeke -- took jobs with Topcon,[1] one of CZMI's competitors. What's more, without identifying a single specific trade secret that has been wrongfully taken or put to use by any of the eight individual defendants or Topcon, and based on nothing more than pure speculation and conjecture, CZMI asks this Court to stymie Topcon's legitimate and lawful competition and authorize intrusive and unnecessary discovery into those employees' personal devices. The generality of CZMI's claims, coupled with its attempts to obtain invasive discovery and its failure to provide concrete examples of any allegedly misappropriated trade secrets, suggest that CZMI's current motion is less a mission to protect intellectual property and more an attempt to secure competitive intelligence and marketplace advantages. Pursuant to Civil Local Rule 7-4, Topcon identifies the following issues to be decided: Whether CZMI has reasonably identified its trade secrets with specificity; whether CZMI has presented sufficient evidence to show that it is likely to prevail in demonstrating that Topcon misappropriated its trade secrets; and whether CZMI's 15-month delay in seeking relief and absence of evidenced demonstrating Topcon's alleged misappropriation precludes a finding of irreparable harm.

## II. STATEMENT OF FACTS

### A. TMS And THS Are Well-Established Competitors Of CZMI

Topcon Medical Systems ("TMS") is a well-respected developer and supplier of ophthalmic diagnostic equipment in the global medical device industry. (Declaration of Kristen Nelson ("Nelson Decl."), ¶ 3.) Topcon Corporation, which is TMS's parent corporation, was established in September 1932, and is a comprehensive ophthalmic device manufacturer. (*Id.* at ¶ 4.) It is a pioneer in the industry, introducing the world's first commercial back-of-the-eye spectral domain and swept source optical

---

[1] Topcon Medical Systems, Inc. ("TMS") is the American division of Topcon Corporation. Topcon Healthcare Solutions, Inc. ("THS") is the division of Topcon Corporation focused on software solutions (as opposed to hardware). Hereinafter, TMS and THS are collectively referred to as "Topcon."

OPP. TO PLAINTIFF'S MOTION FOR PRELIM. INJUNCTION AND REQUEST FOR EXP. DISCOVERY
FPDOCS 35883181.10

coherence tomography ("SS OCT") system in 2012, a major innovation in eye-care. (*Id.*) In 1970, Topcon Corporation established TMS, the Company's American division. (*Id.* at ¶ 5.) In 2018, Topcon Corporation established THS, which creates software solutions for the eye-care industry as the software and tele-ophthalmology arm of Topcon. (*Id.* at ¶ 6.) Since its incorporation in 2018, THS has remained in growth mode and has hired more than 100 employees globally. (*Id.* at, ¶ 7.) Topcon Corporation has nearly 4,000 employees total. (*Id.*)

**B. Topcon's Products Have Lawfully Competed with CZMI's Products Since At Least 2007**

The technology at issue in this dispute can be categorized as either hardware or software. Both CZMI and Topcon market commercially available OCT hardware designed to take MRI-like images of the human eye for diagnostic and treatment purposes. (Declaration of Tobias Kurzke ("Kurzke Decl."), ¶ 5.) Topcon released the world's first 3D OCT, the 3D OCT-1000, in 2006, *before* CZMI released an OCT product. (*Id.* at ¶ 6.) Topcon's current OCT product, released in 2013, is called Maestro. (*Id.* at ¶ 6.) CZMI's OCT product, the Cirrus, was released in 2007 and is still on the market. (*Id.* at ¶ 7.)

Topcon also has a commercially available SS-OCT product called the Triton, which was released in 2015 and was preceded by the Atlantis, released in 2012. (*Id.* at ¶ 8.) CZMI also produces a SS-OCT device, the Plex Elite 9000, which is not available commercially but is currently used for clinical research only. (*Id.* at ¶ 9.) CZMI does not currently have a commercially available SS-OCT device. (*Id.* at ¶ 9.) Like standard OCT devices, the Triton and the Plex Elite 9000 take cross-sectional images of the human eye. (*Id.* at ¶ 10.) However, the technology in the SS-OCT devices is newer, faster, and takes more detailed images than traditional OCT devices. (*Id.* at ¶ 10.) Unlike the Plex Elite 9000, the Triton also includes a fundus camera which can take a photo of the back of the eye. (*Id.* at ¶ 11.)

Topcon and CZMI also make competing software programs, which give eye care professionals the ability to collect, store, manage, analyze, and access digital ophthalmic data from various devices. (Kurzke Decl., ¶ 12.) Topcon acquired Anka Systems in about 2006, which manufactured a product called Eyeroute. (*Id.* at ¶ 13.) Topcon turned Eyeroute into Synergy in 2011, and then turned Synergy into Harmony (the current iteration of Topcon's data management software). (*Id.* at ¶ 13.) Said another way, Topcon has been selling a version of Harmony since 2007. (*Id.* at ¶ 13.) Topcon is in the process

of developing an extension of Harmony called Glaucoma Module, which has been under development since March 2018 and in close collaboration with one of the world's leading glaucoma experts, Dr. Donald Hood from Columbia University. (*Id.* at ¶ 14.) CZMI's competitor software product is called FORUM and was released in 2009. (*Id.* at ¶ 15.) Retina Workplace and Glaucoma Workplace are extensions of the FORUM product. (*Id.* at ¶ 15.) CZMI also maintains a consortium of researchers called the ARI Portal, a web site where members of the ARI Network from high-level research institutions can collaborate on the potential clinical uses of the Plex Elite 9000. (*Id.* at ¶ 16.) Topcon does not currently have a product that competes with the ARI Network or the ARI Portal and does not intend to develop one because Topcon's SS-OCT device is not directed toward high level researchers but is directed toward more general commercial application and everyday clinical care. (*Id.* at ¶ 17.)[2]

## C. As THS Has Grown, Several CZMI Employees Have Been Hired by Topcon

In the last year, Topcon has about 500 new employees, including about 300 new employees in the United States alone. (Nelson Decl., ¶ 8.) Of those new hires, eight employees left their employment with CZMI to join Topcon: Tobias Kurzke on April 30, 2018;[3] Greg Hoffmeyer on July 10, 2018; Katalin Spencer on August 8, 2018; Genevieve Fay on November 7, 2018;[4] Melissa Goeke on March 4, 2019; Keith Brock on March 11, 2019; Charles Guibord, Jr. on March 15, 2019; and Joseph Ciccanesi on March 18, 2019. (*Id.* at ¶ 8.) CZMI named these eight Topcon employees who formerly worked at CZMI as defendants in this action, including Ms. Goeke, who worked as an Inventory Analyst generating inventory reports and performing inventory audits for CZMI and now works for Topcon Positioning Systems (TPS) in the agriculture and infrastructure realm. (*Id.* at ¶ 9.)

At all relevant times, Topcon has respected the confidential information of third parties. Upon hire, Topcon employees hired from competing companies are required to disclose any non-disclosure agreements or confidentiality agreements they executed with their prior employer. (Nelson Decl., ¶ 10.)

---

[2] Plainly, CZMI's statement that Topcon "lacks products that compete successfully" with CZMI products is incorrect. (CZMI MPA 3:16.)

[3] When Mr. Kurzke joined Topcon in April 2018, Topcon was already producing and selling Maestro, Triton, and Synergy, the predecessor to Harmony. Topcon was also already working on the design of the Glaucoma Module. (Kurzke Decl., ¶ 18.) Moreover, CZMI has not properly described Mr. Kurzke's role at CZMI. By way of illustration only, Mr. Kurzke was never a Product Manager of FORUM. (*Id.* at ¶ 3.)

[4] In December 2018, one of Topcon's marketing executives, Bob Gibson, accepted employment with Carl Zeiss Meditec AG.

In early April 2019, CZMI contacted Topcon regarding the departure of its employees. (Declaration of Randy Samuels ("Samuels Decl."), ¶ 3.) Topcon assured CZMI that it respected CZMI's confidential information and intended to comply with its legal obligations. (*Id.*)

### D. CZMI's Motion Presents No Credible Evidence Supporting Its Theory That Topcon Misappropriated Its Trade Secrets

Despite ample opportunity to investigate its claims in the ***fifteen months*** since Mr. Kurzke left CZMI for Topcon, CZMI presents no credible evidence of misappropriation of confidential information or trade secrets. CZMI's motion rests on three points, all of which are faulty.

> #### i.  *The February 22, 2019 E-mail Discusses Information Available in the Public Domain*

On February 21, 2019, Mr. Hoffmeyer attended a public industry symposium, where he watched CZMI's Head of Global Diagnostics, Angelo Rago, present on the Plex Elite 9000. (Declaration of Greg Hoffmeyer ("Hoffmeyer Decl."), ¶ 3.)[5] During his public presentation, Mr. Rago said that an SS-OCT device was "three or four generations away" from mainstream use. Mr. Hoffmeyer presented immediately after Mr. Rago and said that Topcon had already sold 3000 Triton SS-OCTs globally. (Hoffmeyer Decl., Ex. 1.) ███████████████████████████████ ████████████████████████████████████████

The next day, Genevieve Fay, Topcon's Senior Director of Marketing and another former CZMI employee, responded to Mr. Hoffmeyer's e-mail. ████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ (Hoffmeyer Decl., Ex. 1.) ████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████ (*Id.*) Everything about CZMI which was discussed in the February 22-23, 2019 e-mail is publicly available information. (*Id.* at ¶ 6.)

///

---

[5] Because the Court has not yet ruled on Plaintiff's administrative motion to file under seal (ECF No. 8) and out of an abundance of caution, Topcon submits Exhibit 1 to the Declaration of Greg Hoffmeyer and corresponding portions of Mr. Hoffmeyer's declaration and this memorandum under seal. Topcon's filing of these papers under seal may not be construed as a concession that the documents are appropriate to be filed under seal and, in fact, Topcon opposed Plaintiff's motion. (ECF No. 21.)

ii.   *The White Paper That CZMI Contends Mr. Kurzke Wrote in March 2019 Does Not Exist and the Poster Does Not Evidence Any Trade Secret Use*

In March 2019, at the World Glaucoma Congress in Melbourne, Australia, Mr. Kurzke presented a poster on Topcon's Glaucoma Module, an extension of the product Topcon has sold some version of since 2007. (Kurzke Decl., ¶ 19.) The purpose of the poster was to demonstrate how Glaucoma Module will be *different* from CZMI's publicly available Glaucoma Workplace product. (*Id.* at ¶ 20.) In particular, the poster noted that Glaucoma Workplace might not be the "ideal format" for managing patient information and presented alternative ways of capturing and displaying such information. (*Id.* at ¶ 20.) Topcon was developing its Glaucoma Module before Mr. Kurzke ever became an employee there, and nothing about the poster's discussion of Glaucoma Workplace's format suggests that Glaucoma Module has been developed with any information taken from CZMI, let alone any CZMI trade secrets. (Kurzke Decl., ¶ 21.) Finally, despite CZMI's claims to the contrary, Mr. Kurzke has never prepared or disseminated any white paper on Glaucoma Workplace. (ECF No. 1 ("Complaint"), ¶ 90.)

iii.   *CZMI's Allegation that Topcon Says It "Cracked the Code" Is Not Credible Evidence*

Throughout its moving papers, CZMI suggests that someone at Topcon has told customers that they have "cracked the code" of CZMI's purported "dominance" in the industry by hiring employees away from CZMI. (ECF No. 9, Plaintiff's MPA in Support of Motion for Preliminary Injunction ("CZMI MPA"), ii:21-24, 4:16-20, 10:1-4.) As a preliminary matter, Topcon **objects** to this alleged statement as hearsay. (Fed. R. Civ. P. 801.) More importantly, though, this alleged statement is not supported by a shred of credible evidence. Indeed, CZMI presents this statement as fact, but it never once identifies the person who allegedly made the statement, the circumstances that surrounded it, or even where CZMI heard this unsubstantiated rumor. (Burton Decl., ¶ 17.)

## III.   CZMI CANNOT OBTAIN A PRELIMINARY INJUNCTION ABSENT A "CLEAR SHOWING" OF IRREPARABLE HARM AND A STRONG LIKELIHOOD OF SUCCESS

A preliminary injunction is "an extraordinary and drastic remedy" that should not be granted unless the movant carries its burden of persuasion *by a clear showing*. (*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) *Sierra Club v. Hickel*, 433 F.2d 24, 33 (9th Cir. 1970) *aff'd on other grounds in Sierra Club v. Morton*, 405 U.S. 727 1972).) To establish a right to a preliminary injunction here, CZMI

must demonstrate that: (1) it is likely to succeed on the merits of its breach of contract and/or trade secrets claim; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) the injunction is in its public interest. (*Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008).) A plaintiff must prove *each* of the above elements to be awarded a preliminary injunction, whereas CZMI fails to satisfy any of them. Therefore, the Court should deny CZMI's request for a preliminary injunction.

## IV. CZMI IS UNLIKELY TO PREVAIL ON ITS TRADE SECRET CLAIM BECAUSE CZMI CANNOT SPECIFICALLY IDENTIFY ITS TRADE SECRETS OR DEMONSTRATE THAT TOPCON MISAPPROPRIATED THOSE SECRETS[6]

Under the California Uniform Trade Secrets Act ("CUTSA") and the federal Defend Trade Secrets Act ("DTSA"), CZMI is unlikely to prevail on its trade secret claim because it has failed to show either (1) the existence of a trade secret; or (2) Topcon's misappropriation of a trade secret. (*AccuImage Diagnostics Corp. v. Teraecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003).)

### A. CZMI Fails to Identify a Trade Secret with Reasonable Particularity

To begin discovery and obtain a preliminary injunction, CZMI must first identify its alleged trade secrets with "reasonable particularity." (Cal. *Civ. Proc. Code* § 2019.210; *Action Learning Sys., Inc. v. Crowe*, 2014 WL 12564011, at *4 (C.D. Cal. Aug. 11, 2014); *WeRide Corp. v. Huang*, 379 F.Supp.3d 834, 845-46 (N.D. Cal. 2019).) CZMI cannot carry this "heavy burden … without specifying what, exactly, it is trying to protect." (*Action Learning Sys.*, 2014 WL 12564011, at *4.) Indeed, Federal Rule of Civil Procedure 65 states that, if the Court issues a preliminary injunction, it must do so by "describe[ing] in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." (Fed. R. Civ. P. 65(d)(1).) Without a clear and specific description of CZMI's alleged trade secrets, this Court cannot restrict Topcon from using them in "reasonable detail."[7]

---

[6] Although briefly referenced in its moving papers, CZMI failed to provide any argument to support its position that it is likely to succeed on the merits of its breach of contract claims. (CZMI MPA 5:19-20.) That alone is sufficient to doom its request for a preliminary injunction as to that claim. Moreover, CZMI cannot show that it is likely to succeed on the merits of its breach of contract claim because the non-solicitation agreement at issue is unenforceable. (*See WeRide Corp. v. Huang*, 379 F. Supp. 3d 834, 851-852 (N.D. Cal. 2019) (doubting enforceability of non-solicitation covenant). Topcon denies that any of its employees violated their non-solicitation agreement, denies that the non-solicitation agreement is enforceable, and intends to bring a Motion to Dismiss CZMI's claims on these grounds.

[7] CZMI suggests that, if Topcon raises "doubts as to the sufficiency of the trade secret disclosure at this stage … CZMI is willing to submit such evidence in a reply in support of this motion." (CZMI MPA, 11:5, fn. 2.) However, it is axiomatic that CZMI cannot present new evidence in support of its motion

Here, CZMI all but concedes that it has not sufficiently identified the subject trade secrets that Topcon allegedly misappropriated. (CZMI MPA, 11:5, fn. 2.) Instead, CZMI vaguely identifies the information that it seeks to protect as including:

> various types of information related to the development and commercialization of the CZMI ODx Products, including but not limited to, software, source code, data, formulas, specifications, drawings, workflows, screen shots, mockups, product road maps, requirements documents, application notes, and other information used for software development. (*See* Complaint ¶¶ 41-50.) The CZMI trade secrets also include various types of information related to the sales and marketing-related aspects of the CZMI ODx Products, including but not limited to business methods, marketing plans, customer lists, customer contact information, pricing guidelines (including margin data and other unique customer pricing information, such as discounts), historical pricing information, customers' business needs, customers' preferences, and methods for attracting and retaining customers in this nice [sic] industry. (CZMI MPA, 10:19-11:1.)

CZMI's boilerplate disclosure fails to specifically identify its alleged trade secrets, leaving Topcon and the Court to guess about "what, exactly, it is trying to protect." (*Action Learning Sys.*, 2014 WL 12564011, at *4.)

Moreover, CZMI's failure to identify its trade secrets with particularity casts doubt on the propriety of treating CZMI's alleged confidential information as a trade secret. In its Complaint, CZMI alleges that all individual defendants had access to CZMI's trade secrets. (Complaint, ¶ 8.) However, in order to establish trade secret status, the owner must take reasonable steps to protect the secrecy of the information in question, including, for example, by restricting access to the information to employees on a need-to-know basis. *See* 18 U.S.C. § 1839(3); *see also Segerdahl Corp. v. Ferruzza*, 2019 WL 77426 at *3 (N.D. Ill. Jan. 2, 2019); *Express Scripts v. Lavin*, 2017 WL 2903205 at *5, *6 (E.D. Missouri Jul. 7, 2017). Based on these principles, if it is true that Ms. Goeke, an Inventory Analyst, had access to CZMI's source code, then CZMI's failure to restrict access to that information would preclude a finding that CZMI's source code is worthy of trade secret status. (*See Religious Technology Center v. Netcom On-Line Communication*, 923 F.Supp. 1231, 1253 (N.D. Cal. 1995.) Thus, CZMI's failure to specifically delineate each trade secret in issue, who had access to it, and what steps were taken to protect the secrecy of that particular piece of information collectively prevent this

---

on reply. (*Iconix, Inc. v. Tokuda*, 457 F.Supp.2d 969, 975-76 (N.D. Cal. 2006).) In the event that the Court is inclined to accept such evidence, Topcon respectfully requests the right to submit a sur-reply responding to that evidence.

Court from concluding that any trade secrets actually exist. Furthermore, absent CZMI's ability to specifically identify the alleged trade secrets that it contends Topcon and its employees misappropriated, this Court cannot issue a specific order giving instruction on what acts Topcon is restrained from performing. Therefore, CZMI's motion must be denied.

CZMI's contention that it has protectable trade secrets is deficient for other reasons as well. Among these, CZMI's delay in seeking relief to protect its alleged trade secrets belies trade secret status. The case of *GEICO v. Nealey*, 262 F. Supp. 3d 153 (E.D. Pa. 2017), (dismissing DTSA claim on the basis that Plaintiff waited eight months to assert claim and noting that reasonable measures were not taken to protect the trade secret.

The case before this Court presents similar infirmities. CZMI alleges it "became suspicious that so many long-time and high-ranking employees involved in CZMI's ODx Products were leaving for Topcon by late 2018." (*See* Complaint at ¶ 13.) CZMI goes on to allege that its "suspicions were eventually confirmed by the accidental receipt of an internal Topcon email dated February 22, 2019." (*Id.* at ¶ 15.) CZMI was sufficiently concerned about its employees' departures that it contacted Topcon in April 2019. (Samuels Decl., ¶ 3.) Despite believing that Topcon was supposedly misappropriating its trade secrets by as early as the end of 2018, CZMI waited until July 19, 2019 to file its lawsuit. No company that actually believes that a competitor is using its trade secrets waits months to take action, and CZMI's laches thus belie its trade secret claims for the same reasons that a federal district court in Pennsylvania found sufficient to dismiss a DTSA claim brought by a similarly lackadaisical plaintiff.

**B. CZMI Presents No Evidence That Topcon Misappropriated Its Confidential Information**

Moreover, even if CZMI were able to specifically identify its trade secrets, it has absolutely no evidence that Topcon or any of its employees misappropriated those alleged trade secrets. In fact, none of CZMI's purported evidence supports its conjecture that a misappropriation has occurred.

*i. The Fact that CZMI Former Employees Now Work for Topcon is Not Evidence of Misappropriation Because California Does Not Recognize the Inevitable Disclosure Doctrine*

As a preliminary matter, CZMI's statement that "[i]t cannot be a coincidence that all of these employees … sequentially left for a close competitor" is not evidence. (CZMI MPA 9:5-9.) Rather, CZMI's statement is, at best, pure speculation; at worst, the statement reflects a flat-out conspiracy

theory. Although CZMI purports to recognize that "it is not unlawful for an employee to merely move to a competitor company," its argument that Topcon "appears poised" to release a product containing CZMI's alleged trade secrets stems from its unsupported suspicion around its former employees' move to Topcon. (CZMI MPA 3:19-20, 4:15-16.) However, California does not permit CZMI to try to prove trade secret misappropriation by suggesting that its former employees' new employment will inevitably lead them to rely on CZMI's trade secrets (the "inevitable disclosure doctrine"). (*Pellerin v. Honeywell Intern., Inc.*, 877 F.Supp.2d 983 (2012).) A threat of misappropriation cannot, as a matter of law, be inferred from the fact an employee, upon voluntarily terminating his employment, immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties. (*Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F.Supp.2d 1111, 1120 (N.D. Cal. 1999).)

Here, Plaintiff argues that "Topcon has only been able to access CZMI's trade secrets because of their scheme to poach the Former Employees, and induce them to breach their duty to maintain secrecy …" (CZMI MPA 8:15-18.) However, this argument cannot stand because it is based on the inevitable disclosure doctrine. As such, the fact that several employees left CZMI to work for Topcon is neither direct, nor circumstantial evidence of trade secret misappropriation and does not support CZMI's request for a preliminary injunction.

> ii. *The February 22, 2019 E-Mail is Not Evidence of Misappropriation Because the E-Mail Contains Exclusively Publicly-Available Information*

The issues caused by CZMI's failure to specifically identify its trade secrets are again displayed in CZMI's contention that Mr. Hoffmeyer's February 22, 2019 e-mail discusses "CZMI's trade secret and confidential product information." (CZMI MPA 9:11-13.) The e-mail does not discuss any of CZMI's trade secrets, and CZMI does not provide specific allegations demonstrating otherwise. Rather, the February 22-23, 2019 e-mail discusses information exclusively found in the public domain. (Hoffmeyer Decl., ¶ 6.) Thus, the information contained in the e-mail correspondence cannot be given trade secret status. (*In re Providian Credit Card Cases*, 96 Cal.App.4th 292, 304 (2002).)

> iii. *The March 2019 Poster is Not Evidence of Misappropriation and, Instead, is Sheer Speculation*

Mr. Kurzke's statement that Glaucoma Workplace was not "the ideal format for Glaucoma

suspects" does not demonstrate Topcon's misappropriation of CZMI's trade secrets. CZMI correctly notes that Topcon is developing a product that will compete with Glaucoma Workplace called Glaucoma Module. (Kurzke Decl., ¶ 14, 18.) However, design work on the Glaucoma Module was underway before Mr. Kurzke joined Topcon and is a mere extension of a product Topcon has sold since 2007. (*Id.* at ¶¶ 18, 20.)

CZMI's analysis of *BladeRoom Grp. Ltd. v. Emerson Elec. Co.* is inapplicable and does not save its speculative arguments. Preliminarily, the *BladeRoom* court considered defendant's motion for judgment as a matter of law after a jury returned a verdict for plaintiffs. (*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F.Supp.3d 977, 979-80 (N.D. Cal. 2018).) Accordingly, the court made no comment as to the usefulness of circumstantial evidence (or lack thereof) on a motion for a preliminary injunction. Further, in *BladeRoom*, plaintiff proved that defendant had used plaintiff's trade secrets by demonstrating nearly identical aspects of plaintiff and defendant's products. Here, there is no such proof. CZMI has not presented any declarations demonstrating the similarities between CZMI's alleged trade secrets and the new product Topcon is allegedly "poised" to release. CZMI has not presented a declaration demonstrating that Glaucoma Module is similar in any fashion to Glaucoma Workplace. CZMI has not offered a forensic report demonstrating that Topcon's employees took confidential information or trade secrets when they left CZMI's employ. CZMI has not offered any e-mails that Topcon employees sent to their personal e-mail accounts before leaving CZMI's employ. Even if the Court were to concede the value of circumstantial evidence on a motion for preliminary injunction, CZMI has none. It has only speculation and conjecture.

In sum, it is unlikely that CZMI will prevail on the merits of its trade secret claims because CZMI has not offered any evidence whatsoever in support of those claims. Accordingly, CZMI's Motion for a Preliminary Injunction should be denied on these grounds alone.

## V.    CZMI HAS FAILED TO SHOW AN IRREPARABLE INJURY

Beyond its inability to show a likelihood of success on the merits, CZMI is not entitled to the extraordinary remedy it seeks because it cannot demonstrate that it will suffer irreparable injury between the Court's hearing on this motion and trial. CZMI delayed taking any action for *fifteen months* after first becoming suspicious that its alleged trade secrets were in jeopardy - between April

2018 when Mr. Kurzke left the company and July 2019 when CZMI filed suit. Thus, CZMI cannot legitimately claim that the resolution of this matter is urgent.

Indeed, the Supreme Court has held "that plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is **likely** in the absence of an injunction." (*Winter,* 555 U.S. at 22.) To show this, CZMI must establish that the threatened injury is immediate, significant, and concrete or non-speculative. (*See Friends of the Wild Swan v. Weber*, 767 F.3d 936, 946 (9th Cir. 2014) (immediate); *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (non-speculative); *Dept't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1123-24 (9th Cir. 2006) (significant).) As discussed more fully below, CZMI cannot satisfy this heavy burden because the presumption of irreparable harm on which CZMI seeks to rely has been rejected by the Ninth Circuit and any harm CZMI alleges it would suffer is purely speculative. Accordingly, for this separate reason, CZMI's motion should be denied.

**A. There is No Presumption of Irreparable Harm in the Ninth Circuit**

CZMI broadly claims that this Court may presume that CZMI will suffer irreparable harm upon a showing that its proprietary information has been misappropriated.[8] However, the Ninth Circuit has rejected the presumption of irreparable harm in trade secret cases. (*GSI Tech., Inc. v. United Memories, Inc.*, C 13-1081 PSG, 2013 WL 12172990, at *11 (N.D. Cal. Aug. 21, 2013); *Flexible Lineline Sys., Inc. v. Precisions Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011).)

The unpublished decision on which CZMI relies to support its point is readily distinguishable. In *Western Directories, Inc. v. Golden Guide Directories, Inc.*, this Court presumed that plaintiff – defendant's former employer – suffered irreparable harm because defendant stole a computer from his former employer and commented that the computer had "everything he needed to run his new business." (*Western Directories, Inc*, 2009 WL 1625945, at *4-5 (N.D. Cal. June 8, 2009).) Because the former employer in *Western Directories* submitted credible evidence raising serious concerns as to whether defendant had already stolen a database of plaintiff's existing clients, this Court presumed plaintiff would suffer irreparable harm if the defendant interfered with plaintiff's business relationships.

---

[8] This argument is also unavailing because CZMI cannot show that its proprietary information has been misappropriated.

OPP. TO PLAINTIFF'S MOTION FOR PRELIM. INJUNCTION AND REQUEST FOR EXP. DISCOVERY

(*Id.* at 5-6.) Here, there is no evidence that Topcon has misappropriated or used any confidential information obtained from CZMI.

The other unpublished decision cited by CZMI, *Lillge v. Verity*, is similarly inapposite. In *Lillge*, plaintiff submitted evidence that it had already lost at least one client due to defendant's misappropriation, and risked losing more as defendant established its new business. (*Lillge v. Verity*, No. C 07-2748 MHP, 2007 U.S. Dist. LEXIS 73543 (N.D. Cal. Oct. 1, 2007).) Despite these facts, this Court did *not* presume irreparable harm. Instead, this Court found that plaintiff failed to prove a likelihood of success on the merits and, therefore, declined to reach a conclusion on the issue of irreparable harm.

**B. CZMI Does Not Face a Likelihood of Irreparable Harm**

Further, CZMI cannot show any potential of irreparable harm that rises above pure speculation. Although CZMI argues Topcon is unfairly developing a competing product containing CZMI's trade secrets and confidential information, it fails to identify the product that Topcon is allegedly "poised to" release or the manner in which that product purportedly contains CZMI's trade secrets. Topcon denies this allegation and counters that it competed lawfully with CZMI for decades before Mr. Kurzke joined the Company. (Kurzke Decl., ¶¶ 22-23.) Further, as discussed at length above, CZMI's reference to the February 22-23, 2019 e-mail and Mr. Kurzke's critical comment about Glaucoma Workplace do not support CZMI's argument. The e-mail contains exclusively publicly-available information. (Hoffmeyer Decl., ¶ 6.) Mr. Kurzke's comment that Glaucoma Workplace might not be the "ideal format" for a certain patient population does not suggest, much less prove, that Mr. Kurzke plans to develop a competing product with CZMI's trade secrets or confidential information. Not surprisingly, CZMI cites no case supporting the proposition that injunctive relief to avoid such speculative harm is appropriate. To the contrary, the law is clear that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." (*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1998); see also *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).)

CZMI also offers no explanation as to why monetary damages would be inadequate to compensate it for any injury. (*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (holding

that where monetary damages can compensate plaintiff, preliminary injunction is not justified.) In fact, "[e]conomic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award." (*Delphon Indus. LLC v. Int'l Test Sols., Inc.*, No. 11-CV-1338-PSG, 2011 WL 4915792, at *3 (N.D. Cal. Oct. 17, 2011).)

### C. CZMI's Delay in Filing This Action Refutes a Finding of Any Alleged Irreparable Harm

Finally, CZMI's claim of irreparable harm is undermined by its delay in filing for relief. A "long delay before seeking a preliminary injunction implie[s] a lack of urgency and irreparable harm." (*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *Larsen v. City of San Carlos*, No. 14-CV-04731-JD, 2014 WL 5473515, at *3 (N.D. Cal. Oct. 28, 2014) (three month too long); *Hiramanek v. Clark*, No. C-13-0228 EMC, 2013 WL 5082640, at *1 (N.D. Cal. Sept. 13, 2013) (one month too long).)

In this inquiry, the proper focus is on the point in time when plaintiff was "aware, or should have been aware" of the alleged wrongdoing. (*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2013 WL 244999, at *8 (N.D. Cal. Jan. 22, 2013), aff'd, 51 F. App'x 298 (9th Cir. 2013).) When a plaintiff suspects wrongdoing, the clock has already started ticking. (*See Blackmon v. Tobias*, No. C 11-2853 SBA, 2011 WL 2445963, at *4 (N.D. Cal. June 16, 2011).) Here, the clock began to tick in April 2018, *fifteen months* before CZMI initiated this lawsuit, when CZMI became suspicious about Mr. Kurzke's departure. (CZMI MPA 3:28-4:2.) Even after CZMI "confirmed" its suspicions in February 2019, it still waited *five months* to seek relief. (CZMI MPA 4:26-5:2.) CZMI even waited another *three months* after speaking with Topcon about the departure of its employees before filling suit. (Samuels Decl., ¶ 3.) Thus, CZMI's own admissions regarding their suspicions of alleged wrongdoing establish the absence of any urgency.

## VI. THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST STRONGLY DISFAVOR AN INJUNCTION

Because CZMI has not shown a likelihood of success on the merits or a significant risk of irreparable injury, this Court need not evaluate whether the balance of hardships favor an injunction or the public interest. However, even if CZMI *had* demonstrated likelihood of success on the merits (it has not), it must also show that the "balance of hardships tip sharply in its favor" and that an injunction

would promote the "public interest." (*Bayer Corp.*, 72 F.Supp.2d at 1120.) Although CZMI is responsible for showing *both* that the balance of hardships *and* the public interest weigh in its favor, the two concepts are interrelated. (*See Lear, Inc. v. Adkins*, 395 U.S. 670 (1969) ("[T]he equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain.").) CZMI has failed to meet its burden as to both.

The best way to promote the public interest is by encouraging fair and vigorous competition in the use of ideas. (*Yamashita v. Wilbur-Ellis Co.*, No. C 06-01690 (WHA), 2006 WL 1320470, at *8 (N.D. Cal. May 15, 2006).) Although CZMI claims that its request for an injunction is designed to maintain the status quo, that would not be the practical result of its requested order. (CZMI MPA 13:8-10.) Rather, by virtue of CZMI's failure to identify its allegedly protectable trade secrets and confidential information and where those secrets purportedly exist within Topcon's products, CZMI is actually asking this Court to prevent Topcon from releasing any new products. What's more, CZMI's request is based on no more than its unsupported conspiracy theory that one of Topcon's new products will contain CZMI's trade secrets or confidential information. Rather than attempting to preserve the status quo, CZMI seeks to stymie legitimate and lawful competition and gain insight into Topcon's future products.

## VII. EXPEDITED DISCOVERY IS NOT PROPER BECAUSE CZMI HAS FAILED TO IDENTIFY ITS TRADE SECRETS WITH REQUISITE PARTICULARITY AND NO URGENCY JUSTIFIES THE PROPOSED INVASION OF DEFENDANTS' PRIVACY

To commence discovery, CZMI must *first* identify its alleged trade secrets with "reasonable particularity" (*WeRide Corp.*, 379 F.Supp.3d at 846) (applying Cal. *Civ. Proc. Code* § 2019.210).) Here, CZMI all but concedes that its vague description of its trade secrets is insufficient to warrant the commencement of discovery. (CZMI MPA, 11:5, fn. 2.) In fact, the description supplied is insufficient for CZMI to begin discovery at all – much less on an expedited basis. (*Loop AI Labs, Inc. v. Gatti*, 195 F.Supp.3d 1107, 1116-17 (N.D. Cal. 2016).)

Moreover, no urgency justifies the broad proposed invasion contemplated by CZMI's proposed discovery requests. To obtain expedited discovery, CZMI must show that it will be irreparably harmed by delaying discovery until after the Rule 26 conference, and that any prejudice to Topcon is

outweighed by considerations of justice and CZMI's need for the discovery. (*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *Am. LegalNet, Inc. v. Davis, Inc.*, 673 F.Supp.2d 1063, 1066, 67 (C.D. Cal. 2009).) As discussed at length above, CZMI cannot establish urgency after waiting *fifteen months* after Mr. Kurzke's resignation to take steps to protect its alleged trade secrets. Further, the fact that CZMI has set forth no evidence supporting its claim of misappropriation distinguishes the instant matter from the cases on which CZMI relies. (*WeRide*, 379 F.Supp.3d at 854-55 (good cause for expedited discovery where defendant had already deleted computer files); *KLA-Tencor Corp v. Murphy*, 09-01922 (RMW) (N.D. Cal. May 4, 2009), ECF No. 16) (same); *Washington v. Lumber Liquidators, Inc.*, No. 15-CV-01475 (JST), 2015 WL 2089992, at *7 (May 5, 2015 N.D. Cal.) (request granted where defendants engaged in "deceptive behavior").)

In stark contrast to the absence of any need for the discovery, the prejudice to Topcon if the Court were to grant CZMI's request for expedited discovery would be substantial. To be sure, CZMI has asked the Court to require that Topcon submit its "electronic databases" to forensic inspection by CZMI without regard to the sensitive competitive information stored within those databases. While CZMI may very well desire to have unfettered access to a competitor's electronic database, the inappropriateness of such a request is obvious on its face, particularly when CZMI has utterly failed to identify a single specific piece of information that it is seeking. Furthermore, CZMI similarly disregards the significant privacy interest Topcon employees' have in their personal devices. (*See Riley v. California* (2014) 573 U.S. 373.)

## VIII. CONCLUSION

For the foregoing reasons, Topcon respectfully requests that this Court deny CZMI's motion in its entirety.

Dated: August 7, 2019

Respectfully submitted,

FISHER & PHILLIPS LLP

By: _____*/s/ Jason A. Geller*_____
      JASON A. GELLER
      BAILEY K. BIFOSS
      BRANDON K. KAHOUSH
      Attorneys for Defendants
      TOPCON MEDICAL SYSTEMS, INC.;