UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CARL ZEISS MEDITEC, INC., | Case No: 19-4162 SBA |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |
| vs. | |
| TOPCON MEDICAL SYSTEMS, INC., TOPCON HEALTHCARE SOLUTIONS, INC., TOBIAS KURKZE, GREG HOFFMEYER, GENEVIEVE FAY, KATALIN SPENCER, KEITH BROCK, CHARLES GUIBORD, JR., JOSEPH CICCANESI, MELISSA GOEKE, and DOES 1-50, | Dkt. 8, 9, 27, 37, 49 |
| Defendants. | |

This is an action for trade secret misappropriation and related claims brought by Plaintiff Carl Zeiss Meditech, Inc. ("CZMI") against the following Defendants: Topcon Medical Systems, Inc., and Topcon Healthcare Solutions, Inc. (collectively "Topcon"); and former CZMI employees, Tobias Kurkze, Greg Hoffmeyer, Genevieve Fay, Katalin Spencer, Terry Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi and Melissa Goeke ("Former Employees"), all of whom now work for Topcon.

The parties are presently before the Court on Topcon and the Former Employees' separate motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as CZMI's motion for preliminary injunction. Dkt. 37, 49, 9. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motions to dismiss and DENIES the motion for preliminary injunction as moot. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I.      BACKGROUND

## A.      FACTUAL SUMMARY

### 1.      CZMI's Alleged Trade Secrets

CZMI is market leader in the ophthalmic diagnostics industry ("ODx") and develops and supplies "ophthalmic diagnostic and therapeutic technologies to treat a wide variety of eye diseases."  Compl. ¶¶ 4-5, Dkt. 1.  Relevant here are products that are related to optical coherence tomography ("OCT").  Id. ¶¶ 6, 41.  OCT software provides a detailed image of the eye and is used for the identification and treatment of macular degeneration, glaucoma and other eye diseases.  Id. ¶ 42.  In recent years, the next generation of OCT, called Swept Source OCT ("SS-OCT"), has emerged.  Id. ¶ 43.

CZMI has invested in developing hardware and software to support OCT and SS-OCT, including but not limited to various software platforms such as Glaucoma Workplace, Retina Workplace and FORUM (collectively "ODx Products").  Id.  According to CZMI, it "owns many trade secrets regarding the … ODx Products, and specifically related to its significant efforts to develop, commercialize and deploy Glaucoma Workplace, Retina Workplace, FORUM, and related products and services to specific customers in the ophthalmic industry, including utilizing the ARI Network (powered by the ARI portal)."  Id. ¶ 47; see also id. ¶¶ 49-50.[1]

### 2.      Topcon's Recruitment of CZMI Employees

Beginning in or about mid-2018, Topcon began to recruit certain of CZMI's employees, allegedly with the intent of obtaining CZMI's trade secret and confidential information in order to develop its own products to compete with CZMI's ODx Products.  Id. ¶¶ 10-11.  The first to leave CZMI for Topcon was Mr. Kurzke, who worked at CZMI for thirteen years and was one of its main developers of ODx Products.  Id. ¶ 76.  He resigned on April 27, 2018.  Id. ¶ 77.  Next to leave was Mr. Hoffmeyer, another long-time

---

[1] The ARI Network is a software platform that enables users to provide and share data across all platforms powered by FORUM.  Compl. ¶ 7.

employee of CZMI, who resigned on July 6, 2018.  Id. ¶ 78.  While at CZMI, Mr. Hoffmeyer was a sales executive with responsibility for many of CZMI's ODx Products. Id.  After Mr. Hoffmeyer, Ms. Fay resigned on October 12, 2018.  Id. ¶ 79.  Ms. Fay was a Director of Marketing with responsibility for many of CZMI's ODx Products.  Id.

In addition to the three individuals discussed above, Topcon continued to recruit many CZMI employees with significant expertise in CZMI's ODx Products.  Id. ¶ 11. Topcon hired Messrs. Brock, Guibord, and Ciccanesi for product management and sales roles, Ms. Spencer for a marketing/trade show role and Ms. Goeke for an inventory role. Id.  All of the Former Employees allegedly possess significant trade secret and confidential information related to CZMI's ODx Products.  Id.  In addition, all of the Former Employees executed employment and/or confidentiality agreements with CZMI during their employment that required them not to disclose any potentially trade secret, confidential or proprietary information.  Id. ¶ 53.

**B.    PROCEDURAL HISTORY**

On July 19, 2019, CZMI filed suit in this Court alleging six claims for relief styled as follows:  (1) Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act ("DTSA"); (2) Aiding and Abetting Trade Secret Misappropriation Under the DTSA; (3) Trade Secret Misappropriation Under the California Uniform Trade Secrets Act ("CUTSA"); (4) Breach of Contract; (5) Tortious Interference with Prospective Economic Advantage; and (6) Unfair Competition Under California Business & Professions Code § 17200.  All claims are alleged against Topcon and the Former Employees, except for the breach of contract claim, which is alleged against the Former Employees only.

Shortly after filing its Complaint, CZMI filed a motion for preliminary injunction. Dkt. 9.[2]  As relief, CZMI seeks an order, inter alia:  enjoining Topcon from releasing "a

---

[2] In connection with the preliminary injunction motion, CZMI and Topcon filed administrative motions to seal certain exhibits.  Dkt. 8, 27.  Because the Court is dismissing the Complaint, the motion for preliminary injunction is denied as moot.  As such, the administrative motions to seal are likewise denied as moot.

competing product that contains CZMI's trade secret and confidential information";

enjoining the Former Employees from using such information; requiring Defendants to

delete any files or dispose of any devices pertaining to the aforementioned, anticipated

competing products; and requiring the Former Employees to return CZMI's trade secret and

confidential information.  In turn, Topcon and Formers Employees filed separate motions to

dismiss under Rule 12(b)(6).  Because the viability of the claims alleged in the Complaint is

a threshold issue, the Court addresses the motions to dismiss first.

## II.    LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a

cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal

theory."  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Rule 12(b)(6) is read

in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the

claim, but also grounds on which the claim rests.'"  Zixiang Li v. Kerry, 710 F.3d 995, 998-

99 (9th Cir. 2013) (quoting in part Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3

(2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570 (2007)).  The court is

to "accept all factual allegations in the complaint as true and construe the pleadings in the

light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of

Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  Where a complaint or claim is

dismissed, leave to amend generally is granted, unless further amendment would be futile.

Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

## III.    DISCUSSION

### A.    MISAPPROPRIATION OF TRADE SECRETS

CZMI's first and second claims allege violations of DTSA and its third claim alleges

a violation of CUTSA.  The elements of a claim for misappropriation of trade secrets under

DTSA and CUTSA are: (1) the plaintiff owned a trade secret; (2) the defendant acquired,

disclosed, or used the plaintiff's trade secret through improper means; and (3) the

defendant's actions damaged the plaintiff.  <u>Sargent Fletcher, Inc. v. Able Corp.</u>, 110 Cal.

App. 4th 1658, 1665 (2003) (setting forth the elements under CUTSA); <u>Alta Devices, Inc.</u>

<u>v. LG Elecs., Inc.</u>, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (stating that the elements

under DTSA and CUTSA are essentially the same).  Defendants argue that Plaintiff fails to

adequately identify the trade secrets at issue or their misappropriation (i.e., acquisition, use

or disclosure).

### 1.    Identification of Trade Secrets

A "trade secret" is defined as "information, including a formula, pattern,

compilation, program, device, method, technique or process," that (a) "[d]erives

independent economic value, actual or potential, from not being generally known to the

public or to other persons who can obtain economic value from its discourse or use"

and (b) "[i]s the subject of efforts that are reasonable under the circumstances to maintain

its secrecy."  Cal. Civ. Code § 3426.1(d); <u>see also</u> 18 U.S.C. § 1839(3) (defining "trade

secret" as "financial, business, scientific, technical, economic, or engineering information,

including patterns, plans, compilations, program devices, formulas, designs, prototypes,

methods, techniques, processes, procedures, programs, or codes …..").

"A plaintiff seeking relief for misappropriation of trade secrets 'must identify the

trade secrets and carry the burden of showing that they exist.'"  <u>Imax Corp. v. Cinema</u>

<u>Techs., Inc.</u>, 152 F.3d 1161, 1164 (9th Cir. 1998) (quoting in part <u>MAI Sys. Corp. v. Peak</u>

<u>Computer, Inc.</u>, 991 F.2d 511, 522 (9th Cir. 1993)).  A complaint need not "spell out the

details of the trade secret."  <u>Diodes, Inc. v. Franzen</u>, 260 Cal. App. 2d 244, 252 (1968).

However, to survive a motion to dismiss, "[t]he trade secret must be described 'with

sufficient particularity to separate it from matters of general knowledge in the trade or of

special knowledge of those persons who are skilled in the trade, and to permit the defendant

to ascertain at least the boundaries within which the secret lies.'"  <u>Altavion, Inc. v. Konica</u>

<u>Minolta Sys. Lab., Inc.</u>, 226 Cal. App. 4th 26, 43-44 (2014) (quoting in part <u>Diodes</u>, 260

Cal. App. 2d at 252); <u>accord</u> <u>Imax Corp.</u>, 152 F.3d at 1164-65; <u>e.g.</u>, <u>Diodes</u>, 260 Cal. App.

2d at 253 ("If the subject matter of the claimed trade secret is a manufacturing process, the

1  plaintiff must not only identify the end product manufactured, but also supply sufficient

2  data concerning the process, without revealing the details of it, to give both the court and

3  the defendant reasonable notice of the issues which must be met at the time of trial and to

4  provide reasonable guidance in ascertaining the scope of appropriate discovery.").

5         According to CZMI, the trade secrets at issue are identified in paragraphs 49 and 50

6  of the Complaint, which allege as follows:

> 49.  The CZMI trade secrets include *various types of information related to the development and commercialization of CZMI's ODx Products*, including but not limited to, software, source code, data, formulas, specifications, drawings, workflows, screen shots, mockups, product road maps, requirements documents, application notes, and other information used for software development.  In general, they consist of *all the documents that are used by CZMI's team that are not generally known that contribute to the commercialization of CZMI's ODx Products.*

> 50.  The CZMI trade secrets also include *various types of information related to the sales and marketing-related aspects of CZMI's ODx Products*, including but not limited to business methods, marketing plans, customer lists, customer contact information, pricing guidelines (including margin data and other unique customer pricing information, such as discounts), historical purchasing information, customers' business needs, customers' preferences, and methods for attracting and retaining customers in this nice [sic] industry.

18  Compl. ¶¶ 49, 50 (emphasis added).  CZMI asserts that these allegations are sufficient to

19  identify the "subject matter" of the purported trade secrets—i.e., CZMI'S ODx Products—

20  as well as the "categories of information" at issues—e.g., software, source code, etc.  Dkt.

21  41 at 10.

22         The Court finds that CZMI has not adequately discharged its obligation at the

23  pleading stage to describe the trade secret information at issue.  The pleadings only define

24  the purported trade secrets as "various types of information" that are (a) "related to the

25  development and commercialization of CZMI's ODx Products" and (b) "related to the sales

26  and marketing-related aspects of CZMI's ODx Products."  Id.   These descriptions are

27  impermissibly vague.  CZMI has done little more than set forth the purported trade secrets

28  in "broad, categorical terms" that are "more descriptive of the types of information that

generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets" that form the basis of the misappropriation of trade secrets claim.  See AlterG, Inc. v. Boost Treadmills LLC, 388 F. Supp. 3d 1133, 1145-46 (N.D. Cal. 2019) (finding insufficient allegations that the trade secrets are "related to [plaintiff]'s development of anti-gravity rehabilitation products" and "related to [plaintiff]'s design and development of its anti-gravity rehabilitation and training units"); e.g., Acrisure of California, LLC v. SoCal Commercial Ins. Servs., Inc., No. CV1810187CJCADSX, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019) ("Acrisure's broad reference to types of information like 'computer database programs,' 'prospects or projects,' and 'policies [sic] contracts'—with no indication of what specific programs, projects, or contracts are at issue—fails to identify a trade secret."); Bladeroom Grp. Ltd. v. Facebook, Inc., No. 15-1370 EJD, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) (finding that trade secret identification was inadequate where "allegations identifying the purported trade secret are vague and conclusory, and consist of a generic list of categories of various types of information"); but see Alta Devices, 343 F. Supp. 3d at 881 (finding sufficient allegations that identified "the exact technology in question").

CZMI's failure to adequately identify the trade secrets that form the basis of this action compels the dismissal of its claim for misappropriation of trade secrets, as alleged in the first, second and third claims for relief.  The Court, however, will grant CZMI leave to amend to allege, with greater specificity, the trade secrets that were allegedly misappropriated.

### 2.    Allegations of Misappropriation

The pleadings also fail to adequately allege that CZMI's trade secrets have been misappropriated.  Under DTSA and CUTSA, "misappropriation" is defined as either (1) the "*[a]cquisition* of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means," or (2) the "*[d]isclosure or use* of a trade secret of another without express or implied consent."  18 U.S.C. § 1839(5) (emphasis added); Cal. Civ. Code § 3426.1(b); see Whyte v. Schlage Lock Co., 101 Cal. App. 4th

1443, 1457 (2002) ("'Misappropriation' is, generally speaking, improper acquisition of a trade secret or its nonconsensual use or disclosure.") (citing Cal. Civ. Code § 3426.1(b) & Morlife, Inc. v. Perry 56 Cal. App. 4th 1514, 1523 (1997)).  "Improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  Cal. Civ. Code § 3426.1(a); 18 U.S.C. § 1839(6).  It does not include "reverse engineering," "independent derivation," or any other lawful means of acquisition.  Cal. Civ. Code § 3426.1; see also 18 U.S.C. § 1839.

CZMI alleges three separate instances of misappropriation, none of which is compelling.  First, CZMI alleges that Topcon informed CZMI customers that Topcon had "cracked the code" of CZMI's ODx Products because it had hired the Former Employees.  Dkt. 41 at 13 (citing Compl. ¶ 81).  A statement by Topcon that it had "cracked the code," is, at best, ambiguous—and certainly does not plausibly support an inference that Defendants improperly acquired CZMI's trade secrets or engaged in their non-consensual use or disclosure.  Moreover, the mere fact that Topcon hired former CZMI employees who allegedly have knowledge of CDMI's trade secrets is insufficient to demonstrate misappropriation.  Whyte, 101 Cal. App. 4th at 1457 (rejecting "inevitable disclosure" doctrine, which presumes that the disclosure of trade secrets is inevitable when a former employee accepts employment with a competitor).

Next, CZMI points to a presentation given by CZMI's former developer, Mr. Kurzke, in March 2019 at the World Glaucoma Congress in Melbourne, Australia.  Dkt. 41 at 13 (citing Compl. ¶ 91).  At the conference, Mr. Kurzke co-presented an Abstract (of a paper) critical of CZMI's Glaucoma Workplace ODx Product.  Compl. ¶ 91.  In particular, the Abstract questions whether the analysis and display algorithms provided by CZMI's product are "the ideal format" for patients who have diagnosis of Glaucoma Suspect (i.e., risk factors that may lead to glaucoma).  Id.  CZMI asserts that "ideal format" refers to a new competitive product being developed by Topcon "relying on the 'input' of the Former Employees."  Id. ¶ 92.  However, no facts are alleged to support CZMI's accusation that

"ideal format" refers to a new competing product under development by Topcon, let alone that Topcon is developing such product utilizing CZMI's trade secret information gleaned from the Former Employees. Nor are any facts alleged demonstrating that "input" from the Former Employees necessarily refers to CZMI's trade secret information.

Finally, CZMI contends that Defendants' misappropriation is shown by an internal email string between Topcon employees that was inadvertently sent to CZMI. Compl. ¶¶ 82-89. In the email string, two of the Former Employees—Mr. Hoffmeyer and Ms. Fay—are alleged to have "disclosed trade secrets and discussed ongoing misappropriation of trade secrets." Dkt. 41 at 13. The Complaint is devoid of facts to support this assertion. Instead, the pleadings make the conclusory accusation that Mr. Hoffmeyer and Ms. Fay: (1) "*referred to* CZMI's confidential and protected products, strategy, and marketing related to ODx products using SS-OCT data"; and (2) provided "*insight* on CZMI's confidential and protected products, strategy, and marketing related to ODx products using SS-OCT, including an analysis of an online whitepaper available on CZMI's website regarding ODx products." Id. ¶¶ 83-84 (emphasis added). But without any specification as to what particular trade secrets were "referred to" or what "insight" was provided, the Court cannot conclude that any misappropriation transpired. In view of CZMI's failure to allege sufficient facts to establish misappropriation, dismissal with leave to amend of the DTSA and CUTSA claims is appropriate. See Pellerin v. Honeywell Int'l, Inc., 877 F. Supp. 2d 983, 989-90 (S.D. Cal. 2012).

### B. TORTIOUS INTERFERENCE AND UNFAIR COMPETITION

Defendants move to dismiss the fifth claim for tortious interference with prospective economic advantage and sixth claim for unfair competition on the ground that they are preempted by CUTSA. "Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." Waymo LLC v. Uber Tech., Inc., 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citing Cal. Civ. Code § 3426.7; Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 236 (2010), disapproved on another ground by Kwikset

Corp. v. Sup. Ct., 51 Cal. 4th 310 (2011)).[3]  "It therefore supersedes claims ... based on the same nucleus of facts as trade secret misappropriation."  Id.; see SunPower Corp. v. SolarCity Corp., No. 12-CV-00694-LHK, 2012 WL 6160472, at *1 (N.D. Cal. Dec. 11, 2012) (dismissing claims for breach of confidence, tortious interference with prospective economic advantage, and unfair competition, among others, as superseded by CUTSA).

"At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action."  Waymo, 256 F. Supp. 3d at 1062 (citation omitted); see also SunPower, 2012 WL 6160472, at *3 (the supersession inquiry "focuses on whether other claims are not more than a restatement of the same operative facts supporting trade secret misappropriation") (internal quotation marks and citation omitted).  Where there is "no material distinction between the wrongdoing alleged," CUTSA supersedes the other claim.  SunPower, 2012 WL 6160472, at * 3.

### 1.    Tortious Interference with Prospective Economic Advantage

A claim of tortious interference with prospective economic advantage is comprised of: (1) an existing economic relationship or a relationship with the probability of future economic benefit; (2) defendant's knowledge of the relationship; (3) acts by the defendant designed to disrupt the relationship; (4) actual disruption; and (5) damages proximately caused by the act of defendants.  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003).

CZMI's interference claim alleges that the Former Employees *used CZMI's trade secrets* to communicate with the company's current and prospective customers to inform them that Topcon hired the Former Employees, who, in turn, "had 'cracked the code' of CZMI's ODx Products."  Compl. ¶¶ 143-145.  In other words, Topcon purportedly used trade secret information acquired from the Former Employees to develop ODx products and

---

[3] CUTSA does not affect contractual remedies, criminal remedies, or civil remedies "that are not based upon misappropriation of a trade secret."  Cal. Civ. Code § 3426.7(b).

thereby steal CDMI's market share.  Id. ¶ 145.  These allegations make clear that the interference claim arises from and is dependent on the same nucleus of facts that gives rise to the trade secret misappropriation claim.  Compare id. ¶¶ 143-145 with id. ¶¶ 81, 96.  The interference claim is therefore preempted by CUTSA.  See SunPower Corp., 2012 WL 6160472, at *13 (finding interference claim superseded by CUTSA where it was alleged that individual defendants obtained trade secret information while employed by the plaintiff and, after being hired by the entity defendant, used that information to steal the plaintiff's customers); see also Alta Devices, 343 F. Supp. 3d at 888 (finding UCL claim preempted because it was "directly dependent on trade secret misappropriation").  Accordingly, the Court dismisses the fifth claim with leave to amend to allege an interference claim that is not based on the same nucleus of facts CZMI's claims for trade secret misappropriation.

### 2.    Unfair Competition

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009).  An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008).

In its sixth claim for relief, CZMI alleges that Topcon hired the Former Employees "based on their knowledge of CZMI's trade secrets" and that Topcon used such information to develop products to unfairly compete against CZMI.  See Compl. ¶¶ 150-152.  The foundation of this claim is Defendants "improper acquisition of information."  Id. ¶ 150.  Thus, for the same reasons discussed above, the unfair competition claim arises from and is dependent upon the same nucleus of facts as the trade secret claim.  See, e.g., SunPower, 2012 WL 6160472, at *13 (UCL claim superseded where it was alleged that the defendants stole and used the plaintiff's proprietary information).  Accordingly, the Court dismisses the sixth claim with leave to amend to allege a UCL claim that is not based on the same nucleus of facts as CZMI's claims for trade secret misappropriation.

## C.    BREACH OF CONTRACT

In its fourth claim, CZMI alleges that the Former Employees breached their employment and confidentiality agreements by "improperly acquiring, using and/or disclosing CZMI's trade secret, confidential or proprietary information."  Compl. ¶ 137. To state a claim for breach of contract, express or implied, under California law, a plaintiff must allege: "(1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).

The Former Employees contend that CZMI's breach of contract claim should be dismissed on the ground that the Complaint fails to sufficiently identify the "trade secret, confidential or proprietary information" that was acquired, used or disclosed in violation of the subject employment and confidentiality agreements.  The Court agrees.  As discussed above, the pleadings fail to allege facts identifying the trade secret or confidential information that Defendants are alleged to have misappropriated from CZMI.  Similarly, the allegations of misappropriation are lacking.  The Court therefore dismisses CZMI's fourth claim, with leave to amend.  See, e.g., Pellerin, 877 F. Supp. 2d at 990 (dismissing counterclaim alleging that the employee breached his employment and non-disclosure agreements by using the company's trade secrets and confidential information to develop a competing manufacturing process, where the pleadings failed to allege "what the 'trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the agreements" or allege "facts to establish misappropriation"); accord Artec Grp., Inc. v. Klimov, No. 15-CV-03449-EMC, 2016 WL 8223346, at *4 (N.D. Cal. Dec. 22, 2016) (dismissing claim for breach of a non-disclosure agreement for failing to "identify with specificity what confidential information is at issue").

//

//

//

1    **IV.    <u>CONCLUSION</u>**

2        For the reasons stated above,

3        IT IS HEREBY ORDERED THAT:

4        1.      Topcon and the Former Employees' respective motions to dismiss are

5    GRANTED.  All claims alleged in the Complaint are dismissed with leave to amend.

6        2.      In light of the Court's ruling on the motions to dismiss, CZMI's motion for

7    preliminary injunction and the parties' respective administrative motions to seal are

8    DENIED as moot.

9        3.      CZMI shall file an amended complaint within 14 days from the date this

10   Order is filed that rectifies the deficiencies identified above.  The failure to timely file an

11   amended complaint will result in the dismissal of the Complaint with prejudice.

12       IT IS SO ORDERED.

13   Dated: 11/13/19

14                                          SAUNDRA BROWN ARMSTRONG
                                            Senior United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28