1  BIJAL V. VAKIL (SBN 192878)
   bvakil@whitecase.com
2  JEREMY T. ELMAN (SBN 223696)
   jelman@whitecase.com
3  JONATHAN E. KLAREN (SBN 325618)
4  jklaren@whitecase.com
   WHITE & CASE LLP
5  3000 El Camino Real
   Two Palo Alto Square, Suite 900
6  Palo Alto, CA  94306-2109
7  Telephone:  (650) 213-0300
   Facsimile:   (650) 213-8158
8  JESSICA L. LINEHAN (SBN 223569)
   linehan.jessica@dorsey.com
9  600 Anton Boulevard, Suite 2000
10 DORSEY & WHITNEY LLP
   Costa Mesa, CA 92626
11 Telephone:  (714) 800-1400
   Facsimile:   (714) 800-1499
12
   Attorneys for Plaintiff
13 CARL ZEISS MEDITEC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL ZEISS MEDITEC, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOPCON MEDICAL SYSTEMS, INC., TOPCON HEALTHCARE SOLUTIONS, INC., TOPCON CORPORATION, TOBIAS KURZKE, GREG HOFFMEYER, GENEVIEVE FAY, KATALIN SPENCER, KEITH BROCK, CHARLES GUIBORD, JR., JOSEPH CICCANESI, AND MICHAEL CHEN, <br><br> Defendants. | Case No. 4:19-cv-04162-SBA <br><br> **PLAINTIFF'S NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:       March 11, 2020 <br> Time:      2:00 p.m. <br> Location: Oakland Courthouse <br>                  1301 Clay Street <br>                  Oakland, CA  94612 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

TO:  THE HONORABLE JUDGE SAUNDRA BROWN ARMSTRONG, UNITED STATES DISTRICT JUDGE AND ALL PARTIES IN INTEREST AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on March 11, 2020 at 2:00pm or as soon as the Court can hear, Plaintiff Carl Zeiss Meditec, Inc. ("CZMI") will move, before the Honorable Judge Saundra Brown Armstrong of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, for a preliminary injunction against Defendants Topcon Medical Systems, Inc. ("TMS"), Topcon Healthcare Solutions, Inc. ("THS"), and Topcon Corporation (collectively "Topcon"), and Tobias Kurzke (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 65-2.

CZMI renews its motion for preliminary injunction on the basis of new, critical factual developments in this case. ███████████████████████████████████████████████ ███████████████████████████████ After months of stonewalling, the existence of these files was not disclosed until January 13, 2020. Defendants failed to produce any documents from this trove of stolen information until two weeks ago. Production of the files is ongoing and the full extent of Mr. Kurzke and Topcon's unlawful activity is yet to be determined.

However, we know that immediate injunctive relief is the only available remedy to prevent the imminent injury that will result if Topcon is permitted to launch ███████████ ███████████ using stolen confidential, proprietary and trade secret information. The parties have just begun fact discovery, and – already – the revelations demonstrate that CZMI is highly likely to succeed on the merits. Issuing a narrowly tailored preliminary injunction at this stage serves the public interest of protecting trade secrets, while preventing imminent and irreparable harm to CZMI. Moreover, an injunction poses no risk of prejudice to Topcon — who has elected not to make any effort to stop or otherwise curtail trade secret appropriation (by at least one employee) that it has direct knowledge of.

In light of these facts, preliminary relief is consistent with the spirit of both the Defend Trade Secrets Act of 2016 ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"), which exist to prevent the very harm that threatens to irreparably injure CZMI here. CZMI respectfully

| | |
|---|---|
| 1 | requests a preliminary injunction be issued in accordance with the DTSA, CUTSA, California law, |
| 2 | Federal Rule of Civil Procedure 65, this notice of motion, the accompanying memorandum of |
| 3 | points and authorities, the Declarations of Jeremy T. Elman (including Exhibits 1-2 filed under |
| 4 | seal), the Third Amended Complaint, all other pleadings filed in this action, and any arguments |
| 5 | made before the Court. |
| 6 | Respectfully submitted, |
| 7 | Dated: February 5, 2020   WHITE & CASE LLP |
| 9 | By: */s/ Jeremy T. Elman* |
| 10 | JEREMY T. ELMAN<br>Attorneys for Plaintiff |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | LEGAL STANDARD | 4 |
| LEGAL ARGUMENT | | 5 |
| | A. CZMI Is Likely to Succeed on the Merits of Showing Trade Secret Misappropriation and Breach of Contract | 5 |
| | B. CZMI Will Suffer Irreparable Harm | 9 |
| | C. The Balance of Hardships Strongly Favors CZMI | 10 |
| | D. The Public Interest Favors CZMI | 11 |
| IV. | INJUNCTION BOND | 11 |
| V. | CONCLUSION | 12 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alta Devices, Inc. v. LG Elecs, Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018) ........................................................................... 6

*Autodesk, Inc. v. Zwcad Software Co.*,
    No. 5:14-cv-01409, 2015 U.S. Dist. LEXIS 63610 (N.D. Cal. March 15, 2018) ........................ 6

*Bank of America, N.A. v. Lee*,
    No. CV 08-5546 CAS, 2008 U.S. Dist. LEXIS 110410 (C.D. Cal. Sept. 22, 2008) .................... 11

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
    873 F. Supp. 2d 1192 (N.D. Cal. 2012) ........................................................................... 6

*Comet Tech. USA, Inc. v. Beuerman*,
    No. 18-cv-01441-LHK, 2018 U.S. Dist. LEXIS 224356 (N.D. Cal. March 15,
    2018) ............................................................................................................. 7, 8, 10, 11

*Eldorado Stone LLC v. Renaissance Stone, Inc. Case No. 04cv2562 JM(LSP)*,
    2005 U.S. Dist. LEXIS 45238, 2005 U.S. Dist. LEXIS 45238 (S.D. Cal. May 31,
    2005) ................................................................................................................... 9

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016) ...................................................................... 10, 11

*Jorgensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003) ................................................... 11

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    941 F.2d 970 (9th Cir. 1991) ........................................................................................ 10

*Lillge v. Verity*,
    Case No. C 07-2748 MHP, 2007 U.S. Dist. LEXIS 73543 (N.D. Cal. Oct. 1,
    2007) ................................................................................................................... 9

*Posdata Co. v. Seyoung Kim*,
    Case No. C-07-02504 RMW, 2007 U.S. Dist. LEXIS 48359 (N.D. Cal. 2007) ........................ 9

*Pyro Spectaculars North, Inc. v. Souza*,
    861 F. Supp. 2d 1079 (E.D. Cal. 2012) ...................................................................... 10, 11

*Rockwell Collins, Inc. v. Wallace*,
    Case No. SACV 17-01369 AG, 2017 U.S. Dist. LEXIS 190361 (C.D. Cal. Nov.
    10, 2017) .............................................................................................................. 6

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ........................................................................................ 10

*TMX Funding, Inc. v. Impero Techs., Inc.*,
   No. C 10-00202 JF (PVT), 2010 U.S. Dist. LEXIS 60260 (N.D. Cal. June 8,
   2010) .................................................................................................................................. 6

*Waymo LLC v. Uber Techs., Inc.*,
No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 73843 (N.D. Cal. May 11, 2017)
   ........... ...................................................................................................................... 5, 9, 10

*Western Directories, Inc. v. Golden Guide Directors, Inc.*,
   No. C 09-1625 CW, 2009 ................................................................................................... 9

**Other Authorities**

Fed R. Civ. P. 65(c) ..................................................................................................................... 11

I.   INTRODUCTION

Topcon must not be permitted to launch ███████████████████████████ Defendants reached this stage of development of its competing ODx software product through unlawful means. Topcon orchestrated a scheme to solicit the Former Employees, most notably Mr. Kurzke, to join Topcon and develop products to compete in the small and highly technical ophthalmic industry. Then, to make up for CZMI's many years of expensive, time-consuming research and development head start, Topcon decided to cheat. It poached Mr. Kurzke and other former CZMI employees with CZMI proprietary, confidential and trade secret information ("CZMI Trade Secrets") regarding its ODx software products. Now, Topcon is mere months from launching its unlawfully developed product using this stolen information. This must be stopped.

Courts in this District routinely grant preliminary injunctive relief when former employees steal confidential files to assist a competitor under strikingly similar circumstances. *See Weride Corp v. Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019) (granting injunction when defendant downloaded files to a personal storage device); *Comet Techs. USA, Inc. v. Beuerman*, No. 18-cv-01441-LHK, 2018 U.S. Dist. LEXIS 224356, at *12-13 (N.D. Cal. March 15, 2018) (same); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (same). This case is no exception.



The time is ripe to enjoin Defendants. Even limited discovery has revealed that Mr. Kurzke and other former CZMI employees regularly disclose CZMI Trade Secrets to Topcon to accelerate development of directly competing products. This includes, but is not limited to, ███████ ████████████████████████████. *See* Kurzke Dep. Tr. (excerpts), Dkt. 127-5 (provisionally

filed under seal) (Mr. Kurzke testified that he looked at files on the Kurzke Hard Drive after leaving CZMI to acquire ██████████████████████████████████████████████████████████████████████████████████████████ Defendants have only disclosed an initial production, but it has revealed enough already.

The Court must enjoin Topcon before it is too late. Topcon's first of many potential products to misappropriate CZMI Trade Secrets ████████████████████████████ To prevent irreparable injury to Topcon and the entire ophthalmic industry, CZMI requests that the Court issue an injunction: 1) preventing Mr. Kurzke and any former CZMI employee from disclosing CZMI Trade Secrets; 2) ordering the immediate return of all stolen CZMI Trade Secret information to CZMI, including but not limited to the Kurzke Hard Drive and all duplicates, copies, or replications of files therein; 3) enjoining Defendants ████████████████████████████████████████████ ████████████████ potentially misappropriating CZMI Trade Secrets, until at least resolution of this dispute. CZMI further requests any additional or alternative relief the Court may deem appropriate.

## II. FACTUAL BACKGROUND

For brevity, CZMI incorporates by reference all of the factual allegations in the Third Amended Complaint. Dkt. No. 127. Former CZMI employees John Trefethen and Grant Schmid, who now work for Topcon Healthcare Solutions ("THS") (founded in 2018), recruited the Former Employees in 2018 and early 2019. Mr. Trefethen, Mr. Schmid, and Topcon knew that the Former Employees possessed a wealth of CZMI Trade Secrets which would allow Topcon to quickly launch a competing ODx product. This scheme was deliberate, calculated and unlawful.

The four senior Topcon employees involved with ███████████ at Topcon – John Trefethen (Vice-President of Marketing and Product Design), Tobias Kurzke (Director of Software Products), Keith Brock (Sr. Director of Global Product Management), and Genevieve Fay (Sr. Director of Marketing) – all are former CZMI employees who worked with or oversaw Glaucoma Workplace in some form at CZMI. They communicate constantly: at least weekly and sometimes daily, according to Ms. Fay. *See* Elman Declaration in Support of Plaintiff Carl Zeiss Meditec,

Inc.'s Renewed Motion for Preliminary Injunction ("Elman Decl. 2")., Ex. 2, at 341:5-9; 378:3-6. Mr. Trefethen recruited them all to Topcon.

After months of stonewalling, baseless objections, and contradictory statements, Defendants have finally revealed the veracity of CZMI's claims. Mr. Kurzke, presently in charge of all of Topcon's software ODx Products, ███████████████████████████████████████ ███████████. *See* Kurzke Dep. Tr. (excerpts), at 93:7-14; 97:2-13, Dkt. No. 127-05 (provisionally filed under seal). He neither informed, nor sought permission from, CZMI. Mr. Kurzke, then a CZMI Senior Product Manager, ███████████████████████████████████ ███████████████████████████ *See* Kurzke Hard Drive File Listing, Dkt. No. 127-04 ███████████████████████████ He neither informed, nor sought permission from, CZMI. *Id.* This occurred *four days after* he accepted Topcon's offer of employment, prior to giving notice to CZMI of his departure, and two weeks before he left CZMI ███████████████████ ███████████████████████████████████ Mr. Kurzke testified ███ ███████████████████████████ after he joined Topcon. *See* Kurzke Dep. Tr. (excerpts), at 250:22-253:14, 311:10-312:11, Dkt. No. 127-05. Files on the Kurzke Hard Drive were accessed less than two weeks prior to Topcon ███████████████████████████████ *See* Kurzke Hard Drive File Listing, Dkt. No. 127-04. This conduct directly violated state and federal law and his TSCIP Agreement. *See* Kurzke Signed TSCIP Agreement, Dkt. No. 127-14.

The timeline is clear and indisputable. THS was founded in February 2018, Mr. Kurzke left CZMI in April 2018 ███████████████████████ Mr. Kurzke is given a six month deadline to complete a product to compete with Glaucoma workplace that same month, Mr. Kurzke drafts the Rev. A of Retina document in September 2018, and the first public announcement of what has become ███████████ was submitted to the World Glaucoma Congress in October 2018:

REDACTED

In spite of all this, Defendants have continually denied these allegations and stonewalled CZMI's attempts to enforce its rights. Indeed, they described the allegations —now substantiated by their own evidence – as "a conspiracy theory." Empl. Defs. Motion to Dismiss, Dkt. No. 49. Defendants described Mr. Kurzke's now-admitted theft of CZMI Trade Secrets as "bald assumptions and speculations, not actual facts." Topcon's Motion to Dismiss, Dkt. No. 104. Topcon has generically asserted it "lacks information to form a belief" regarding the theft and misappropriation CZMI Trade Secrets in Mr. Kurzke's possession, which he used during his time at Topcon. Topcon's Answer, Dkt. No. 122. Despite these attempts to skew reality, the facts now demonstrate that (i) Mr. Kurzke, by his own admission, ████████████████████████████████████████ ████; and (ii) Defendants were aware of the existence of ██████████ for nearly the entirety of this litigation. Mr. Kurzke testified that he submitted ██████████████████████ at the outset of this litigation in summer 2019. See Kurzke Dep. Tr. (excerpts), Dkt. 127-5 (provisionally filed under seal). Defendants have failed to substantively address CZMI's claims whatsoever during this litigation despite being in possession of what courts in this District recognize as clear and convincing evidence of trade secret misappropriation.

Topcon and the Former Employees refused to disclose the existence ████████ until January 13, 2020. CZMI had to move to compel Mr. Kurzke's deposition. See Dkt. Nos. 89, 95. Last week, when Defendants finally produced Mr. Kurzke for his deposition, ████████ ████████████████████████████████████████████████████████████████████████ Kurzke Dep. Tr. (excerpts), Dkt. 127-5 (provisionally filed under seal). Mr. Kurzke further admitted that Topcon is attempting to break CZMI's "dominance" in the market through a product called "Glaucoma Module" which he is developing that is remarkably similar to CZMI's Glaucoma Workplace for which Mr. Kurzke served as the Product Manager. See id. CZMI's claims since the inception of this litigation are finally being realized. Topcon's continued unlawful conduct must be stopped.

### III. LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance

of the equities tips in its favor; and (4) an injunction is in the public interest. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1020 (9th Cir. 2016) (citing *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

Courts may "balance the elements of the preliminary injunction test . . . so that a strong showing on one element may offset a weaker showing on another." *Weride*, 379 F. Supp. 3d at 845 (N.D. Cal. 2019) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Accordingly, a preliminary injunction may be granted on a showing that serious questions are raised and the balance of the hardships tips sharply in favor of the moving party. *Id*. In a matter involving trade secret misappropriation, "courts in this district have presumed that Plaintiff will suffer irreparable harm if its proprietary information is misappropriated." *Comet Techs.*, 2018 U.S. Dist. LEXIS 224356, at *13-14 (citing *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF (PVT), 2010 U.S. Dist. LEXIS 37064, at *24 (N.D. Cal. Mar. 18, 2010); *W. Directories, Inc. v. Golden Guide Directors, Inc.*, No. C 09-1625 CW, 2009 LEXIS 52023, at *18-19 (N.D. Cal. June 8, 2009)).

Here, all four factors are satisfied. Irrefutable evidence showing Defendants' misappropriation of CZMI Trade Secrets has come to light. Federal and state law ensure the protection of trade secrets to prevent this exact conduct. Irreparable harm is virtually certain if Topcon is not enjoined from launching their unlawfully developed product, and the public is served by enforcing laws designed to protect trade secrets like CZMI's. Accordingly, preliminary injunctive relief is proper.

**LEGAL ARGUMENT**

**A.  CZMI Is Likely to Succeed on the Merits of Showing Trade Secret Misappropriation and Breach of Contract**

Under both federal and state law, establishing trade secret misappropriation requires proving (1) a trade secret (*i.e.*, information which derives independent economic value from its secrecy and is subject to reasonable efforts to maintain secrecy) exists; and (2) it was misappropriated (*i.e.*, it was acquired, learned, used, or disclosed through improper, unlawful means by a party who knew that acquisition or disclosure was unlawful and/or impermissible). *Waymo*, 2017 U.S. Dist. LEXIS 73843,

at *22-23 (citing 18 U.S.C. § 1839; Cal. Civ. Code § 3426.1). CZMI is likely to prevail under both standards.

First, just like in *Weride*, *Comet Techs.*, and *Henry Schein* – recent cases in this District concerning substantially similar issues – the information possessed by the Defendants qualifies as trade secret. The information contains virtually everything used by CZMI to create their software ODx Products. Mr. Kurzke admitted ███████ contained all of the information he had while he served as Senior Product Manager at CZMI. *See* Notice of Manual Filing, Dkt. No. 129. Based on the very limited amount of documents produced from the Kurzke Hard Drive to date, the documents include entire business plans, launch plans, marketing plans, strategy documents, pricing information and sales data for CZMI products. Moreover, based on the file directory produced by Mr. Kurzke, there are hundreds if not thousands more entire documents specifically pertaining to CZMI ODx products contained on the Kurzke Hard Drive yet to be produced. *Id.* These file names match exactly files of the same nature currently in the possession of CZMI. ███████

███████ *See* Kurzke Hard Drive File Listing, Dkt. No. 127-04. The information produced to date clearly qualifies for trade secret protection, and this is just the tip of the iceberg of Defendants' improper possession of CZMI Trade Secrets, as Defendants have only disclosed approximately 3% of these documents

CZMI undisputedly provided sufficient identification of the CZMI Trade Secrets so that the Court and Defendants may ascertain the boundaries within which the trade secrets lie. *See Alta Devices, Inc. v. LG Elecs, Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018); *TMX Funding*, 2010 U.S. Dist. LEXIS 60260, at *10; *Rockwell Collins, Inc. v. Wallace*, Case No. SACV 17-01369 AG (JCGx), 2017 U.S. Dist. LEXIS 190361, at *5 (C.D. Cal. Nov. 10, 2017). No Defendant has challenged the highly detailed, 65-page trade secret disclosure produced by CZMI on December 12, 2019, listing 115 trade secrets related to Glaucoma Workplace and the CZMI FORUM software. CZMI Trade Secret Disclosure, Dkt. 127-3; *see also Autodesk, Inc. v. Zwcad Software Co.*, No. 5:14-cv-01409, 2015 U.S. Dist. LEXIS 63610, at *14-15 (N.D. Cal. May 13, 2015); *Brocade Commc'ns Sys., Inc. v.*

*A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214-15 (N.D. Cal. 2012) ("This type of information is routinely given trade secret protection.").

Second, CZMI takes reasonable efforts to maintain the secrecy of this information as detailed in the Third Amended Complaint ("TAC"). Dkt. No. 127, at ¶ 51, Exs. 11-19, Dkt 127-13 – 127-17. CZMI uses internal confidentiality policies, limits access to this information, executes confidentiality agreements (*see* Dkt. 127-14), and conducts exit interviews. During these exit interviews, employees are required to sign and acknowledge their confidentiality obligations and assent to not take CZMI files. Mr. Kurzke signed this very agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Elman Decl. 2, Ex. 1. Courts in this District have found such measures appropriate efforts to maintain secrecy. *See Comet Techs*, 2018 U.S. Dist. LEXIS 224356, at *8-9 (having internal policies to protect sensitive information non-disclosure agreements, limiting access, and conducting exit interviews that stress departing employees' confidentiality obligations, weighs towards finding reasonable efforts to maintain secrecy). CZMI limits access to all of the information at issue in this case in a similar manner as the successful plaintiffs in *WeRide, Comet Techs.* and *Henry Schein*. *See* Kurzke Dep. Tr. (excerpts), Dkt. 127-5 (provisionally filed under seal); Fay Dep. Tr., Elman Decl. 2, Ex. 2, at 121:10-122:21; 141:7-142:18; 143:10-145:4. It is undisputed CZMI adequately protects the asserted CZMI Trade Secrets.

Third, CZMI will likely prevail in showing misappropriation as the trade secrets were acquired improperly. Previously, the Court previously declined to find existing evidence of misappropriation "compelling." *See* Dkt. No. 75, at 8:10. Yet, at the same time Defendants represented to the Court that CZMI's claims were a "conspiracy theory," they were in fact in possession of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Kurzke Dep. Tr. (excerpts), Dkt. 127-5 (provisionally filed under seal). They refused to disclose the Kurzke Hard Drive, represented to the Court and CZMI that the claims at-issue were unfounded, fought tooth and nail against discovery (and still do), and now seek to downplay the reality that CZMI Trade Secrets are being used to develop and launch Topcon products. Moreover, each individual Defendant was contractually obligated to return any CZMI Trade Secrets – Mr. Kurzke had admittedly not done so to date. The evidence already in the record is compelling, and a jury is likely to find in CZMI's favor.

1          Indeed, courts have found ▮▮▮▮▮▮▮▮▮▮ to be evidence of
2 misappropriation sufficient for a preliminary injunction. See Weride, 379 F. Supp. 3d at 845; Comet
3 Techs., 2018 U.S. Dist. LEXIS 224356, at *12-13; Henry Schein, 191 F. Supp. 3d at 1077. Like in
4 those cases, here Mr. Kurzke had no right to ▮▮▮▮▮▮▮▮▮▮. It violated his TSCIP
5 Agreement to do so. See Kurzke Signed TSCIP Agreement, Dkt. No. 127-14. In fact, Mr. Kurzke
6 made direct misrepresentations to CZMI when leaving that he was not in possession of ▮▮
7 ▮▮▮▮▮▮▮▮▮▮ during his employment with Topcon. Compare
8 id. with Kurzke Dep. Tr. (excerpts), Dkt. 127-5 (provisionally filed under seal). Ms. Fay, his
9 current Topcon colleague, testified that she understood her confidentiality obligations to CZMI, and
10 therefore did not take anything. See Elman Decl. 2, Ex. 2, at 176:1-178:21; 192:20-24. She stated
11 she understood not to take information like that included on the Kurzke Hard Drive. Id. Mr.
12 Kurzke's theft and accompanying misrepresentation qualifies as "[a]cquisition of a trade secret by
13 improper means includes theft, bribery, misrepresentation, breach or inducement of a breach of a
14 duty to maintain secrecy, or espionage through electronic or other means." See Chartwell Staffing
15 Servs. v. Atl Solutions Grp. Inc., No. 8:19-cv-00642-JLS-JDE, 2019 U.S. Dist. LEXIS 84723, at
16 *22-24 (C.D. Cal. Mar. 20, 2019) (citing DVD Copy Control Assn., Inc. v. Bunner, 31 Cal. 4th 864,
17 875 (2003)); see also 18 U.S.C. § 1839(6) (defining "improper means" in nearly identical manner).
18          In addition, ▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮ Kurzke Dep.
20 Tr. (excerpts), Dkt. 127-5 (provisionally filed under seal). Yet, "[c]ourts have found that in similar
21 circumstances, deleting files from the computers allegedly used to misappropriate trade secrets is
22 evidence of the alleged misappropriation." See Weride, 379 F. Supp. 3d at 848 (citations omitted).
23 Thus, Mr. Kurzke's ▮▮▮▮▮▮▮▮▮▮ does nothing to limit
24 his liability or demonstrate his innocence.
25          CZMI is likely to succeed on the merits. The existence of ▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮ and the circumstances surrounding his departure are all compelling
27 evidence. Permitting this ▮▮▮▮▮▮ to go unabated would permit the very type of trade secret
28 misappropriation courts have enforced federal and state law to prevent. See Comet Techs., 2018 U.S.

Dist. LEXIS 224356, at *9-10 ("A collection of data that allows the holder to recreate one of Plaintiff's top technologies derives its value from not being generally known, because Plaintiff's competitive edge would evaporate if the public and its competitors could easily recreate its products."); *Eldorado Stone LLC v. Renaissance Stone, Inc.*, Case No. 04cv2562 JM(LSP), 2005 U.S. Dist. LEXIS 45238, at *10-12 (S.D. Cal. May 31, 2005) (finding misappropriation of a trade secret for preliminary injunction purposes where information an employee copied showed the exact way that the plaintiff made each of its products).

There are unanswered questions as to the extent and precise nature of Defendants' use of ▮ ▮ and CZMI Trade Secrets. However, injunctive relief is appropriate where a competitor is poised to imminently release a competing product that would cause irreparable harm. *See Posdata Co. v. Seyoung Kim*, Case No. C-07-02504 RMW, 2007 U.S. Dist. LEXIS 48359, at *26-27 (N.D. Cal. 2007) (issuing TRO even where there were "serious questions" about whether the trade secret information was actually used). CZMI is not required to prove its case at this stage. *Weride*, 379 F. Supp. 3d at 848-49 ("At the preliminary injunction stage, WeRide must meet the high standard of showing it is likely to succeed on the merits, but it is not required to prove its case."). Continued discovery will permit CZMI to do so, and an injunction will merely maintain the status quo in the interim.

### B. CZMI Will Suffer Irreparable Harm

CZMI will endure irreparable injury due to Topcon's unfair development of a competing product, which is slated for release in June or July 2020. Courts "presume that Plaintiff will suffer irreparable harm if its proprietary information is misappropriated." *W Directories*, 2009 U.S. Dist. LEXIS 52023, at *18-19 (citing *Lillge v. Verity*, Case No. C 07-2748 MHP, 2007 U.S. Dist. LEXIS 73543, at *20 (N.D. Cal. Oct. 2, 2007). Providing trade secrets to a competitor provides them with any unfair advantage that cannot be remedied by monetary damages. *Waymo*, 2017 U.S. Dist. LEXIS 73843, at *36 ("It would likely be futile to attempt, after the fact, to estimate the monetary value of injury suffered from either the loss of Waymo's competitive position in this nascent industry or the destruction of its trade secrets pertaining to the same. Monetary damages would thus be unavailable to compensate for the irreparable harm threatened here.").

No matter how Topcon attempts to spin the facts, Topcon poached Mr. Kurzke, ███ ███████████████████████████████████████████ during his employment with Topcon. *See* Kurzke Hard Drive File Listing, Dkt. No. 127-04. Topcon also convinced a number of other former CZMI employees to join Mr. Kurzke at Topcon, including employees with senior responsibilities ██████████████████████ *See* TAC, at ¶¶ 1-16, 61-64. These Former Employees, and many other Topcon employees who formerly worked at CZMI, now openly discuss confidential CZMI product information, using it as the building blocks to create at least one competing Topcon product. *See* TAC, at ¶¶ 80-118. This type of misappropriation is *per* se unlawful in this District. *Waymo*, 2017 U.S. Dist. LEXIS 73843, at * 35-37.

Without an injunction, CZMI will have its market position irreparably eroded as Topcon's knockoff products are launched this summer. *See* TAC, at ¶¶ 1-16, 52, 173-176. In trade secret cases, injunctions are appropriate to prevent such irreparable harm. *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991); *Comet Techs.*, 2018 U.S. Dist. LEXIS 224356, at *13-14. Specifically, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d at 1077 (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). The continued poaching of employees to accelerate Topcon's ability to compete with CZMI creates greater irreparable harm with each employee who leaves CZMI. *See Waymo*, 2017 U.S. Dist. LEXIS 73843, at * 35-36 ("[I]f defendants use Waymo's trade secrets to accelerate their own progress . . . that momentum would improve their ability to attract investors and talented engineers away from competitors – including Waymo itself.").

C. **The Balance of Hardships Strongly Favors CZMI**

Defendants will suffer no hardship if the injunction is granted. Defendants have no legitimate use for nor ownership rights in CZMI's trade secrets or confidential information. The injunction would simply require Defendants to abide by the law and, where applicable, their contractual obligations to CZMI, such as their TSCIP agreements. *See* Kurzke Signed TSCIP Agreement, Dkt. No. 127-14; *see also Henry Shein*, 191 F. Supp. 3d at 1077 (refraining from prohibited conduct is not an undue hardship); *Pyro Spectaculars North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1092 (E.D.

Cal. 2012) (balance of hardships tips in favor of plaintiff seeking injunction when it "would essentially only require [defendant] to abide by existing law regarding the unauthorized use of another's trade secret.").

CZMI, on the other hand, has a very strong interest in ensuring there is no unauthorized retention, disclosure, copying, or use of its trade secret information. Such actions would result in loss of its competitive position and other competitive harms, for which monetary damages would be inadequate. Moreover, CZMI is simply seeking to maintain the status quo by ensuring that the confidentiality of its trade secret and proprietary information is preserved, and that this information not be disclosed to or used by others. An injunction is the only means to obtain this assurance.

### D. The Public Interest Favors CZMI

Finally, an injunction would support the public's interest in protecting trade secrets and intellectual property rights. *Comet Techs.*, 2018 U.S. Dist. LEXIS 224356, at *15. Protection of a company's trade secrets serves the public interest. *Henry Shein*, 191 F. Supp. 3d at 1078; *Bank of Am., N.A. v. Lee*, No. CV 08-5546 CAS (JWJX), 2008 U.S. Dist. LEXIS 110410, at *22 (C.D. Cal. Sept. 22, 2008) ("While California has a strong public policy in favor of competition, this interest yields to California's interest in protecting a company's trade secrets."). Courts have repeatedly ruled that injunctions preventing the misuse of trade secrets are firmly in the public's interest. *See, e.g.*, *Pyro Spectaculars*, 861 F. Supp. 2d at 1093 ("[A]n injunction specifically focused on preventing misuse of [Plaintiff's] trade secrets . . . would serve the policy of protecting trade secrets while simultaneously allowing lawful competition."); *Henry Schein*, 191 F. Supp. 3d at 1078 ("Public interest is also served by enabling the protection of trade secrets."). CZMI's trade secrets are no different. As these courts have done, CZMI respectfully requests that this Court find the injunction to be in the public interest and the interest of companies in this District, like CZMI, dependent on trade secret protection to defend their proprietary information.

## IV. INJUNCTION BOND

In accordance with Fed R. Civ. P. 65(c), which "invests the district court with discretion as to the amount of security required, if any," *Jorgensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003), CZMI is willing to file an injunction bond upon the Court's grant of an injunction against Defendants.

Notably, Defendants will in no way be prejudiced from the narrowly tailored injunctive relief sought in this case. Defendants have expended little time and investment in developing their forthcoming products. In contrast, CZMI has spent over a decade developing, refining and innovating. The short time it will take to uncover the truth of this matter is minimal compared to the relative risk and harm to CZMI and the entire ophthalmic industry.

## V. CONCLUSION

For the above stated reasons and the allegations in the TAC, CZMI respectfully requests that the Court issue a preliminary injunction:

(1) ordering all Defendants to immediately cease and desist disclosure CZMI Trade Secrets to Topcon or any other entity;

(2) enjoining all Defendants from using any CZMI Trade in their work on any product at Topcon;

(3) enjoining Topcon from releasing ████████████████████████████████ ████████████████████████████ until at least the resolution of this case and/or the issuance of a permanent injunction if CZMI succeeds on the merits; and

(4) ordering any alternative or additional relief as the Court may deem appropriate. The Preliminary Injunction should be immediately effective upon entry without prejudice for CZMI to request further relief if appropriate.

Dated: February 5, 2020

Respectfully Submitted,

WHITE & CASE LLP
/s/ Jeremy T. Elman

Jeremy T. Elman
Attorneys for Plaintiff