JASON A. GELLER (SBN 168149)
E-Mail: jgeller@fisherphillips.com
PAUL GRECO, *admitted pro hac vice*
E-Mail: pgreco@fisherphillips.com
ANTHONY M. ISOLA (SBN 274987)
E-Mail: aisola@fisherphillips.com
BRANDON K. KAHOUSH (SBN 311560)
E-Mail: bkahoush@fisherphillips.com
**FISHER & PHILLIPS LLP**
One Embarcadero Center, Suite 2050
San Francisco, California 94111
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

STEVEN C. CARLSON (SBN 206451)
E-Mail: scarlson@robinskaplan.com
KEVIN M. PASQUINELLI (SBN 246985)
E-Mail: kpasquinelli@robinskaplan.com
**ROBINS KAPLAN LLP**
2440 W. El Camino Real, Suite 100
Mountain View, California 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041

Attorneys for Defendants
TOPCON MEDICAL SYSTEMS, INC. and
TOPCON HEALTHCARE SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND COURTHOUSE

| | |
|---|---|
| CARL ZEISS MEDITEC, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TOPCON MEDICAL SYSTEMS, INC., TOPCON HEALTHCARE SOLUTIONS, INC., TOPCON CORPORATION, TOBIAS KURZKE, GREG HOFFMEYER, GENEVIEVE FAY, KATALIN SPENCER, TERRY KEITH BROCK, CHARLES GUIBORD, JR., JOSEPH CICCANESI, AND MICHAEL CHEN, <br><br> Defendants. | Case No. 4:19-cv-04162-SBA (LB) <br><br> **DEFENDANTS TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:     March 11, 2020 <br> Time:     2:00 p.m. <br> Place:    1301 Clay Street, Oakland, CA <br> Before:  Hon. Saundra Brown Armstrong <br><br> TAC Filed: January 31, 2020 <br> SAC Filed: January 6, 2020 <br> FAC Filed: November 27, 2019 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

CASE NO. 4:19-CV-04162-SBA (LB)

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ...................................................................................6

II. FACTUAL BACKGROUND ...................................................................7

    A. TMS and THS Are Well-Established Competitors of CZMI. ...............7

    B. Topcon's Software Products Have Lawfully Competed with CZMI's Software Products Since At Least 2007....................................8

    C. Mr. Kurzke's Testimony About the Hard Drive and His Departure from CZMI Does Not Suggest He Stole Trade Secrets to Unlawfully Compete. .....................................................................9

    D. THS Instructed Mr. Kurzke Against Using Third Party Trade Secret Information. ...............................................................................10

    E. CZMI Has Not Produced Any Record Evidence of Mr. Kurzke's Use of Trade Secret Information at Issue or Topcon Defendants' Knowledge of Such Use.....................................................................10

    F. The Relevant Timeline Does Not Suggest Defendants Used CZMI's Trade Secrets to Develop Glaucoma Module ..........................11

III. CZMI CANNOT OBTAIN AN INJUNCTION ABSENT A "CLEAR SHOWING" OF IRREPARABLE HARM AND STRONG LIKELIHOOD OF SUCCESS ............................................................12

IV. CZMI IS UNLIKELY TO PREVAIL ON ITS TRADE SECRET CLAIM BECAUSE CZMI CANNOT SPECIFICALLY IDENTIFY ITS TRADE SECRETS OR SHOW TOPCON DEFENDANTS MISAPPROPRIATED THOSE SECRETS..................................................13

    A. CZMI Fails to Identify a Trade Secret with Reasonable Particularity ...................................................................................13

    B. CZMI Presents No Evidence That Topcon Defendants Misappropriated Its Trade Secret Information....................................14

        1. CZMI's Arguments that Mr. Kurzke Used Information on the Hard Drive to Develop Topcon's Products are Mere Speculation..................................................................14

        2. CZMI's Incorrect and Unsupported Theory that Topcon Defendants Poached the Former Employees to Launch Glaucoma Module is Not Evidence of Misappropriation ....................15

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S RENEWEDMOTION FOR PRELIMINARY INJUNCTION

FP 37098599.5

3.  The Rate of THS's Development of Glaucoma Module Does Not Show Trade Secret Misappropriation By Topcon Defendants. ............................................................16

V.  CZMI HAS FAILED TO SHOW AN IRREPARABLE INJURY ...................................17

  A.  There is No Presumption of Irreparable Harm in the Ninth Circuit ...................17

  B.  CZMI Does Not Face a Likelihood of Irreparable Harm ...................................18

VI.  THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST STRONGLY DISFAVOR AN INJUNCTION.................................................................19

VII.  CONCLUSION.............................................................................................................20

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

FP 37098599.5

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AccuImage Diagnostics Corp. v. Teraecon, Inc.,*
260 F. Supp. 2d 941 (N.D. Cal. 2003) ...............................................................13

*Action Learning Sys., Inc. v. Crowe,*
No. CV 14-5112-GW(SHX), 2014 WL 12564011
(C.D. Cal. Aug. 11, 2014) ...................................................................................13

*Agony Solutions.com LLC v. Trizetto Corp., Inc.,*
819 F. Supp. 2d 1001 (E.D. Cal 2011) ...............................................................13

*AlterG, Inc. v. Boost TreadMills LLC,*
388 F. Supp. 3d 1133 (N.D. Cal. 2019) .............................................................14

*Bayer Corp. v. Roche Molecular Sys., Inc.,*
72 F. Supp. 2d 1111 (N.D. Cal. 1999) ..........................................................16, 19

*Caribbean Marine Servs. Co. v. Baldridge,*
844 F.2d 668 (9th Cir. 1988) ........................................................................17, 18

*Comet Techs. USA, Inc. v. Beuerman,*
2018 WL 1990226 (2018) ...................................................................................20

*Cuviello v. City of Oakland,*
No. C-06-5517 MHP (ECM), 2009 WL 734676
(N.D. Cal. Mar. 19, 2009) .....................................................................................7

*Dept't of Parks & Recreation v. Bazaar Del Mundo Inc.,*
448 F.3d 1118 (9th Cir. 2006) ............................................................................17

*Flexible Lineline Sys., Inc. v. Precisions Lift, Inc.,*
654 F.3d 989 (9th Cir. 2011) ..............................................................................18

*Friends of the Wild Swan v. Weber,*
767 F.3d 936 (9th Cir. 2014) ..............................................................................17

*GSI Tech., Inc. v. United Memories, Inc.,*
No. C 13-1081 PSG, 2013 WL 12172990
(N.D. Cal. Aug. 21, 2013) ...................................................................................18

*Lear, Inc. v. Adkins,*
395 U.S. 653 (1969) ............................................................................................19

*Loop AI Labs, Inc. v. Gatti,*
195 F. Supp. 3d 1107 (N.D. Cal. 2016) ..............................................................13

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

FP 37098599.5

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997)..........................................................................................12

*Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon,*
    254 F.3d 846 (9th Cir. 2001) ........................................................................18

*Pellerin v. Honeywell Intern., Inc.,*
    877 F. Supp. 2d 983 (S.D. Cal. 2012) .........................................................15

*S. Cal. Inst. of Law v. TCS Educ. Sys.,*
    No. CV 10–8026 PSG, 2011 WL 1296602 (C.D.Cal. Apr. 5, 2011)............15

*SOAProjects, Inc. v. SCM Microsystems, Inc.,*
    No. 10-CV-01773-LHK, 2010 WL 5069832
    (N.D. Cal. Dec. 7, 2010) ..............................................................................15

*Stanley v. Univ. of S. Cal.,*
    13 F.3d 1313 (9th Cir. 1994) ........................................................................19

*WeRide Corp. v. Kun Huang,*
    379 F. Supp. 3d 834 (N.D. Cal. 2019) ...................................................17, 20

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008)....................................................................................12, 17

*Yamashita v. Wilbur-Ellis Co.,*
    No. C 06-01690 (WHA), 2006 WL 1320470
    (N.D. Cal. May 15, 2006) .............................................................................19

STATUTES, RULES AND REGULATIONS

United States Government Code
    18 U.S.C. 1832 (Defend Trade Secrets Act)................................................13

Federal Rules of Civil Procedure
    Rule 65(d) .......................................................................................................7

California Civil Procedure Code
    § 2019.210......................................................................................................13

California Civil Code
    § 3426 (California Uniform Trade Secrets Act) ...........................................13

OTHER AUTHORITIES

United States District Court, Northern District of California
    Local Rule 7-4...............................................................................................7, 8

5    CASE NO. 4:19-CV-04162-SBA (LB)

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
FP 37098599.5

# I. INTRODUCTION

Through this renewed motion, Plaintiff Carl Zeiss Meditec, Inc. ("CZMI") makes a second futile attempt to stymie Defendant Topcon Medical Systems, Inc. ("TMS") and Topcon Healthcare Solutions, Inc.'s ("THS")[1] lawful efforts to develop and release competing products. After his CZMI employment ended, Defendant Tobias Kurzke retained a hard drive containing both his personal information and CZMI information. However, Mr. Kurzke's possession of the hard drive does not establish misappropriation by Topcon Defendants.

At least five times, THS instructed Mr. Kurzke against using third-party trade secret information in Topcon Defendants' business. CZMI offers no evidence showing Mr. Kurzke disobeyed those instructions. In fact, Topcon Defendants did not know he had the hard drive, until after the inception of this lawsuit, and did not ask him to use and did not use the information on the hard drive. As such, there is no justification for granting CZMI's request for a drastic remedy that stops Topcon Defendants from releasing their products for a year or more.

CZMI's attempts to show Topcon Defendants committed trade secret misappropriation are based on unsupported assertions, speculations, and exaggerations of the record. Although CZMI is in possession of the hard drive, CZMI does not offer a single file from the hard drive that allegedly shows misappropriation by Topcon Defendants. Further, CZMI does not cite to any of the 115 categories in its trade secret disclosure that it claims are stored on the hard drive. Despite deposing Mr. Kurzke for over six hours, CZMI offers no deposition testimony showing that Mr. Kurzke accessed CZMI's Glaucoma Workplace files on the hard drive that he could have used to develop THS's Glaucoma Module. *CZMI does not connect the dots*, and simply argues Mr. Kurzke's retention of the hard drive establishes misappropriation by Topcon Defendants.

There are many persuasive facts that compel a conclusion that CZMI is <u>not</u> likely to prevail on its trade secret misappropriation claim against Topcon Defendants:

- In 2013, CZMI's parent company gave Mr. Kurzke the hard drive with instructions to use the device to back up his laptop. He regularly did so for the next five years.

///

---

[1] TMS, THS and Defendant Topcon Corporation are collectively "Topcon Defendants."

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

FP 37098599.5

- During the last two years of his CZMI employment, Mr. Kurzke was not responsible for Glaucoma Workplace. As such, Mr. Kurzke believes he had very few, if any, Glaucoma Workplace documents, and no Glaucoma Workplace source code, on the hard drive.
- Because Mr. Kurzke was unhappy at CZMI, he interviewed with other companies. In fact, Mr. Kurzke reached out to Topcon Defendants about potential job opportunities.
- The development of Glaucoma Module has been ongoing for more than two years and THS has not applied for Food and Drug Administration approval to sell the software.

The evidence contradicts CZMI's arguments that Topcon Defendants recruited CZMI employees to steal trade secrets and used CZMI's trade secrets to develop competing products.

Furthermore, CZMI cannot show an imminent threat of irreparable harm, if the Court denies the requested relief. Mr. Kurzke has already returned the hard drive to CZMI,[2] and THS has not released Glaucoma Module. Aside from CZMI's requests for the return of the hard drive and preventing the release of Topcon Defendants' products, CZMI essentially asks the Court to order defendants to "obey the law," which would be a vague and unenforceable injunction under Fed. R. Civ. P. 65(d).[3] Pursuant to Civil Local Rule 7-4, THS and TMS identify the following issues to be decided: Whether CZMI has presented sufficient evidence to show that it is likely to prevail in demonstrating that Topcon Defendants misappropriated its trade secrets, and whether CZMI has demonstrated an imminent threat of irreparable harm, if the Court denies the relief requested by this motion.

## II.   FACTUAL BACKGROUND[4]

### A.   TMS and THS Are Well-Established Competitors of CZMI.

Since 1970, TMS has been a well-respected developer and supplier of ophthalmic diagnostic equipment in the global medical device industry. Declaration of Kristen Nelson ("Nelson Decl."), ¶ 3.

[2] TMS and THS dispute CZMI's unfounded accusation that *Topcon Defendants* improperly withheld information about the hard drive. It is CZMI's burden to propound discovery to procure information. CZMI elected to propound discovery on Topcon Defendants, who did not possess the hard drive. After CZMI belatedly propounded discovery on Mr. Kurzke, he volunteered the hard drive to CZMI, before his discovery responses were due.

[3] *See Cuviello v. City of Oakland,* No. C-06-5517 MHP (ECM), 2009 WL 734676, at *3 (N.D. Cal. Mar. 19, 2009).

[4] CZMI supports this Motion with all the "facts" in CZMI's Third Amended Complaint ("TAC"). CZMI's MPA 2:17-18. The information in the TAC are unproven *allegations* – not facts. Topcon intends to bring a motion to dismiss challenging the sufficiency of the allegations in the TAC.

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Topcon Corporation, which is TMS's parent corporation, was established in September 1932, and is a comprehensive ophthalmic device manufacturer.[5] *Id.* at ¶ 4. Incorporated in 2017, THS, a subsidiary of Topcon Corporation, creates software solutions for the eye-care industry. *Id.* at ¶ 5. Topcon Corporation has nearly 4,000 employees total. *Id.* at ¶ 6.

**B.** **Topcon's Software Products Have Lawfully Competed with CZMI's Software Products Since At Least 2007.**

THS and TMS, on one hand, and CZMI, on the other hand, make competing software programs, which give eye care professionals the ability to collect, store, manage, analyze, and access digital ophthalmic data from various devices. Declaration of Tobias Kurzke ("Kurzke Decl.), ¶ 5. TMS acquired Anka Systems in about 2006, which manufactured a software product called Eyeroute. *Id.* at ¶ 6. TMS turned Eyeroute into the Synergy software product in 2011, and then THS turned Synergy into Harmony (the current iteration of Topcon Defendants' data management software). *Id.* Thus, TMS and THS have been selling a version of its Harmony software, since 2006. *Id.*

In 2008, Topcon Defendants released their Fastmap software, the predecessor to their IMAGEnet6 software, which visualizes and processes ophthalmic diagnostic data to create reports used by eye care doctors. Declaration of John Trefethen ("Trefethen Decl."), ¶ 7. Currently, THS is in the process of developing an extension of Harmony called Glaucoma Module. Glaucoma Module has been under development since 2017, in close collaboration with one of the world's leading glaucoma experts, Dr. Donald Hood from Columbia University (who is not employed by Topcon Defendants). Declaration of Jason Geller ("Geller Decl."), Ex. A, 214:5-16; 215:4-10; Trefethen Decl., ¶ 8.

On the other hand, CZMI's competitor software product is called FORUM and was released in 2009. Geller Decl., Ex. A, 213:23-25; Kurzke Decl. ¶ 8. CZMI's Retina Workplace and Glaucoma Workplace software are extensions of the FORUM product. Kurzke Decl., ¶ 8. CZMI also maintains a website called ARI Portal, where a consortium of researchers collaborate. *Id.* at ¶ 10. Topcon Defendants do not have products that compete with ARI Portal. *Id.* at ¶ 11. Topcon Defendants have

///

---

[5] Defendant Topcon Corporation is a Japanese corporation headquartered in Japan, and has not been served or appeared in this action. Thus, Topcon Corporation is not obligated to oppose this Motion.

no plans to develop a new product that will compete with Retina Workplace. *Id.* at ¶ 8.[6] However, Topcon Defendants' IMAGENet6 (and its predecessor software) has competed for many years with CZMI's Glaucoma Workplace, and TMS intends that Glaucoma Module (once the product is done with development) will also compete with CZMI's Glaucoma Workplace. Geller Decl., Ex. A, 188:8-189:2; Trefethen Decl., at ¶¶ 6-7, 9.

      C.    **Mr. Kurzke's Testimony About the Hard Drive and His Departure from CZMI Does Not Suggest He Stole Trade Secrets to Unlawfully Compete.**

      Prior to working for CZMI, Mr. Kurzke worked for Carl Zeiss Meditec AG in Munich, Germany. Geller Decl., Ex. A, 79:20-23.

*Id.* at 98:2-20, 99: 16-21, 101:7-17.           *Id.* In 2015, Mr. Kurzke moved from Germany to Dublin, California, and transitioned to become an employee of CZMI. *Id.* at 45:11-46:7; 47:15-17.

*Id.* at 105:21-107:16.

      Mr. Kurzke likely purged Glaucoma Workplace documents from his work laptop and, in turn, the hard drive, during his CZMI employment, as part of the normal course of business.[7] Mr. Kurzke's role as a product manager for Glaucoma Workplace stopped at the end of 2015, more than two years before his employment with CZMI ended. *Id.* at 61:7-18; 62:18-24; 91:5-11. Thus, from 2016 to 2018, during the last two years of his CZMI employment, he had little reason to collect or maintain Glaucoma Workplace documents on his laptop or the hard drive. Kurzke Decl., at ¶ 9. Because Mr. Kurzke did not work as an engineer on Glaucoma Workplace, he never downloaded Glaucoma Workplace's source code to this laptop or the hard drive. *Id.*

      Contrary to CZMI's accusations, Topcon Defendants did not recruit Mr. Kurzke with the intent to steal trade secrets. Because Mr. Kurzke was unhappy with his employment at CZMI, in 2017, he started interviewing for a new position. Geller Decl., Ex. A, 174:8-175:3. Later, Mr. Kurzke

---

[6] None of CZMI's alleged trade secrets concern Retina Workplace. Dkt. 126-1, ¶ 7, Ex. 1.

[7] CZMI offered no evidence that Mr. Kurkze deleted any files from hard drive after leaving CZMI.

reached out to Topcon Defendants about job opportunities. *Id.* at 177:6-16.

Also contrary to CZMI's accusations, Mr. Kurzke did not retain the hard drive with the intent to steal trade secrets. Instead, he retained the hard drive because it contained sensitive personal information. *Id.* at 105:4-12; 110:8-21. Pursuant to the recommendation of the IT department, Mr. Kurzke backed up his CZMI laptop to the external hard drive, as a precautionary measure in the event his laptop was lost, stolen, or damaged. Kurzke Decl., ¶ 12. Near the end of his CZMI employment, Mr. Kurzke downloaded files to the hard drive as part of his normal practice of backing up the laptop and in preparation to transfer his work files to his successor, given his upcoming departure from CZMI. *Id.* at ¶ 13.

At the conclusion of his CZMI employment, Mr. Kurzke returned property to CZMI, including his laptop and paper files. *Id.* at ¶ 15. Mr. Kurzke retained the hard drive because the device belonged to Carl Zeiss Meditec AG (not CZMI) and because he had his personal files on the device, including photos, personal identification information, and tax and banking information. *Id.* CZMI never specifically asked him to return the hard drive. *Id.*

**D.     THS Instructed Mr. Kurzke Against Using Third Party Trade Secret Information.**

When Mr. Kurzke became a THS employee, THS repeatedly instructed Mr. Kurzke to not use the trade secrets of his prior employers in Topcon Defendant's business operations. During onboarding as a new THS employee, Mr. Kurzke signed an agreement that he would not use his prior employer's confidential or trade secret information in his work at THS. Kurzke Decl., 22, Ex. 1. Similar instructions were in Topcon's Global Code of Conduct. *Id.* at ¶ 23, Ex. 2. Furthermore, Mr. Kurzke attended two internal presentations and one training course, where THS management reiterated the company's policy against use of third-party trade secrets. *Id.* at ¶¶ 24-26, Exs. 3-4.

**E.     CZMI Has Not Produced Any Record Evidence of Mr. Kurzke's Use of Trade Secret Information at Issue or Topcon Defendants' Knowledge of Such Use.**

Mr. Kurzke confirmed that he did not use any CZMI proprietary or trade secret information on the hard drive to develop Topcon Defendants' products. *Id.* at ¶ 20. Mr. Kurzke stored the hard drive at his home – not at Topcon's facilities. Geller Decl., Ex. A, 257:7-15. Mr. Kurzke's supervisors

and the head of THS's engineering division did not ask Mr. Kurzke to disclose or use CZMI's trade secrets in his work and they did not know about the existence of the hard drive, until after the inception of this litigation. Trefethen Decl., ¶¶ 10-12; Declaration of Akifumi Baba, ¶¶ 2-4; and Declaration of Robert Orsino, ¶¶ 3-4.

When deposing Mr. Kurzke, CZMI's counsel had access to the hard drive. The following are the only two files that CZMI's counsel asked Mr. Kurzke about at his deposition that were allegedly accessed by Mr. Kurzke after he joined THS.[8]

| ROW NUMBER | NAME OF FILE | FOLDER OR FILE | LAST ACCESSED | GLAUCOMA WORKPLACE DOCUMENT? |
|---|---|---|---|---|
| ███ | ████████ | ███ | ███████ | ██ |
| ███ | ████████ | ███ | ███████ | |

Geller Decl., Ex. A, 259:15-25, 266:4-12. Accessing these files did not create an opportunity for Mr. Kurzke to take CZMI's trade secrets concerning Glaucoma Workplace and use those to further the THS's development of Glaucoma Module. Furthermore, accessing a Retina Workplace document has no significance to this case because Topcon Defendants are not developing a new product that will compete with CZMI's Retina Workplace and Retina Workplace trade secrets are not at issue in this case. *Id.* at 198:3-199:13. CZMI fails to point to evidence that shows that Mr. Kurzke used information on the hard drive to develop Glaucoma Module or other Topcon products.

F.    **The Relevant Timeline Does Not Suggest Defendants Used CZMI's Trade Secrets to Develop Glaucoma Module**

Contrary to CZMI's unfounded and speculative assertions, a timeline of the relevant events is at odds with CZMI's theory that Topcon Defendants committed misappropriation. In fact, Topcon Defendants started developing solutions in the Glaucoma space over twenty years ago. Trefethen

---

[8] At Mr. Kurzke's deposition, CZMI's counsel asked Mr. Kurzke about whether folders were accessed, after he joined THS ███████████████████████████████████████ ███████████████████████████. Geller Decl., Ex. A, 162:15-164:1, 168:10-169:6 ██████. *Id., see* Kurzke Hard Drive Listing, Dkt. 127-04. ████████████████. Geller Decl., Ex. A, 162:15-164:1, 168:10-169:6.

CASE NO. 4:19-CV-04162-SBA (LB)

Decl., ¶ 7. Further, as discussed above, even before Mr. Kurzke joined THS, Topcon Defendants were selling Fastmap, a prior version of IMAGENet 6, which is a product that competes with Glaucoma Workspace, and THS had already begun development of Glaucoma Module. Geller Decl., Ex. A, 189:22-190:4; 203:10-18; 216:2-15; Trefethen Decl., ¶ 9. THS's development of Glaucoma Module has been ongoing for more than two years and THS has not applied for regulatory approval from the Food and Drug Administration to sell the product (which is a process that could take up to a year). Geller Decl., Ex. A, 170:4-171:4; 172:12-19. Trefethen Decl., ¶¶ 5, 8.

| 2000 | 2008 | 2017 | April 30, 2018 | September 20, 2018 | October 1, 2018 | February 2020 |
|------|------|------|----------------|--------------------|-----------------|---------------|
| Topcon Develops Solutions to Assist in Glaucoma Diagnosis | Topcon Releases Fastmap, Predecessor to IMAGENet 6, which Competes with Glaucoma Workplace | THS Starts Development of Glaucoma Module[9] | Mr. Kurzke Begins Work for THS | | THS Publicly Announces It Has Started Development of Glaucoma Module | THS has Not Released Glaucoma Module |

## III.  CZMI CANNOT OBTAIN AN INJUNCTION ABSENT A "CLEAR SHOWING" OF IRREPARABLE HARM AND STRONG LIKELIHOOD OF SUCCESS

A preliminary injunction is "an extraordinary and drastic remedy" that should not be granted unless the movant carries its burden of persuasion *by a clear showing. Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). To establish a right to a preliminary injunction here, CZMI must demonstrate that: (1) it is likely to succeed on the merits of its breach of contract and/or trade secrets claim; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008). A plaintiff must prove *each* of the above elements to be awarded a preliminary injunction, whereas CZMI fails to satisfy any of them. Therefore, the Court should deny CZMI's request for a preliminary injunction.

///

///

---

[9] Trefethen Decl., at ¶ 8.

[10] Kurzke Hard Drive Listing, Dkt. No. 127-04.

**IV. CZMI IS UNLIKELY TO PREVAIL ON ITS TRADE SECRET CLAIM BECAUSE CZMI CANNOT SPECIFICALLY IDENTIFY ITS TRADE SECRETS OR SHOW TOPCON DEFENDANTS MISAPPROPRIATED THOSE SECRETS.**

Under the California Uniform Trade Secrets Act ("CUTSA") and the federal Defend Trade Secrets Act ("DTSA"), CZMI is unlikely to prevail on its trade secret claim because it has failed to show either (1) the existence of a trade secret; or (2) Topcon Defendants' misappropriation of a trade secret. *AccuImage Diagnostics Corp. v. Teraecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003).

**A.    CZMI Fails to Identify a Trade Secret with Reasonable Particularity**

To obtain a preliminary injunction, CZMI must first identify its alleged trade secrets with "reasonable particularity." *Cal. Civ. Proc. Code* § 2019.210; *Action Learning Sys., Inc. v. Crowe*, No. CV 14-5112-GW(SHX), 2014 WL 12564011, at *4 (C.D. Cal. Aug. 11, 2014). CZMI cannot carry this "heavy burden … without specifying what, exactly, it is trying to protect." *Id*. Here, CZMI's alleged 115 categories of trade secrets are not stated with reasonably particularity, CZMI fails to state which ones have allegedly been misappropriated by Topcon Defendants.

To describe its trade secrets, CZMI improperly uses catchall phrases like "including but not limited to . . .[,]" "such as," "various output formats," and "design decisions." Ex. 1, Nos. 9, 79-81, 107, 108. Courts within the Ninth Circuit routinely reject the use of "catchall" language as insufficiently specific. *Loop AI Labs, Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1115 (N.D. Cal. 2016) (internal citation omitted).

CZMI's alleged trade secrets also improperly incorporate hundreds of pages of documents that CZMI alleges disclose the purported trade secrets. Ex. 1, Nos. 1-4, 17-34, 37-38, 41, 49, 51-56, 60, 65, 71-73, 83, 84, 91, 95, 97, and 102-106. Instead of directing Topcon Defendants to the specific documentation containing the alleged trade secret, CZMI cites to several hundred documents in an attempt to bury the potential trade secrets. *Alta Devices, Inc. v. LG Elecs.*, Inc., No. 18CV00404LHKVKD, 2019 WL 176261, at *4 (N.D. Cal. Jan. 10, 2019).

CZMI's trade secrets are also impermissibly vague, overbroad, and refer to high-level overviews of the claimed trade secrets. Ex. 1, Nos. 1-115. *See Agony Solutions.com LLC v. Trizetto Corp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal 2011) (denying injunction for failure to particularize trade secrets). Here, CZMI's trade secrets are described using vague, generic, and boilerplate phrases

such as "[t]he system described in Glaucoma Workplace SW Design," "[t]he internal architecture of each Service in Glaucoma Workplace," "customer needs and preferences," and "confidential knowledge of known bugs or other weaknesses . . . ." *See AlterG, Inc. v. Boost TreadMills LLC*, 388 F. Supp. 3d 1133, 1145-46 (N.D. Cal. 2019) (finding plaintiff had insufficiently pled trade secrets "related to [plaintiff]'s development of anti-gravity rehabilitation products" and "related to [plaintiff]'s design and development of its anti-gravity rehabilitation training units"). Accordingly, CZMI has not identified trade secrets with reasonable particularity to carry its burden on this Motion.

> **B.** **CZMI Presents No Evidence That Topcon Defendants Misappropriated Its Trade Secret Information**

Even if CZMI were able to specifically identify its trade secrets, it has not adduced any evidence showing that Mr. Kurzke, let alone Topcon Defendants, used the information on the hard drive in Topcon Defendants' business operations or in the development of Glaucoma Module. In fact, none of CZMI's purported evidence supports its conjecture that misappropriation by Topcon Defendants has occurred.

> 1. CZMI's Arguments that Mr. Kurzke Used Information on the Hard Drive to Develop Topcon's Products are Mere Speculation

CZMI has all the information needed to investigate its trade secret misappropriation claim against Topcon – Mr. Kurzke gave the hard drive to CZMI and CZMI has deposed three of the Former Employees, [11] including a six-hour deposition of Mr. Kurzke. Yet, CZMI is still unable to offer evidence showing Mr. Kurzke used information on the hard drive to develop any Topcon products.

- CZMI has not pointed to any Glaucoma Workplace files on the hard drive that Mr. Kurzke accessed, after he joined THS.
- CZMI has not offered a single file from the hard drive that shows Mr. Kurzke used CZMI's information to develop Topcon Defendants' products.
- CZMI has not cited to any of Topcon Defendants' product or engineering documents to show that Topcon Defendants used information on the hard drive in their business operations.

Instead, CZMI uses Mr. Kurzke's mere possession of the hard drive to launch a disjointed narrative that Topcon Defendants are using CZMI's trade secrets to develop Glaucoma Module. In reality,

---

[11] Defendants Tobias Kurzke, Greg Hoffmeyer, Genevieve Fay, Katalin Spencer, Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi, and Michael Chen are collectively "Former Employees."

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
FP 37098599.5

1  CZMI is only able to show that Mr. Kurzke had a hard drive with CZMI's information on it – nothing

2  more.[12]

3      "Alleging mere possession of trade secrets is not enough." *S. Cal. Inst. of Law v. TCS Educ.*

4  *Sys.*, No. CV 10–8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D.Cal. Apr. 5, 2011) (internal

5  quotation marks and alteration omitted). California law does not permit CZMI to try to prove trade

6  secret misappropriation by suggesting that its former employees' new employment will inevitably

7  lead them to rely on CZMI's trade secrets (the "inevitable disclosure doctrine"). *Pellerin v. Honeywell*

8  *Intern., Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012). Furthermore, an employee physically taking

9  trade secret information after separating from a former employee and then performing the same work

10  for a new employer, without more, is not sufficient to state a claim of trade secret misappropriation

11  against the new employer. *See SOAProjects, Inc. v. SCM Microsystems, Inc.*, No. 10-CV-01773-

12  LHK, 2010 WL 5069832, at *11 (N.D. Cal. Dec. 7, 2010).

13      In this district, CZMI's failure to cite any of its 115 categories of trade secrets disclosure that

14  allegedly exist on the hard drive is reason to deny CZMI's injunction request. In *uSens, Inc. v. Shi*

15  *Chi*, a former employee failed to return a company cellphone and laptop to plaintiff upon his

16  termination. 2018 U.S. Dist. LEXIS 175570, *2. This district court denied plaintiff's request for a

17  preliminary injunction on the grounds that plaintiff's bald assertions that the devices contained

18  plaintiff's confidential information was "speculative and [did] not adequately specify the alleged trade

19  secrets that are located on the cell phone and laptop." *Id.* at *7-8.

20      2.      CZMI's Incorrect and Unsupported Theory that Topcon Defendants
             Poached the Former Employees to Launch Glaucoma Module is Not
21            Evidence of Misappropriation

22  CZMI alleges – without citation to evidence – that THS employees John Trefethen and Grant

23  Schmidt "recruited the Former Employees" because "the Former Employees possessed a wealth of

24  CZMI Trade Secrets which would allow Topcon to quickly launch a competing ODx Product." CZMI

---

[12] While CZMI has possession of the hard drive, CZMI claims it has only reviewed 3% of the files
on the device. CZMI MPA 2:3-4. CZMI has offered no files from the hard drive in support of this
Motion, and CZMI should not be given the benefit of the doubt that CZMI's further investigations of
the hard drive will show trade secret misappropriation by Topcon Defendants.

MPA 2:17-22. CZMI's allegations are a mischaracterization of the record.[13]

First, Mr. Kurzke testified that the he was actively looking to leave CZMI and interviewing for new positions. Geller Decl., Ex. A, 174:10-175:3. In fact, Mr. Kurzke reached out to Topcon Defendants about potential opportunities. *Id.* at 177:6-16. As for Defendant Genevie Fay, she also testified that she was unhappy at CZMI, and came to THS through a third-party external head hunter. Geller Decl., Ex. B, 179:5-22; 183:9-184:5; 188:8-24. In summary, the Former Employees came to THS and TMS through different sources and at different times. CZMI offers no legitimate evidence that Topcon Defendants "recruited" CZMI employees in order to steal trade secrets.

Furthermore, among the eight Former Employees, CZMI only <u>correctly</u> cites to one employee – Mr. Kurzke – who works on THS's unreleased product, Glaucoma Module. CZMI MPA 3:23-27. CZMI incorrectly claims that Ms. Fay works on Glaucoma Module. In fact, she is a "downstream" marketing employee, who only works on products after they are ready for release. Geller Decl., Ex. B, 218:4-12; 225:3-19. Ms. Fay does not work on products that are still in development, like Glaucoma Module. *Id.* at 224:10-225:19. Defendant Keith Brock also does not work on Glaucoma Module. Kurzke Decl., ¶ 19. Again, CZMI's arguments miss the mark because none of the Former Employees actually work on Glaucoma Module, except Mr. Kurzke.

Here, CZMI argues that Topcon Defendants' hiring of the Former Employees is evidence of trade secret misappropriation. However, this argument cannot stand because it is based on the inevitable disclosure doctrine. *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999). As such, the fact that several employees left CZMI to work for THS or TMS is neither direct, nor circumstantial evidence of trade secret misappropriation.

      3.    <u>The Rate of THS's Development of Glaucoma Module Does Not Show Trade Secret Misappropriation By Topcon Defendants.</u>

Because CZMI lacks evidence to support its request for preliminary injunction, CZMI continues to argue, without evidence, that the alleged speed of THS's development of Glaucoma

---

[13] There is regular movement of employees between CZMI-affiliated companies, Topcon Defendants, and its other competitors. For example, during the last two years, two high-ranking Topcon employees moved to CZMI: Topcon's former Vice President of Marketing, Bob Gibson, and Topcon's former Director of Imaging and Global Marketing & Product Design, Ben Turley. Trefethen Decl., ¶¶ 14-15. Further, Mr. Kurzke's successor at CZMI was a lateral from another industry competitor, Heidelberg Engineering, Inc. Kurzke Decl., ¶ 17.

1　Module is evidence of misappropriation by Topcon Defendants. This contention is unavailing.

2　　　The facts are starkly different than the facts of the *WeRide* case where the court found that the

3　speed of product development suggested trade secret misappropriation. *WeRide Corp. v. Kun Huang*,

4　379 F. Supp. 3d 834, 849-50 (N.D. Cal. 2019). In *WeRide*, the former employee retained plaintiff's

5　source code, before joining the defendant's competing company. *Id.* at 848. This district court

6　concluded that the defendant's development and demonstration of a competing autonomous car,

7　which performed "advance capabilities," in only ten weeks after the former employee joined

8　defendant's company, was sufficient evidence to show that plaintiff was likely to succeed on its trade

9　secret misappropriation claim against the defendant. *Id.* at 849-50. Here, unlike the *WeRide* case,

10　THS's development of Glaucoma Module has been ongoing <u>for more than two years</u>, and Mr. Kurzke

11　did not work as an engineer on Glaucoma Workplace and therefore did not download source code on

12　to his CZMI laptop or the hard drive. Geller Decl., Ex. A, 68:6-18; Kurzke Decl., ¶¶ 9, 20.

13　**V.　CZMI HAS FAILED TO SHOW AN IRREPARABLE INJURY**

14　　　Beyond its inability to show a likelihood of success on the merits, CZMI is not entitled to the

15　extraordinary remedy it seeks because it cannot demonstrate that it will suffer irreparable injury

16　between the Court's hearing on this motion and trial. Indeed, the Supreme Court has held that

17　"plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence

18　of an injunction." *Winter*, 555 U.S. at 22 (emphasis added). To show this, CZMI must establish that

19　the threatened injury is immediate, significant, and concrete or non-speculative. *See Friends of the*

20　*Wild Swan v. Weber*, 767 F.3d 936, 946 (9th Cir. 2014) (immediate); *Caribbean Marine Servs. Co.*

21　*v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (non-speculative); *Dept't of Parks & Recreation v.*

22　*Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1123-24 (9th Cir. 2006) (significant). As discussed more

23　fully below, CZMI cannot satisfy this heavy burden. Accordingly, for this separate reason, CZMI's

24　motion should be denied.

25　　　**A.　There is No Presumption of Irreparable Harm in the Ninth Circuit**

26　　　CZMI incorrectly claims that this Court may presume that CZMI will suffer irreparable harm

27　upon a showing that its proprietary information has been misappropriated.[14] However, the Ninth

---

[14] This argument is also unavailing because CZMI cannot show that its proprietary information has been

CASE NO. 4:19-CV-04162-SBA (LB)

Circuit has rejected the presumption of irreparable harm in trade secret cases. *GSI Tech., Inc. v. United Memories, Inc.*, No. C 13-1081 PSG, 2013 WL 12172990, at *11 (N.D. Cal. Aug. 21, 2013); *Flexible Lineline Sys., Inc. v. Precisions Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011).

The unpublished decision on which CZMI relies to support its point is readily distinguishable. In *W. Directories, Inc. v. Golden Guide Directories, Inc.*, this Court presumed that plaintiff – defendant's former employer – suffered irreparable harm because defendant stole a computer from his former employer and commented that the computer had "everything he needed to run his new business." No. C 09-1625 CW, 2009 WL 1625945, at *4-5 (N.D. Cal. June 8, 2009). Because the former employer in *W. Directories* submitted credible evidence raising serious concerns as to whether defendant had already stolen a database of plaintiff's existing clients, this Court presumed plaintiff would suffer irreparable harm if the defendant interfered with plaintiff's business relationships. *Id.* at 5-6. Here, there is no evidence that Topcon Defendants misappropriated or used any confidential information obtained from CZMI.

**B.    CZMI Does Not Face a Likelihood of Irreparable Harm**

As discussed above, CZMI's trade secret misappropriation claim against Topcon Defendants is unsupported by evidence and based on conjecture. Mr. Kurzke confirmed that he did not use any information on the hard drive to develop Topcon Defendants' products. Kurkze Decl., ¶ 16. Indeed, CZMI did not submit any files from the hard drive to show that Mr. Kurzke accessed Glaucoma Workplace files on the hard drive, after he joined THS. Instead, CZMI relies on bald assertions that THS's unreleased Glaucoma Module uses CZMI's trade secrets. The law is clear that a "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co.*, 844 F.2d at 674.

Further, CZMI fails to carry its burden to demonstrate "immediate threatened harm." *Id.* A plaintiff's demonstration of a risk of irreparable harm in the indefinite future is not enough; the harm must be shown to be imminent. *Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-51 (9th Cir. 2001). Here, THS's development of Glaucoma Module has been ongoing for more than two years and THS has yet to apply for regulatory approval to sell the product. Geller Decl., Ex.

misappropriated.

A, 170:4-171:4; 172:12-13. CZMI fails to show it faces immediate threatened harm, if an injunction is not issued.

Moreover, CZMI offers no persuasive explanation as to why monetary damages would be inadequate to compensate it for any injury. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (holding that where monetary damages can compensate plaintiff, preliminary injunction is not justified). CZMI's reliance on *Waymo LLC v. Uber Technologies, Inc.* for a proposition that monetary damages would be inadequate is misplaced. In *Waymo*, when defendant hired the former employee, defendant knew or should have known that the former employee possessed over 14,000 confidential Waymo files. N.D. Cal., May 15, 2017, No. C 17-00939 WHA) 2017 WL 2123560, at *10. In addition, defendant later used some of the same information in its own product development efforts. *Id.* Here, unlike the *Waymo* case, CZMI has offered no evidence that THS knew Mr. Kurzke had the hard drive when THS hired him or that information from the hard drive was used to develop Topcon Defendants' products. Given this distinction, there is no support for CZMI's argument that monetary damages would be inadequate.

## VI. THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST STRONGLY DISFAVOR AN INJUNCTION

Because CZMI has not shown a likelihood of success on the merits or a significant risk of irreparable injury, this Court need not evaluate whether the balance of hardships favor an injunction or the public interest. However, even if CZMI had demonstrated likelihood of success on the merits (it has not), it must also show that the "balance of hardships tip sharply in its favor" and that an injunction would promote the "public interest." *Bayer Corp.*, 72 F. Supp. 2d at 1120. Although CZMI is responsible for showing both that the balance of hardships and the public interest weigh in its favor, the two concepts are interrelated. *See Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969) ("[T]he equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain."). CZMI has failed to meet its burden as to both.

The best way to promote the public interest is by encouraging fair and vigorous competition in the use of ideas. *Yamashita v. Wilbur-Ellis Co.*, No. C 06-01690 (WHA), 2006 WL 1320470, at *8

CASE NO. 4:19-CV-04162-SBA (LB)

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

FP 37098599.5

(N.D. Cal. May 15, 2006). Although CZMI claims that its request for an injunction is designed to maintain the status quo, that would not be the practical result of its requested order. CZMI MPA 11:7-9. Rather, CZMI requests that the Court prevent Topcon Defendants from releasing any product that _potentially_ use CZMIs' trade secrets. CZMI MPA 12:13-15. By virtue of CZMI's failure to identify _where_ those secrets purportedly exist within Topcon Defendants' products, and which of the 115 claimed trade secrets were infringed, CZMI is asking this Court to prevent Topcon Defendants from releasing any new products. Thus, the balance of hardship tips in favor of Topcon Defendants because if the Court issues the injunction requested by CZMI, Topcon Defendants will be impeded from continuing to release new products.

In fact, none of the cases cited by CZMI in its Motion, including _WeRide, Comet_, and _Harry Schein_, involve a court granting an injunction that prevented a competing business from releasing a product.[15] Here, rather than attempting to preserve the status quo, CZMI seeks to stymie legitimate and lawful competition.

## VII. CONCLUSION

For the reasons stated herein, TMS and THS respectfully request that the Motion for Preliminary Injunction be denied in its entirety.

Dated: February 21, 2020                    Respectfully submitted,

                                            FISHER & PHILLIPS LLP

                                    By:     _/s/ Jason A. Geller_
                                            JASON A. GELLER
                                            Attorneys for Defendants
                                            TOPCON MEDICAL SYSTEMS, INC. and
                                            TOPCON HEALTHCARE SOLUTIONS, INC.

///

///

---

[15] _See WeRide Corp._, 379 F. Supp. 3d at 855-57 (issuing injunction prohibiting defendants' use, destruction and removal of plaintiff's trade secret information); _Comet Techs. USA, Inc. v. Beuerman_, 2018 WL 1990226 *1, 7 (2018) (issuing injunction against former employee, not any competing business); _Harry Schien, Inc._, 191 F. Supp. 3d at 1074, 1079-80 (2016) (issuing injunction against former employee, not any competing business).

Dated: February 21, 2020

Respectfully submitted,

ROBINS KAPLAN LLP

By: _/s/ Steven C. Carlson_
STEVEN C. CARLSON
Attorneys for Defendants
TOPCON MEDICAL SYSTEMS, INC. and
TOPCON HEALTHCARE SOLUTIONS, INC.

## **DECLARATION OF CONSENT**

Pursuant to Local Rule 5-1(i)(3) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the above-listed counsel for Defendants TOPCON MEDICAL SYSTEMS, INC. and TOPCON HEALTHCARE SOLUTIONS, INC.

Dated: February 21, 2020

_/s/ Jason A. Geller_
JASON A. GELLER

TOPCON MEDICAL SYSTEMS, INC. AND TOPCON HEALTHCARE SOLUTIONS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

FP 37098599.5