BIJAL V. VAKIL (SBN 192878)
bvakil@whitecase.com
JEREMY T. ELMAN (SBN 223696)
jelman@whitecase.com
JONATHAN E. KLAREN (SBN 325618)
jklaren@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
Two Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

JESSICA L. LINEHAN (SBN 223569)
linehan.jessica@dorsey.com
600 Anton Boulevard, Suite 2000
DORSEY & WHITNEY LLP
Costa Mesa, CA 92626
Telephone: (714) 800-1400
Facsimile: (714) 800-1499

Attorneys for Plaintiff
CARL ZEISS MEDITEC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CARL ZEISS MEDITEC, INC., <br>         Plaintiff, <br><br> v. <br><br> TOPCON MEDICAL SYSTEMS, INC., TOPCON HEALTHCARE SOLUTIONS, INC., TOPCON CORPORATION, TOBIAS KURZKE, GREG HOFFMEYER, GENEVIEVE FAY, KATALIN SPENCER, TERRY KEITH BROCK, CHARLES GUIBORD, JR., JOSEPH CICCANESI, MELISSA GOEKE, AND MICHAEL CHEN, <br>         Defendants. | Case No. 4:19-cv-04162-SBA <br><br> **[CORRECTED] THIRD AMENDED COMPLAINT FOR TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, PATENT INFRINGEMENT, AND TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** <br><br> **DEMAND FOR JURY TRIAL** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION

Plaintiff Carl Zeiss Meditec, Inc. ("CZMI"), by and through its attorneys, and for their Third Amended Complaint against Topcon Medical Systems, Inc. ("TMS"), Topcon Healthcare Solutions, Inc ("THS"), and Topcon Corporation ("TC") (collectively "Topcon"), and Topcon employees Tobias Kurzke, Greg Hoffmeyer, Genevieve Fay, Katalin Spencer, Terry Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi, and Michael Chen (the "Former Employees") (collectively "Defendants"), and hereby allege as follows:

1.  This is an action for trade secret misappropriation under the Defend Trade Secrets Act (DTSA) and the California Uniform Trade Secrets Act (CUTSA), breach of employment and confidentiality agreements, patent infringement under 35 U.S.C. §271, and tortious interference with economic advantage arising out of Defendants' unlawful scheme to steal CZMI's valuable trade secrets (the "CZMI TRADE SECRETS") and CZMI's confidential information (the "CZMI Confidential Information"), and infringe its patented inventions.

2.  In early 2018, Topcon launched a new subsidiary, THS, to develop software products to compete with CZMI, a market-leader in the United States in opthalmic diagnostic software products ("ODx Products").[1]

3.  Topcon proceeded to recruit a targeted set of CZMI's employees who had knowledge of the CZMI TRADE SECRETS and CZMI Confidential Information, most notably Topcon's now-Director of Software Products, Tobias Kurzke, who had worked in key roles at CZMI and its parent company, Carl Zeiss Meditec AG ("CZM AG"), for 13 years. The Former Employees were recruited by Topcon, and multiple former CZMI employees who now work at Topcon, at least in part based on their knowledge of the CZMI ODx Products.

4.  The list of the CZMI TRADE SECRETS is attached hereto as Exhibit 1 to the Declaration of Jeremy T. Elman ("Elman Decl."), and has previously been provided to the Court, and is filed under seal.

---

[1] "ODx" refers to the phrase "Ophthalmic Diagnostic" and specifically refers to software-related products, not apparatuses.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

5.     Mr. Kurzke was the centerpiece of this scheme to develop products using the CZMI TRADE SECRETS and CZMI Confidential Information, where he has helped Topcon, and most specifically THS jumpstart Topcon's development of competing products within just a few weeks of his departure from CZMI.

6.     In a startling recent development in this case, Mr. Kurzke disclosed that ████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████ ████████████████████████████████████████████. This violation of obligations to CZMI is shocking and may lead to further allegations.

7.     ████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████

8.     ████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████

---

[2] Defendants have dubiously claimed – until now - that evidence of misappropriation and breach of contract such ██████████████████████████████████████ did not exist, or at least that CZMI lacked the ability to assert facts necessary to prove trade secret misappropriation or breach of contract. Defendants have provided no explanation why they failed to tell the Court or CZMI that their star recruit, Mr. Kurzke, had ████████████████ ████████. Mr. Kurzke claimed he disclosed ████████████████████████. Defendants' endless motion practice could have, and should have been avoided, and Defendants should be subject to sanctions for withholding this evidence. This Third Amended Complaint supercedes Topcon's Answer, as well as the Former Employees' pending Motion to Dismiss and is timely filed pursuant to the Court's Scheduling Order as well as Fed. R. Civ. P. 15(a)(1). *See* Dkt. Nos. 101, 122, 123.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

[REDACTED] This is direct evidence of Topcon's scheme to steal CZMI TRADE SECRETS and CZMI Confidential Information.

9. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

10. As a result of this scheme, Topcon has been developing products to compete with CZMI's highly successful ophthalmic diagnostic technologies and systems (the "CZMI ODx Products"). The CZMI ODx Products include Glaucoma Workplace, Retina Workplace, FORUM, and the ARI Portal used by CZMI to allow eye care specialists to collaborate. This development occurred implausibly quickly and without significant expenditures on research and development because it relies on the Former Employees acquiring and disclosing the CZMI TRADE SECRETS and CZMI Confidential Information, [REDACTED]

[REDACTED]

. CZMI expects that further discovery will continue to reveal the extensive scope of this scheme, [REDACTED].

11. One example of Topcon's new competing products is "Glaucoma Module," which is a copy of CZMI's market-leading Glaucoma Workplace product. Mr. Kurzke is leading Topcon's development of Glaucoma Module after he previously served as the Product Manager for CZMI's Glaucoma Workplace at various times since 2012, and had supervisory responsibility for CZMI's Glaucoma Workplace as recently as the time of his departure in April 2018. *See* Elman Decl., Ex. 3, at 145:18-146:19. Topcon's development of Glaucoma Module or any other competing ODx product would not be possible but for the misappropriation and misuse of the CZMI TRADE SECRETS and CZMI's Confidential Information.

12. [REDACTED]

[REDACTED]

[CORRECTED] THIRD AMENDED COMPLAINT
CASE NO: 4:19-cv-04162-SBA

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

1 ██████████████████████████████████████████████

2 ██████████████████████████████████████████████

3 ██████████████████████████████████████████████

4 ██████████████████████████████████████████████████

5 ██████████████████████████████████████████████████

6 ████████████████████████

7    13.  In addition to its scheme to knockoff CZMI's market-leading Glaucoma

8 Workplace product, Topcon's new Glaucoma Module also infringes one of CZMI's patents, U.S.

9 Patent No. 9,968,251 (the "'251 Patent"). *See* Elman Decl., Ex. 4. Topcon has already been

10 performing the patented methods at least during testing, ████████████████████

11 ████████████████████████. Mr. Kurzke was the lead inventor of the '251 Patent,

12 which is not a coincidence since he was a leading developer of products at issue in this case

13 created by both CZMI and Topcon, and has been "playing both sides" to CZMI's detriment.

14    14.  Topcon employees referred to Mr. Kurzke as the "smiling assassin" because of his

15 extensive knowledge of CZMI ODx Products that Topcon used to develop its own knockoff copy

16 of at least Glaucoma Workplace, and possibly other ODx products as well. Mr. Kurzke and the

17 other Former Employees have helped Topcon solicit specific CZMI employees that could help

18 Topcon recreate the CZMI ODx Products, replicate their product strategy, utilize their marketing

19 documents, and sell Topcon's products to the industry. This unlawful conduct must be stopped.

20    15.  In light of Defendant's revelation that ████████████████████████

21 ████████, and that Topcon will publicly release at least a product named Glaucoma Module,

22 CZMI will shortly be renewing its Motion for Preliminary Injunction to stop the Former

23 Employees from disclosing the CZMI TRADE SECRETS and CZMI Confidential Information to

24 assist Topcon in furthering this scheme. The Motion and requested relief will be narrowly

25 tailored to 1) prevent the Former Employees from working on Topcon's ODx Products, 2)

26 prevent the disclosure and use of CZMI TRADE SECRETS and CZMI Confidential Information,

27 ─────────────────────

28 [3] CZMI is still conducting discovery to determine ████████████████████████████
████████████████████████. *See* Elman Decl., ¶ 2.

3) prevent the destruction and deletion of any of CZMI's TRADE SECRETS currently in Topcon's possession, and 4) mandate the return of all CZMI TRADE SECRETS and CZMI Confidential Information, including but not limited to, ████████████.

16.     Topcon should stipulate to this relief if they really have nothing to hide.  CZMI has made reasonable requests from March 2019 to the present to cease and desist from this wrongful development.  Topcon has steadfastly refused to stipulate in any way, which speaks volumes.  The harshest penalties, including permanent relief and sanctions, are appropriate here.

## II.     PARTIES

17.     Plaintiff CZMI is incorporated under the laws of the State of New York and has its principal place of business in this District at 5160 Hacienda Ave, Dublin, California, 94568. CZMI is a wholly-owned subsidiary of CZM AG, which is part of the ZEISS Group.

18.     On information and belief, Defendant Topcon Corporation ("TC") is incorporated under the laws of Japan, and has its principal place of business at 75-1, Hasunuma-cho, Itabashi-ku, Tokyo 174-8580, Japan.

19.     On information and belief, Defendant Topcon Medical Systems, Inc. ("TMS") is incorporated under the laws of the State of New York, has its principal place of business at 111 Bauer Drive, Oakland, New Jersey.  On information and belief, many of the individual defendants in this matter work within this District of TMS.

20.     On information and belief, Defendant Topcon Healthcare Solutions, Inc. ("THS") is incorporated under the laws of the State of New York, has its principal place of business at 111 Bauer Drive, Oakland, New Jersey.  On information and belief, many of the individual defendants in this matter work within this District of TMS.

21.     On information and belief, TMS and THS are subsidiaries of TC.

22.     On information and belief, Tobias Kurzke is an individual who works for THS as the Director of Software Products, and resides in Pleasanton, California.

23.     On information and belief, Greg Hoffmeyer is an individual who works for TMS as the Director of OCT Clinical Sales, and resides in Chapel Hill, North Carolina.

WHITE & CASE LLP<br/>PALO ALTO<br/>ATTORNEYS AT LAW

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

24.     On information and belief, Genevieve Fay is an individual who works for TMS as the Senior Director of Global Marketing, and resides in Dublin, California.

25.     On information and belief, Katalin Spencer is an individual who works for THS as a Trade Show Manager, and resides in Reno, Nevada.

26.     On information and belief, Terry Keith Brock is an individual who works for TMS as the Senior Director of Product Management, and resides in Oakland, California.

27.     On information and belief, Charles Guibord, Jr. is an individual who works for TMS as the Clinical Sales Manager, and resides in Newbury Park, California.

28.     On information and belief, Joseph Ciccanesi is an individual who works for TMS as the Director of Clinical Sales, and resides in Stratham, New Hampshire.

29.     On information and belief, Michael Chen is an individual who works for TMS as the Global Upstream Product Manager, and resides in Berkeley, California.

## III.     JURISDICTION & VENUE

30.     This Court has subject matter jurisdiction over CZMI's claims pursuant to the Federal Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1836-1839 *et seq.*, the Patent Act, 35 U.S.C. § 271, and 28 U.S.C. §§ 1331, 1338 and 1343.  The Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

31.     The Court has personal jurisdiction over all defendants.  A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District, as CZMI's principal place of business is located in this District.  Once they learned that Mr. Kurzke could be solicited in the fall of 2017, all of the Topcon entities worked together to recruit the Former Employees to join Topcon, and use the CZMI TRADE SECRETS and CZMI Confidential Information to compete with CZMI implausibly quickly in the ODx space.  All of the Former Employees were employed at CZMI's principal place of business in this District, were solicited by Topcon to leave CZMI's office in this District, and therefore at least a substantial part of the misconduct they committed was in this District.  At least 4 of the 8 individual defendants appear to be working for Topcon within this District (Tobias Kurzke, Genevieve Fay, Terry Keith

Brock, and Michael Chen), and reside in this District, while the others work remotely as they previously did for CZMI's principal place of business within this District. Many of the wrongful acts are being committed in this jurisdiction. A TC subsidiary has as least one location this District. Topcon sells products throughout the United States, including in this District.

32.     Venue therefore lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) and/or 1400(b).

## IV.     FACTUAL ALLEGATIONS

### A.     CZMI'S Leadership of the Ophthalmic Diagnostics Industry

33.     CZMI is part of the ZEISS Group, an internationally leading technology enterprise operating in the field of optics and optoelectronics, divided into four segments: Industrial Quality & Research, Medical Technology (of which CZMI is a part), Consumer Markets and Semiconductor Manufacturing Technology. The ZEISS Group is represented in more than 40 countries and has over 50 sales and service locations, more than 30 manufacturing services, and approximately 25 research and development centers around the globe. CZMI utilizes the strong global sales network of the ZEISS Group.

34.     The ZEISS Group's history dates back to the early nineteenth century, when famed inventor Carl Zeiss pioneered optical theory and optical instruments (such as the microscope), turning his innovations into one of the largest optical companies in the world today.

35.     Today, CZMI is one of many companies within the ZEISS Group that continues the proud tradition of nearly 200 years of innovation started by Carl Zeiss. CZMI, a subsidiary of Carl Zeiss Meditec AG ("CZM AG"), develops and supplies ODx technologies and systems to treat a wide variety of eye diseases from its U.S. headquarters in Dublin, California. CZM AG is divided into Ophthalmic Devices (of which the products at issue here are a part), and Microsurgery. CZMI's ODx Products support doctors and patients to diagnose and treat these ailments efficiently and precisely.

36.     For decades, CZMI has led the ODx industry in developing new treatments and more sophisticated testing for eye disease, including treatments for refractive, cataract, glaucoma

[CORRECTED] THIRD AMENDED COMPLAINT
CASE NO: 4:19-cv-04162-SBA

and retinal disorders. A May 2018 article summarizing the ODx industry states, "Carl Zeiss Meditec is the market leader in this segment, capturing an estimated 23 percent of total global ophthalmic revenues," which the article estimated at $3.3 billion in 2018 and growing. *See* Elman Decl., Ex. 5. The article notes that there are approximately 90 companies manufacturing ophthalmic diagnostic equipment, and that "many of Zeiss' products are leaders in their respective categories, and the firm and its collaborators have pioneered much of the basic technology used by ophthalmologists and optometrists today." *See id*.

37. Any organization wishing to compete in this industry must significantly invest in ODx, given the significant costs in research, development, medical devices, software, distribution and sales networks, and the extensive regulation across the entire healthcare industry. It is no coincidence that both CZMI and Topcon are part of large, multinational corporations that specialize in the ophthalmic industry. The industry closely watches each other and the commercialization of various technologies. Maintaining trade secrets and confidentiality are of paramount importance to protecting this substantial investment, which is typical in the industry.

38. Based on public filings over the past decade and a company presentation available on its website dated August 2017, CZM AG's revenue is regularly near or over a billion dollars per year globally in German Marks (over $500 million US), nearly 75% of which is based on the Ophthalmic Devices Strategic Business Unit of which CZMI is the U.S. subsidiary, which in turn is shown in the presentation generating approximately 1/3 of CZM AG's revenue. Based on this document, CZMI's relevant business unit generates approximately $40 million per year annually. CZM AG regularly spends over $100 million per year globally in German Marks (over $50 million US) on research and development, which includes the significant expense of developing products in this business unit (including CZMI's ODx Products) constituting approximately $4 million per year using the calculations, *supra*, from this document. *See* Elman Decl., Ex. 6.

39. Digitalization is changing the ophthalmic industry, as the use of data to connect health care providers, health insurance companies and patients opens up entirely new possibilities within the medical field to address major challenges facing health care systems. CZMI's ODx

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

Products are digital tools and software products to revolutionize eye care and detection of eye disease worldwide.

40.     CZMI spent the last 10-15 years developing software-related technologies and systems to augment its long-existing expertise in ophthalmic devices, which are a part of CZMI's Ophthalmic Devices Strategic Business Unit.  CZMI's ODx Products use various software-based technologies for imaging in the human eye for the treatment of macular degeneration, glaucoma, and other eye diseases.  CZMI's ODx Products have been approved by the Federal Drug Administration as medical devices cleared to be used after satisfying comprehensive regulatory requirements.  CZMI's ODx Products help uncover eye disease at an early treatable stage, provide significant diagnostic data and are major tools for ophthalmologists, optometrists, clinicians, and researchers ("eye care specialists") worldwide.

### B.     The CZMI ODx Products

41.     Amongst the CZMI ODx Products is FORUM.  It is an advanced, highly efficient data management solution that took many years to develop, which included millions of dollars spent on research, software design, software development, user testing, and implementation. CZMI has been marketing and selling the FORUM software application, in various iterations and configurations, continuously in the United States since 2009.  FORUM is a market-leading product that has, as of August 2017, more than 20,000 licensed viewers, and continues to increase in use.  *See* Elman Decl., Ex. 5.  FORUM is customizable for a very distinct set of eye care specialists who use it to perform life-saving research and medical care to treat serious eye ailments.

42.     CZMI first received FDA clearance for FORUM from the U.S. Food and Drug Administration (FDA) to market FORUM in March 25, 2009.  *See* Elman Decl., Ex. 7.  CZMI began to commercialize FORUM in 2009 after introducing it to the industry at the American Academy of Ophthalmology (AAO) annual meeting in October 2009.  *See* Elman Decl., Ex. 8.

43.     Another one of CZMI's ODx Products is Glaucoma Workplace.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

44.     CZMI first received clearance to market Glaucoma Workplace by the FDA in a July 23, 2013 letter, at which time Mr. Kurzke was the Product Manager for Glaucoma Workplace. *See* Elman Decl., Ex. 9.  CZMI took approximately four years from releasing FORUM commercially to similarly launch Glaucoma Workplace at the 2013 AAO annual meeting. *See* Elman Decl., Ex. 10.

45.     During the past 10-15 years, the ZEISS Group has spent significantly on its ODx Products for which it has received FDA approval and successfully launched, including FORUM and Glaucoma Workplace.  Commercializing a product requires significant software development, regulatory approval, testing, marketing and sales, and related documentation in support of those activities.

46.     As a heavily regulated company with significant trade secrets and other sensitive business information (including personal health information), in its possession, ███████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████████████████ ██████████████████████████████████. *See* Elman Decl., Ex. 11, filed under seal in redacted form.

47.     CZMI was not aware at the time of any of the Former Employees' departure(s) that they were potentially misappropriating files, documents, or information, so did not retain forensic data on CZMI's systems related to the Former Employees, which would be in violation of its corporate policies. *See* Elman Decl., Ex. 11.

48.     ██████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████

49. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

50.     Mr. Kurzke, like all of the Former Employees, is expressly prohibited from any copying, taking, sending, or removing of CZMI files pursuant to his Trade Secret and Confidential Protection Information ("TSCIP") Agreeement he signed on March 19, 2015.  *See* Elman Decl., Ex. 12.  Mr. Kurzke has, at the very least, violated his TSCIP Agreement by

████████████████████████████████████████████████

██████████████████████████████.  The other Former Employees also have the same or similar confidentiality obligations not to copy, take, send or remove any Confidential Information, including any trade secrets.  *See* Elman Decl., Ex. 13-19.  The Former Employees have breached these obligations by copying, taking, sending or removing of CZMI information, like ██████████████.  The other Former Employees have yet to disclose their CZMI devices for inspection, but CZMI expects that further discovery will provide further confirmation.

51.     CZMI has taken reasonable measures to protect the trade secrets of FORUM and Glaucoma Workplace, such as those referred to in Exhibit 11, and protected by the various employment and confidentiality agreements shown in Exs. 12-19.  All confidential documents at CZMI can only be accessed by authorized personnel who sign confidentiality agreements, and are not allowed to be used outside of CZMI.  *See* Elman Decl., Exs. 11-19.  CZMI ████████████

████████████████████████████████████████████████, so reasonable measures have been taken.  *See id.*

52.     However, despite these reasonable measures, the use of these documents within CZMI over many years means that versions of these documents are spread at CZMI to authorized

personnel such as Mr. Kurzke electronically, and can be misappropriated electronically, in paper form or otherwise by various means.  Mr. Kurzke's theft of ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████, if an employee chooses to violate CZMI's policies and their own confidentiality obligations.  Discovery is still ongoing as to the scope of this scheme by the Former Employees in violation of their obligations to CZMI.  *See* Elman Decl., ¶ 2.  CZMI will also be renewing its preliminary injunction to enjoin the use of CZMI TRADE SECRETS or CZMI Confidential Information in light of the initial revelations from its inspections of Defendants' devices.  *See* Elman Decl., ¶ 3.

### C.   The CZMI TRADE SECRETS, the CZMI Confidential Information, and the '251 Patent

53.     The CZMI ODx Products are powered by CZMI's proprietary FORUM software application, which is a pioneering data management software that allows eye care specialists to use data to easily collaborate to diagnose and treat various eye diseases.

54.     The FORUM software application is utilized by CZMI's industry-leading Glaucoma Workplace and Retina Workplace products.  The CZMI TRADE SECRETS are confidential methods that CZMI uses to manage, analyze and display FORUM data in these market-leading products.

55.     CZMI has also patented specific methods separate and apart from the CZMI TRADE SECRETS as the '251 Patent.  *See* Elman Decl., Ex. 4.  The '251 Patent names Mr. Kurzke as the lead inventor, along with two CZMI employees (one who has since retired, but was a prolific inventor at CZMI over his 34-year career).  The '251 Patent is assigned to CZMI.  The claims of the '251 Patent cover specific methods for displaying information of a patient's eye, including receiving certain measurements and generating a side by side display of those measurements.  It does not disclose any of the CZMI TRADE SECRETS.[4]

---

[4] CZMI voluntarily withdrew one prior CZMI TRADE SECRET at Defendants' request because they claimed it was covered by the '251 Patent.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

56. CZMI's Glaucoma Workplace and Retina Workplace are market-leading, FDA-approved eye care data management products that utilize the FORUM software application. FORUM, Glaucoma Workplace, and Retina Workplace were designed, developed and commercialized by CZMI over a period of many years.

57. Glaucoma Workplace and Retina Workplace are uniquely designed for hospitals and large clinic groups to diagnose and manage glaucoma by assessing the progressive change of the disease. Glaucoma Workplace manages, analyzes and displays various types of data to be shared amongst diagnostic workstations simultaneously. Glaucoma Workplace and Retina Workplace are the market leaders in creating certain reports from this data to identify statistically significant and progressive visual field loss, which is a significant advancement over the use of paper files.

58. Mr. Kurzke served as a Product Manager specifically for over three years for Glaucoma Workplace, including having responsibility for Glaucoma Workplace as recently as 2018, and he also had responsibility for Retina Workplace from 2016-2018 part of three years as it was being released. At the time he left CZMI, he was responsible for both products as a product manager, for which he described himself as the "hub" of all activities surrounding the product.

59. Mr. Kurzke had previously worked as a key Software Program Manager and System Integration Manager for five years in his career at CZM AG.

60. During his 13 year career at both CZM AG and CZMI, he was closely involved with the research and development/engineering, sales, clinical, and regulatory groups, and at times had global resposibility for market introduction of integrated software solutions for both glaucoma (Glaucoma Workplace) and retinal diseases (Retina Workplace).

61. All of the other Former Employees also had roles for the CZMI ODx Products that included Glaucoma Workplace and Retina Workplace amongst many products in which they were involved.

62. In addition to Mr. Kurzke, many of the Former Employees had roles that relate to CZMI TRADE SECRETS NOS. 1-115. Greg Hoffmeyer had a sales and technical role,

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

specializing in Optical Coherence Tomography (OCT), a very important type of data used that is utilized by the CZMI ODx Products, complementary to the expertise of Keith Brock and Michael Chen, who had sales and technical roles for fundus imaging, which is a different type of important data that is utilized by the CZMI ODx Products. Together with Mr. Kurzke, they have much of the technical expertise to advise an engineering team and others at Topcon as to the CZMI TRADE SECRETS, such as CZMI's methods and techniques for processing, analyzing and displaying OCT data and fundus photography collected from CZMI's hardware devices, and the decisions made by CZMI as to the proper software configuration and modules that were implemented to process, analyze and display the data in the CZMI ODx Products, which are disclosed at least in CZMI TRADE SECRETS Nos. 17-78, if not more.

63. As to sales and marketing roles, that would likely relate to CZMI TRADE SECRETS NOS. 107-115, Joseph Ciccanesi and Charles Guibord had product-level and separate geographic responsibility for selling various CZMI ODx Products, and were part of the CZMI sales team that had included John Trefethen and Grant Schmid who had previously left CZMI for Topcon and led the recruitment effort. Genevieve Fay previously had global responsibility for the CZMI ODx Products. Katalin Spencer led the logistical operations of national and international events that involved CZMI ODx Products that included creating presentations, promotions and graphics and assisting with new product launches. John Trefethen participated in the recruitment for these roles, knowing that these CZMI employees had experience that could be used to further the scheme.

64. Each of the Former Employees were recruited to Topcon by former CZMI employees, including John Trefethen and Grant Schmid, appearing to have been recruited as part of a coordinated effort to gather people with different types of experience related to the CZMI ODx Products.

65. ██████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████ The CZMI TRADE SECRETS related to Glaucoma Workplace and

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

1   FORUM (to the extent relevant) are disclosed in Exhibit 1 to the Elman Decl.  Exhibit 1 contains

2   a list of 115 specific trade secrets disclosed with particularity to separate them from matters of

3   general knowledge in the trade, and is drawn extensively from CZMI's confidential and

4   proprietary technical documents.  CZMI may disclose additional CZMI TRADE SECRETS as

5   discovery progresses if other competing products are disclosed.

6       66.    The CZMI TRADE SECRETS have tremendous value to CZMI, as part of

7   CZMI's significant portion of CZM AG's typically billion dollar annual revenue (in German

8   Marks) as the leader in the ODx industry.  *See* Elman Decl., Exs. 5-6.

9       67.    The CZMI TRADE SECRETS disclosed in Exhibit 1 contain the listing of 115

10  particular trade secrets that form the basis of the misappropriation of trade secrets claims that the

11  Court has specified would adequately discharge CZMI's obligation at the pleading stage to

12  describe the trade secret information at issue.  *See* ECF No. 75, at 6:22-7:2.

13      68.    Exhibit 1 containing the CZMI TRADE SECRETS is a heavily detailed, 65-page

14  document that cites directly to Exhibits 20-26, as applicable, to provide sufficient notice of the

15  CZMI TRADE SECRETS to discharge CZMI's reasonable notice obligations as to Glacuoma

16  Workplace and related software.  ███████████████████████████████████████

17  ███████████████████████████████████████████

18  ███████████████████████████████████████████████

19  ███████████████████████████████████████

20      69.    CZMI's expert, Dr. George T. Ligler, a former Rhodes Scholar and Dean's

21  Eminent Professor of the Practice of Biomedical Engineering in the University of North Carolina-

22  Chapel Hill/North Carolina State University Joint Department of Biomedical Engineering, has

23  over 40 years' experience in the software industry.  Dr. Ligler, a person skilled in the trade of

24  software development for medical device software, has reviewed both the CZMI TRADE

25  SECRETS and the publicly-available information proposed by both parties relevant to this matter.

26  *See* Declaration of George T. Ligler Decl., ¶¶ 1-16.

27

28

70. Dr. Ligler has stated that CZMI has disclosed the CZMI TRADE SECRETS with sufficient particularity to separate what CZMI is asserting to be the CZMI TRADE SECRETS from matters of general knowledge in the trade, such as the publicly-available information cited by both parties. *See* Ligler Decl., ¶ 17.

71. Dr. Ligler has further stated that the CZMI TRADE SECRETS permit a person skilled in the software development trade for medical device software to ascertain at least the boundaries within which what CZMI contends the secrets lie. *See* Ligler Decl., ¶18.

72. The Ligler Declaration confirms that CZMI has properly disclosed its trade secrets so that a person skilled in medical software development would be capable of understanding the designation and of distinguishing the alleged trade secrets from information already known to persons in the field. *See* Ligler Decl., ¶¶ 13-18.

73. While CZMI TRADE SECRETS Nos. 1-115 are specifically identified in Exhibit 1, filed under seal, CZMI publicly lists the descriptions of Sections A-F, as follows:

- Section A (Trade Secret Nos. 1-16): Configuration of Glaucoma Workplace Software Components - The confidential methods and techniques used to collect data using the FORUM software application that combines Humphrey Field Analyzer (HFA) perimetry data (functional), Optical Coherence Tomography (OCT) data (structural), as well as customizable data such as Retinal Nerve Fiber Layer (RNFL) and/or fundus photography and/or Guide Progression Analysis (GPA) to provide comprehensive overviews of structural and functional exam results of patients for a complete statistical progression analysis as identified in the Product Requirements Specification in CZMI679-693. The combination of these various types of data is unique within the industry, and shown by the software designs described in Rev 3.1 of the SW Design document at CZMI961-1015 ("Glaucoma Workplace SW Design") to create various data and reports;

- Section B (Trade Secret Nos. 17-64): Combining Visual Field, OCT and Fundus Photography - The confidential methods and techniques for processing, analyzing

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

and displaying visual field data (VF), OCT data and fundus photography collected from CZMI's hardware devices, such as CIRRUS, HFA, and CLARUS, in the FORUM software application identified in the Glaucoma Workplace Product Requirements Specification in CZMI679-693. The decisions made by CZMI as to which software configuration and modules are implemented to process, analyze and display the data collected is shown in CZMI's Detailed SW Requirements Specification (Rev. 3.4), at CZMI709-930.

- Section C (Trade Secret Nos. 65-71) - HFA Visual Field Data – The confidential method and technique for processing, analyzing and displaying proprietary Humphrey Field Analyzer (HFA) Visual Field data by implementing Humphrey Field Analyzer HFA algorithms and databases for visual field measurements and Guided Progression Analysis (GPA) as identified in the Glaucoma Workplace Product Requirements Specification in CZMI679-693. These trade secrets relate specifically to the collection of HFA data for use in Glaucoma Workplace.

- Section D (Trade Secret Nos. 72-78): CIRRUS OCT Data – The confidential method and technique for processing, analyzing and displaying proprietary Cirrus OCT data by implementing CIRRUS-based proprietary algorithms and proprietary normative databases using the FORUM software application for RNFL, ganglion cell plus inner plexiform thickness, optic nerve head measurement (ONH) and HFA algorithms and databases for visual field measurements and GPA as identified in the Glaucoma Workplace Product Requirements Specification in CZMI679-693. These trade secrets relate specifically to the collection of OCT and perimetry data for use in Glaucoma Workplace.

- Section E (Trade Secret Nos. 79-106): The processes and/or procedures used by CZMI, including Mr. Kurzke while he worked there, regarding the design and development of the Glaucoma Workplace product for use with CZMI's hardware devices and the data generated by those hardware devices. The information in this

Section incorporates the information from a product management standpoint that is then documented in software requirements and design documents referenced in Sections A-D, *supra*.

- Section F (Trade Secret Nos. 107-115): CZMI's sales and marketing teams have specific, customer-based proprietary and trade secret information. CZMI maintains strict controls over the disclosure and use of this information. The sales and marketing teams mainly rely on CZMI's Customer Relationship Management software that CZMI has customized for its use to maintain this information confidentially. CZMI does not publicly disclose this information. While certain information, such as contact information, is publicly known, a substantial amount of information is proprietary or trade secret, including the compilation of information that would not be possible without a significant investment or time, money and manpower, giving such information independent economic value because it is not generally known or readily ascertainable.

74.     The CZMI TRADE SECRETS Nos. 1-106 disclose information used to design and develop Glaucoma Workplace, including many citations to the exact page (by production number) where each of the trade secrets is contained within the universe of CZMI's sophisticated software design and development documents. The information cited in Exs. 20-26 are merely the most recent versions of relevant design and development documents, and only illustrative of the universe of documents that CZMI maintains in order to support Glaucoma Workplace. The documents themselves reference a plethora of other CZMI documents that are part of the design and development of Glaucoma Workplace, including relating to its data management application, FORUM. *See* Elman Decl., Exs. 20-26.

75.     CZMI TRADE SECRETS Nos. 107-115 further describe the marketing and sales trade secrets related to CZMI's ODx Products. These trade secrets specifically describe the information possessed mainly by Former Employees who are in marketing and sales roles, such as Messrs. Guibord, Ciccanesi, and Ms. Fay and Ms. Spencer, ████████████████████

███████████████████████████████████████████████
████████████████████████████████ .

76.     The documents attached as Exs. 20-26 to the Elman Decl. were developed and reviewed exclusively by CZMI, including with and by Mr. Kurzke, in conjunction with the ZEISS Group's software development team.  Mr. Kurzke typically led the process of developing the product requirements in the U.S. and assisted in the overall product requirements development for Glaucoma Workplace, which then informed the software developers in their creation of software design, software descriptions, and, more significantly, software requirements specifications (SRS), ███████████████████████████████████████████████ ██████████ . By any measure, he was heavily involved in the development of the CZMI TRADE SECRETS and CZMI Confidential Information that are disclosed in these illustrative documents.

77.     CZMI's development of Glaucoma Workplace, for example, includes many of the CZMI TRADE SECRETS and CZMI Confidential Information to which the Former Employees had access.  This includes, but is not limited to, the latest revisions (as of April 2018) of the following documents:

- FORUM Glaucoma Workplace Product Requirements Specification (Ex. 20) (specifically reviewed and approved by Mr. Kurzke);
- FORUM Product Requirements Specification (Ex. 21)*;*
- FORUM Glaucoma Workplace SW Design (Ex. 22);
- FORUM Glaucoma Workplace SW Architecture Design (Ex. 23);
- FORUM Glaucoma Workplace SW Release Description (Ex. 24);
- FORUM Glaucoma Workplace Detailed SW Requirements Specification (Ex. 25);
- FORUM Glaucoma Workplace SW Requirements Specification (Ex. 26).

78.     As shown by ███████████████████████ , he participated in the development of many CZMI Products, such as CZMI ODx Products such as FORUM, Glaucoma Workplace, Retina Workplace, and CZMI hardware products such as CIRRUS, HFA,

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

and CLARUS.  *See* Elman Decl., Ex. 2; Ex. 3. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

79.     Since Topcon has to date maintained that it is only developing Glaucoma Module

to compete with CZMI, CZMI will provide additional trade secrets during discovery if it is

revelaed that Topcon is developing other competing products, such as a competitor to Retina

Workplace, a software that uses CZMI's CLARUS devices related to wide-field imaging (due to

the expertise of Mr. Brock and Dr. Chen), or any further competition to FORUM or the ARI

Portal to the extent Topcon incoroporates CZMI TRADE SECRETS or CZMI Confidential

Information.

**D.  Defendants Misappropriated CZMI Trade Secrets and Confidential Information**
**By Acquiring, Disclosing and/or Using, Among Other Things, Over 35,000**
**Stolen CZMI Files**

80.     CZMI spent many years developing the CZMI ODx Products, for which the

Former Employees were key executives, developers, salespersons, marketers, and implementers,

and their role varied over the many years that each was at CZMI.  As described, *supra*, all of the

other Former Employees also had roles for the CZMI ODx Products that included FORUM,

Glaucoma Workplace and Retina Workplace amongst many products in which they were

involved.

81.     Each of the Former Employees signed employment and/or confidentiality

agreements that prevented them contractually from disclosing or using CZMI's Confidential

Information, including but not limited to trade secrets and other confidential information that is

valuable to CZMI.  *See* Elman Decl., Ex. 12-19 (Former Employees' Agreements).

82. Defendants have misappropriated the CZMI TRADE SECRETS or breached their duty to maintain the CZMI Confidential Information at least related to the Glaucoma Workplace product, starting on or before April 30, 2018, when Mr. Kurzke started working at newly-launched THS after leaving CZMI ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████, and extensive, unique knowledge of the CZMI TRADE SECRETS and CZMI Confidential Information.

83. In early 2018, after TMS started recruiting Mr. Kurzke, TC and TMS launched a new software division, THS, to build software products to make up for CMZI's six-year head start on ODx software products. The recruitment started as early as November 2017 by former CZMI employees already at Topcon, including John Trefethen and Grant Schmid.

84. TC, TMS, and THS all deliberately engaged in a scheme to hire CZMI employees, including Mr. Kurzke and other CZMI employees, to acquire the CZMI TRADE SECRETS and CZMI's Confidential Information to develop competing knockoff products. TC and its subsidiaries all aided, abetted and condoned the raid on CZMI, the well-known market leader in this space. TC and THS constantly asked Mr. Kurzke and others for non-publicly available information about the CZMI ODx Products in to help them develop knockoff products implausibly quickly.

85. Upon arriving at Topcon, Mr. Kurzke immediately spearheaded the development of the knockoff products ████████████████████████████████████████████ █████████████████████████████████. Not only did Mr. Kurzke update the Business Requirements Document for THS within his first few weeks, within only seven months of starting this new division, Topcon claimed to the World Glaucoma Congress to have developed the product that it now calls "Glaucoma Module" (described in ECF No. 28). This claim was based expressly on Topcon's decision to challenge CZMI's market leadership of the software ODx space, as shown by its own internal communications.

86. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

87.     CZMI therefore has direct evidence that the Former Employees misappropriated trade secrets and confidential information for THS to skip key development activities so it could develop their own knockoff versions of the CZMI ODx Products implausibly quickly.

88.     Defendants clearly knew or should have known of this misappropriation and confidentiality breach, as CZMI asked Mr. Kurzke to return all CZMI information by letter dated March 7, 2019, which was provided to Topcon at or around the same time.  *See* Elman Decl., Ex. 27. ████████████████████████████████████████

████████████████████████████████████████████

89.     In this Third Amended Complaint, CZMI has provided specificity and insight as to the particular CZMI TRADE SECRETS referred to or what insight was provided by the misappropriation, with citation to specific documents in Exhibit 2 and Exhibits 28-34 of the Elman Declaration in support of the Third Amended Complaint, filed under seal (except for Exhibit 29, which was publicly presented).

90.     As shown in Exhibits 2-3, this is a not a case of CZMI claiming that there was an "inevitable disclosure." █████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ All or mostly all of these files contain CZMI TRADE SECRETS and CZMI Confidential Information.  Mr. Kurzke was not allowed to copy any of this information and keep it after he left CZMI pursuant to his Confidentiality Agreement with CZMI,

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

which CZMI diligently pursued as soon as it had notice of a potential violation. *See* Elman Decl.,
Exs. 12, 27.

91. ███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████ The documents

already produced by Topcon confirm that Topcon has misappropriated the CZMI TRADE

SECRETS and CZMI Confidential Information.

92. ████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

93. ████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

94. ████████████ Topcon had submitted a poster, referred to as an "Abstract" (Elman Decl., Ex. 29, referred to herein as the "Abstract"), for the World Glaucoma Congress for a presentation in March 2019. ████████████████████████ ████████████████████████

95. Exhibits 29-34, including the Abstract, are documents created in 2018-2019 that demonstrate the particular CZMI TRADE SECRETS that were misappropriated by Topcon, specifically as shown in the following exemplary chart:

| CZMI TRADE SECRET NO. | DESCRIPTION | COMPLAINT EXHIBITS |
|---|---|---|
| 1-5. 91 | Client-server architecture | Exhibit 31, 32 |

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

| 6-12, 93 | Using specific application programming interfaces (APIs) | Exhibit 31, 32 |
|---|---|---|
| 12-15, 21-29, 66-78 | Specific methods to manage and analyze structural (OCT) and functional (visual field) data | Exhibits 29, 31, 32 |
| 36, 39-42 and 50-60 | Specific methods to display structural (OCT) and functional (visual field) data | Exhibits 28-29, 31-33 |
| 79-85, 95-98, and 100 | Specific software to manage, analyze and display data | Exhibits 29, 31-32 |

Exhibits 29-34 confirm that Topcon incorporated the trade secret methods and techniques CZMI pioneered, taught to Mr. Kurzke by CZMI and ████████████████████████████, and that were misappropriated and misused when Mr. Kurzke joined Topcon to develop a knockoff of CZMI's Glaucoma Workplace products.

96.     The Abstract disclosed screenshots of the product Topcon now calls "Glaucoma Module". Mr. Kurzke was a co-author of the Abstract, which claimed to present "a strategy for clinical testing information management specifically designed for the [glaucoma suspects]." *See* Elman Decl., Ex. 29.

97.     The Abstract specifically refers to a new competing product under development by Topcon by claiming that Topcon had developed a specific "analysis and presentation" to "guide the clinician in identifying the earlier evidence of change and the confirmatory presence of a structure function correlation." Images of Topcon's new competing product (its "strategy" or "analysis and presentation") are shown below in graphic format, with one version being the "Diagnosis" screen and one being the "Management" screen:



98.     The Abstract proposed that this "analysis and presentation" (now-named "Glaucoma Module") may be "better attuned to the management of 'glaucoma suspects'" than CZMI's Glaucoma Workplace, which Topcon claimed was instead focused on "progressive change". In its "Conclusions," the Abstract stated that "[a]lthough current analysis and display algorithms are used for patients with G or GS, they are more optimally designed for progressive change. The algorithm presented may be an alternative that is better attuned to the management of GS." *See* Elman Decl., Ex. 29. Topcon clearly proposed that it was developing a new competing product to better perform "management" of glaucoma then CZMI's product.

99.     The Abstract evinces misappropriation of at least CZMI TRADE SECRETS Nos. 25-29, 39-42, and 97-98 through Topcon's proposed "analysis and display" of "physical tissue measurements."

100.     Topcon developed the analysis and display shown by the Abstract by misappropriating CZMI TRADE SECRET methods and algorithms into the Glaucoma Module. Specifically, the proposed methods misappropriate CZMI TRADE SECRETS Nos. 25-29, 39-42, and 97-98 for analyzing and displaying structural measurements like retinal nerve fiber layer (RFNL) and ganglion cell layer (GCL), as well as functional measurements like visual field data, which Topcon calls "threshold visual field (TVF)."

101.     Mr. Kurzke played a significant role in developing and furthering CZMI's analysis and display of these very CZMI TRADE SECRETS Nos. 25-29, 39-42, and 97-98 while at

CZMI. ████████████████████████ support that he was heavily involved in the methods for analyzing and displaying structural measurements, and he is the lead inventor on CZMI's '251 Patent related to a specific method for displaying certain data. Thus, Mr. Kurzke was well positioned to obtain and misappropriate the exact CZMI TRADE SECRETS Nos. 25-29, 39-42, and 97-98 displayed in the Abstract that shows the display being utilized in Topcon's "Glaucoma Module" product.

102. Aside from the clear evidence of misappropriation of CZMI TRADE SECRETS Nos. 25-29, 39-42, and 97-98 shown in the Abstract, Topcon misappropriated the CZMI TRADE SECRETS to copy and recreate the appropriate software design, requirements and specifications needed to develop and commercialize "Glaucoma Module" as presented in the Abstract. Exhibit 30 is ████████████████████████████████████████████████████████████

103. Mr. Kurzke then joined Topcon. Exhibit 31 is ████████████████████████

AMERICAS 101073357

[CORRECTED] THIRD AMENDED COMPLAINT
CASE NO: 4:19-cv-04162-SBA

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

104. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████ This process of translating business requirements to software requirements is similar to the process used to create Glaucoma Workplace at CZMI, which is also shown by ███████████████████████. The numerous examples of misappropriation included in or specifically referenced within Topcon's documents Exhibits 31 and 32 are illustrated as follows:

- ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

- CZMI TRADE SECRETS Nos. 12-15, 21-29, 36, 39-42 and 50-60 contain specific techniques for visualizing OCT data, including from the CZMI devices,

which were misappropriated by Topcon in its business requirements (Exhibit 31) and further specified in its software requirements (Exhibit 32) for Glaucoma Module. All of these trade secrets were well known to Mr. Kurzke during his employment at CZMI and he brought this knowledge to Topcon, such as in Section 3.6 of Exhibit 31:



This misappropriation is also carried through into Section 8 of the software developers' requirements (Exhibit 32):



- In yet another instance of misappropriation, CZMI TRADE SECRET No. 27 (and many related CZMI TRADE SECRETS), which disclose certain techniques for displaying more than a dozen specific elements in a single report, was misappropriated by Topcon. This trade secret includes virtually identical data to that requested by Mr. Kurzke in Exhibit 31 and repeated in Exhibit 32. This trade

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

secret was well known to Mr. Kurzke during his employment at CZMI and he

brought this knowledge to Topcon:

- As yet another example, CZMI TRADE SECRET No. 51 is the technique used to

create

This trade secret was well known to Mr.

Kurzke during his employment at CZMI and he brought this knowledge to

Topcon:

AMERICAS 101073357

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

105. 

106.

107.

108.

109.    Exhibit 33 is an example of the type of reporting for specific methods and techiques that Topcon has made possible based on the Glaucoma Campaign, the Abstract, and the BRD (all authored or co-authored by Mr. Kurzke), and the SRS document where Mr. Kurzke instructed Topcon software developers to place this information into software.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

110.    The facts accordingly demonstrate that Topcon's marketing and technical documents started utilizing the CZMI TRADE SECRETS at or around this time, including but not limited to CZMI TRADE SECRETS Nos. 12-15, 21-29, 36, 39-42, 50-60, 79-85, 91, 93, and 95-98, 100, and 107-115.

111.    Topcon is releasing a product it calls "Glaucoma Module" presently which misappropriates and misuses the CZMI TRADE SECRETS and Confidential Information.  Topcon plans to produce it in the next few months.  *See* Elman Decl., Ex. 3 at 161:22-162:25.

112.    Defendants' scheme is not only limited to Glaucoma Module.  On information and belief, Topcon is also developing other products via misappropriation that are intended to directly compete with other CZMI ODx Products.

113.



114.

115.    CZMI anticipates that discovery will reveal if any other competing products are being developed using CZMI TRADE SECRETS or confidential information.

116.    Indeed, Topcon is no stranger to being enjoined from such activity by a U.S. court. A federal court previously found that Topcon committed similar misconduct against a competitor. *See Optos, Inc. v. Topcon Medical Systems, Inc. et al,* Case No. 1:10-cv-12016, Dkt. No. 36 (Preliminary Injunction), Dkt. No. 58 (Consent Judgment) (D. Mass. 2012).  In 2012, the District of Massachusetts issued an injunction and an eventual consent judgment against Topcon and one of their employees for stealing customer information from a competitor.  If the Former

1 Employees are allowed to disclose trade secret and/or confidential information and to continue

2 doing so without being enjoined, it could have disastrous consequences for CZMI and the patients

3 who rely on CZMI's industry-leading products to provide life-saving eye care that cannot be

4 compensated merely by monetary damages.

5 117. Not only would the development and release of competing products based on

6 misappropriated trade secrets and confidential information damage CZMI and its customers, but it

7 will also have the effect of harming CZMI by denying it the right to control its research and

8 development efforts and technology from theft by employees.

9 118. As a result, CZMI has been forced to bring this action to enforce its valuable

10 intellectual property rights and its confidentiality agreements with these Former Employees

11 before it is too late.

12 **E. Defendants Knew or Had Reason to Know That the CZMI TRADE SECRETS**

13 **and CZMI Confidential Information Were Acquired by Improper Means**

14 119. The facts show that Defendants' actions were undertaken as a means for Topcon to

15 shortcut in the creation and sale of a competing product with CZMI's Glaucoma Workplace. *See*

16 Exhibit 9. As mentioned with the aforementioned *Optos* matter, *supra*, Topcon has shown a

17 history in utilizing such schemes before.

18 120. The comprehensive development of the comparable CZMI's ODx Products took

19 over a decade.

20 121. THS did not exist prior to February 2018, and currently has only 86 employees in

21 the U.S. and 34 in Finland. *See* Elman Decl., Ex. 35. Yet Topcon proposed to the industry that

22 they had an "analysis and presentation" and a "strategy" to compete with CZMI's ODx Products

23 within just seven (7) months of starting its "Glaucoma Module" project.

24 122. Topcon knew or should have known that it needed to rely on improper means to

25 develop a competing product as quickly as proposed by TC, TMS, and its new subsidiary, THS.

26 123. CZMI has now uncovered at least a part of the means by which Defendants

27 acquired, disclosed or used the CZMI TRADE SECRETS and CZMI Confidential Information.

28

█████████████████████████████████████████████████████████████████████████████

████████████████████████████████████ Similarly, Topcon knew or should have known that any

confidential information, and any information from CZMI that had independent economic value,

which was provided by Mr. Kurzke or the Former Employees, was obtained by improper means.

124.    Additionally, on information and belief, at least some of the Former Employees

besides Mr. Kurzke had access to and acquired similar documents and information that contained

the CZMI TRADE SECRETS.  These allegations are made on information and belief because

Topcon refuses to substantially participate in discovery to date.  Defendants have delayed

providing its employees for depositions noticed long-ago, failed to provide Topcon and personal

devices for inspection, and have only produced a limited set of documents.[5]

125.    Additionally, on information and belief, after ending their employment with

CZMI, the Former Employees then disclosed and/or used said documents and information in

conjunction with their employment at Topcon.  As stated above, Defendants have refused and

delayed CZMI's extensive discovery requests, including forensic discovery, of the files and

documents that CZMI reasonably believes were taken from CZMI's confidential system before or

when the Former Employees departed.  This would include the use of external storage devices

██████████████████████████, printouts, emails to personal cloud-based accounts, or other means

of transmitting information.  ███████████████ is merely the tip of the iceberg of what

Topcon has taken from CZMI.

126.    Taking into consideration the totality these events, ████████████████, the

many instances where Topcon knowingly solicited information that was not generally known

from the Former Employees, the discovery that Defendants have delayed and refused to provide,

and Topcon's prior experience of misappropriation through a similar scheme in the *Optos* matter,

Topcon misappropriated trade secrets and confidential information from CZMI that they knew or

should have known were acquired by improper means from CZMI.

---

[5] CZMI intends to compel information regarding access and acquisition of the CZMI TRADE SECRETS and CZMI Confidential Information through motion practice as discovery progresses, if necessary.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

## F. Defendants' Glaucoma Module Infringes The '251 Patent

127. On May 15, 2018, U.S. Patent No. 9,968,251 ("the '251 Patent"), titled COMBINED STRUCTURE-FUNCTION GUIDED PROGRESS ANALYSIS, was issued to Tobias Kurzke, Matthias Monhart, and Vincent Michael Patella, all of CZMI at that time. A true and correct copy of the '251 Patent is attached to the Third Amended Complaint as Exhibit 4 and is incorporated by reference herein.

128. All rights, title, and interest in the '251 Patent have been assigned to CZMI, who is the sole owner of the '251 Patent. CZMI has been the sole owner of the '251 Patent since its issuance.

129. The '251 Patent is generally directed toward methods of displaying certain types of data, and more particularly, displaying information of a patient's eye, including receiving certain measurements and generating a side by side display of those measurements. One of the ways this is accomplished is by generating a specific visual measurement over a common time scale.

130. CZMI reached out to Topcon as early as December 20, 2019 to provide notice that Topcon should be aware that Glaucoma Module may infringe the '251 Patent. A copy of the letter is attached to the Elman Decl. as Exhibit 36. The letter attached a copy of the '251 Patent

131. Topcon makes, uses, sells, offers for sale, and/or imports into the United States and this District its Glaucoma Module products.

132. Topcon has been and is now infringing, and will continue to infringe, at least Claim 1 of the '251 Patent pursuant to 35 U.S.C. § 271(a) in this District and elsewhere in the United States by, among other things, making, using, testing, importing, selling, and/or offering for sale its Glaucoma Module products, ███████████████████████ ██████████████████████.

133. Claim 1 of the '251 Patent includes a method of displaying combined structural and functional disease progression information of a patient's eye, which is used by the Glaucoma Module product (at the Glaucoma Trend screen) which has been publicly disclosed on multiple

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

occasions (including in Exhibit 30) and █████████████████████████

███████████████:



134.  Claim 1 of the '251 Patent also includes receiving a set of structural measurements of the patient's eye, said set of structural measurements taken at a plurality of testing dates, as shown by the above display because the screen shown above receives a set of structural measurements taken on two dates (e.g., 8/3/2018 and 2/14/2019).

135.  Claim 1 of the '251 Patent also includes receiving a set of functional measurements of the patient's eye, said set of functional measurements taken at a plurality of testing dates, as shown by the above display because the screen show above receives a set of functional measurements taken on two dates (e.g., 8/3/2018 and 2/14/2019).

136.  Claim 1 of the '251 Patent also includes generating a single viewport comprising a side by side display of structural and functional measurements over a common time scale, wherein each of the structural and functional measurements in the generated viewport has a testing date falling within the common time scale, as shown by the above display of a single viewport comprising a side by side display of the structural and functional measurements that have a testing date that falls within the common time scale (e.g., 8/3/2018 and 2/14/2019).

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

137. Claim 1 of the '251 Patent also includes displaying the generated single viewport or storing results of the generated single viewport, as shown by the above display.

138. Topcon has had specific knowledge and notice of its infringement of the '251 Patent since at least in or about December 2019, when CZMI specifically identified and described products made, used, or sold by Defendants as infringing the '251 Patent. *See* Elman Decl., Ex. 36.

### G. Defendants' Tortious Interference With Prospective Economic Advantage

139. Mr. Kurzke's April 27, 2018 resignation from CZMI was followed by Mr. Hoffmeyer's on July 6, 2018. Similarly, Mr. Hoffmeyer was a similarly long-time employee of CZMI, having started a year after Mr. Kurzke. Mr. Hoffmeyer was a sales executive with responsibility for many of CZMI's ODx Products, especially related to OCT-related products that Topcon is currently misappropriating, such as Glaucoma Module.

140. Mr. Hoffmeyer's resignation was followed by Ms. Fay's on October 12, 2018. Ms. Fay joined CZMI in 2011, and served as Director of Marketing with responsibility for many of CZMI's ODx Products, including Glaucoma Workplace.

141. Mr. Fay, Mr. Hoffmeyer and the employees who followed them from CZMI to Topcon possessed significant product, marketing and sales trade secrets related to CZMI's ODx Products.

142. The departure of Ms. Fay and Mr. Hoffmeyer following Mr. Kurzke's within a few months of each other in mid to late-2018 was a significant and coordinated recruitment effort by TC and TMS to bring together different aspects of CZMI's team in the growing space for ODx products when launching THS. TC was involved in this process, leading its subsidiaries to raid CZMI for a group of its key employees with knowledge of CZMI ODx Products.

143. CZMI became concerned in late 2018 when it started hearing from customers and industry sources that Topcon was engaging in acts designed to disrupt CZMI's relationships with Glaucoma Workplace customers and others in the ODx space. To date, CZMI is aware of at least disruption with CZMI's relationships multiple eye care specialists who had relationships with

both companies, including customers, prospective customers and those in the ODx space. *See* Elman Decl., Ex. 37-38.

144. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████ This is independently actionable and was created because of the Former Employees joining Topcon.

145. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████ This is independently actionable and was created because of the Former Employees joining Topcon.

146. ████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████ All of these individuals and entities received communications from Topcon based on the actions of the Former Employees, and the interference was created because of the Former Employees. This list is not exhaustive and CZMI anticipates that discovery will show more relationships as to which Topcon interfered.

147. In addition, Topcon has appeared at various conferences to promote Glaucoma Module to CZMI's detriment, including the November 2019 AAO Conference in California and the International Meeting on OCT Angiography and Advances in Imaging. On information and belief, Topcon interfered with customer relationships at these and other conferences.

148. These communications are separately and independently actionable from the trade secrets and confidential information that was misappropriated and misused because the Topcon salesforce is intentionally harming CZMI's current and prospective relationships by spreading

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

-38-

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

1    this negative information to harm CZMI's market share.  On information and belief, CZMI has

2    lost customers, prospective customers and goodwill in the industry as a result of the Former

3    Employees' actions.

4        149.    CZMI's suspicions were confirmed by the accidental receipt of an internal Topcon

5    email dated February 22, 2019, written by Mr. Hoffmeyer to Ms. Faye and many others, and

6    accidentally sent to a "Tobias" (Winkler) of the ZEISS Group, instead of Tobias Kurzke (now of

7    Topcon), that exposed a coordinated scheme by Topcon to harm CZMI by telling current and

8    prospective CZMI customers that Topcon, with "great input from Tobias," would be able to

9    compete with CZMI.  *See* Elman Decl., Ex. 39.

10       150.    This intercepted email showed that Topcon regularly discusses CZMI's ODx

11   Products, and how to interfere with CZMI's contractual relationships.  Ms. Fay ███████████

12   ████████████████████████████████████████████████████████████████████████

13   █████████████████████████████████████████████.  On information and belief, these

14   claims are being repeated to CZMI's customers.

15       151.    This intercepted email also showed that Mr. Hoffmeyer responded to Ms. Fay's

16   email agreeing with her claim that █████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████.

21       152.    In March 2019, as Topcon continued to get closer to commercializing Glaucoma

22   Module as it had been promoting, Topcon continued to recruit many CZMI employees between

23   that time and the present who had significant expertise with CZMI's ODx Products, such as

24   Messrs. Brock and Chen potentially to work on a competitor to the CLARUS wide-field imaging

25   products, and Messrs. Guibord and Ciccanesi in sales roles.

26       **H.  The Former Employees' Agreements**

27

28

153. CZMI communicates in writing to its employees that all competitive information is confidential and not to be disclosed outside the company, and that such obligations last beyond their employment. In addition to the various security measures CZMI takes to protect its confidential information, CZMI also requires its employees to sign confidentiality agreements (either as part of employment agreements or separately), and requires exiting employees to complete exit interviews and return all CZMI information before leaving. *See* Elman Decl., Exs. 11-18.

154. CZMI maintains either Employment Agreements or a Trade Secret and Confidential Information Protection ("TSCIP") Agreement for each and every CZMI employee involved with CZMI's ODx Products. *See id.*

155. On information and belief, all of the Former Employees have violated the confidentiality provisions of their Employment or TSCIP Agreements.

156. The Former Employees have breached these agreements by disclosing Confidential Information, regardless of whether it constitutes trade secrets under the DTSA or the CUSTA, which is "non-public information of value to Company that Employee learned in connection with Employee's employment with Company and that would be valuable to a competitor or other third parties", or "not known by actual or potential competitors of the Company, proprietary information of the Company or its customers or suppliers, or information designated by the Company as Confidential."

157. Mr. Kurzke has violated his TSCIP Agreement, dated March 19, 2015, at least because ███████████████████████████████. *See* Elman Decl., Ex. 2, 12.

158. The Former Employees have also breached their Employment or TSCIPA Agreement under the DTSA and CUTSA by disclosing the CZMI TRADE SECRETS.

159. Mr. Hoffmeyer's agreement is not governed by California law. Mr. Hoffmeyer's agreement is governed by North Carolina law where he resides.

160. Mr. Hoffmeyer has a non-interference clause in his Employment Agreement that is not governed by California law.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

161. Mr. Hoffmeyer has interfered with CZMI in violation of his Employment Agreement, including but not limited to soliciting customers, CZMI employees, vendors, and making negative comments about CZMI.

162. Mr. Hoffmeyer has disrupted, damaged, impaired or interfered with the business of CZMI, including but not limited to soliciting customers, CZMI employees, and making negative comments about CZMI.

163. Joseph Ciccanesi has a non-solicitation clause in his Non-Solicitation and Confidential Information Protection Agreement that is not governed by California law.

164. Mr. Ciccanesi has solicited in violation of his Agreement, including but not limited to engaging in the marketing or distribution of a TOPCON ophthalmic software used for the diagnoses and/or treatment of ocular diseases which is an at least an adequate substitute for the CZMI ODx PRODUCTS.

165. Mr. Ciccanesi has solicited in violation of his Agreement, including but not limited to engaging in the marketing or distribution of a TOPCON ophthalmic software used for the diagnoses and/or treatment of ocular diseases which is (or could reasonably anticipated to be) marketed or distributed in such a manner and in such a geographic area as to actually compete with the CZMI ODx PRODUCTS.

166. Mr. Ciccanesi has solicited in violation of his Agreement, including but not limited to engaging in the marketing or distribution of a TOPCON ophthalmic software designed to allow viewing, manipulation, integration or any other uses of images or information that is derived from CZMI ophthalmic, surgical or radiotherapy devices on a computer network, internal web site, electronic medical record system, hand held device or any other modality which is an at least an adequate substitute for the CZMI ODx PRODUCTS.

167. Mr. Ciccanesi has solicited in violation of his Agreement, including but not limited to engaging in the marketing or distribution of a TOPCON ophthalmic software designed to allow viewing, manipulation, integration or any other uses of images or information that is derived from CZMI ophthalmic, surgical or radiotherapy devices on a computer network, internal web site,

electronic medical record system, hand held device or any other modality is (or could reasonably anticipated to be) marketed or distributed in such a manner and in such a geographic area as to actually compete with the CZMI ODx PRODUCTS.

## I. CZMI's Efforts to Thwart the Scheme

168.    CZMI contacted Topcon and all of these employees in February and March 2019 to remind them of the signed employment and/or confidentiality agreements with CZMI and ongoing confidentiality obligations.

169.    On March 11, 2019, CZMI's outside counsel contacted the President of Topcon Medical to inform him of CZMI's concerns, even prior to many of the events described above.

170.    Despite letters and phone conversations, no one at Topcon or representing Topcon disputed CZMI's contentions.  Topcon evaded substantively responding to CZMI's contentions at all.  On information and belief, Topcon has not stopped its efforts to unfairly compete in the ODx product space or confirm to CZMI that it has taken such steps to prevent any misappropriation of CZMI's trade secret, confidential or proprietary information.

171.    CZMI's outside counsel also contacted all of the Former Employees to inform them of their contractual obligations (except for Dr. Chen, who left CZMI later).  Only Mr. Hoffmeyer responded with a self-serving letter that failed to sufficiently confirm he was abiding by his obligations.

172.    On information and belief, none of the Former Employees has taken any affirmative steps to demonstrate that they are in compliance with their obligations to CZMI.

## J. CZMI Will Be Greatly Harmed If Topcon Commercializes a Competing Product

173.    CZMI is a well-known innovator in the ophthalmology industry, among many industries.  It has spent decades developing the technology in ODx that was shared with the eight Former Employees who worked there for over 60 years collectively.  If Defendants are not enjoined from bringing competitive ODx products to the market, it will cause severe and irreparable harm to CZMI.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

174.     All of the Former Employees recognize the value of the technology that they were granted access to and signed employment and confidentiality agreements acknowledging the same.

175.     CZMI goes to great lengths to protect its trade secrets and confidential information.  CZMI is at risk if Defendants are allowed to use this information and destroy the trade secret and confidential nature of this information.

176.     CZMI brings this action to preserve its valuable rights, to prevent Defendants from unfairly competing by developing products using CZMI's TRADE SECRETS and Confidential Information, to obtain injunctive relief already recognized by the Former Employees, as well as compensation for any damages based on Defendants' wrongful conduct.

## FIRST CAUSE OF ACTION

**Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act (DTSA),**

**18 U.S.C. §§ 1836-1839 et seq.**

**(All Defendants)**

177.     CZMI incorporates all of the above paragraphs as though fully set forth herein.

178.     CZMI owns and possesses certain trade secret, confidential, and proprietary information that is protected by the DTSA, as alleged above as Trade Secrets Nos. 1-115, and the citations to Elman Decl., Exs. 1, and 20-26.  Such information includes the exact technology of Glaucoma Workplace utilizing the FORUM software application, as well as sales and marketing information related to CZMI's ODx Products.

179.     CZMI took reasonable steps to protect and maintain the secrecy of its trade secrets and confidential information, including corporate policies and requiring its employees to agree to keep such information confidential in the Employment and/or TSCIP Agreements.  *See* Elman Decl., Exs. 11-19.

180.     CZMI's trade secret and confidential information relates to products and services used in interstate and foreign commerce.  The CZMI TRADE SECRETS derive independent economic value from not being generally known to, and not being readily ascertainable through

proper means by, another person who could obtain economic value from the disclosure or use of the information.

181. In violation of CZMI's rights under the DTSA, 18 U.S.C. § 1836, Defendants misappropriated CZMI's trade secret, confidential, and proprietary information in the improper and unlawful manner alleged herein. Defendants' misappropriation of the CZMI TRADE SECRETS was intentional, knowing, willful, malicious, fraudulent, and oppressive.

182. As the direct and proximate result of Defendants' conduct, CZMI has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial pursuant to 18 U.S.C. § 1836(b)(3)(B).

183. Pursuant to 18 U.S.C. § 1836(b)(3)(A), because CZMI's remedy at law is inadequate, CZMI seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information and to protect other legitimate business interests. CZMI's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

184. CZMI is entitled to an award of exemplary damages and attorneys' fees.

## SECOND CAUSE OF ACTION

**Aiding and Abetting Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1836-1839 et seq.**

**(All Defendants)**

185. CZMI incorporates all of the above paragraphs as though fully set forth therein.

186. CZMI owns and possesses certain trade secret, confidential, and proprietary information that is protected by the DTSA, as alleged above as Trade Secrets Nos. 1-115, and the citations to Elman Decl., Exs. 1, and 20-26. Such information includes the exact technology of Glaucoma Workplace utilizing the FORUM software application, as well as sales and marketing information related to CZMI's ODx Products.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

187.     CZMI took reasonable steps to protect and maintain the secrecy of its trade secrets and confidential information, including corporate policies and requiring its employees to agree to keep such information confidential in the Employment and/or TSCIP Agreements. *See* Elman Decl., Exs. 11-19.

188.     CZMI's trade secret and confidential information relates to products and services used in interstate and foreign commerce.  The CZMI TRADE SECRETS derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

189.     In violation of CZMI's rights under the DTSA, 18 U.S.C. § 1836, Defendants misappropriated CZMI's trade secrets, confidential, and proprietary information in the improper and unlawful manner alleged herein.  Defendants' misappropriation of the CZMI TRADE SECRETS was intentional, knowing, willful, malicious, fraudulent, and oppressive.

190.     Defendants aided and abetted the misappropriation by the other Defendants within the meaning of 18 U.S.C. § 1836, to the benefit of Topcon.

191.     As the direct and proximate result of Defendants' misappropriation, CZMI has suffered damage within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(I) in an amount not yet determined, and if Defendants' conduct is not stopped, CZMI will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.

192.     Pursuant to 18 U.S.C. § 1836(b)(3)(A), because CZMI's remedy at law is inadequate, CZMI seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information and to protect other legitimate business interests.  CZMI's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

193.     CZMI is entitled to an award of exemplary damages and attorneys' fees.

### **THIRD CAUSE OF ACTION**

**Trade Secret Misappropriation Under the California Uniform Trade Secrets Act (CUTSA),**

**Cal. Civ. Code § 3426, et seq.**

**(All Defendants)**

194.     CZMI incorporates all of the above paragraphs as though fully set forth herein.

195.     CZMI owns and possesses certain trade secret, confidential, and proprietary information that is protected by the CUTSA, as alleged above as Trade Secrets Nos. 1-115, and the citations to Elman Decl., Exs. 1, and 20-26.  Such information includes the exact technology of Glaucoma Workplace utilizing the FORUM software application, as well as sales and marketing information related to CZMI's ODx Products.

196.     CZMI's trade secret, confidential, and proprietary information is the subject of efforts that are reasonable under the circumstances to maintain the secrecy, including corporate policies and requiring its employees to agree to keep such information confidential in the Employment and/or TSCIP Agreements.  *See* Elman Decl., Exs. 11-19.

197.     The CZMI TRADE SECRETS derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

198.     In violation of CZMI's rights, Defendants misappropriated CZMI's trade secret, confidential, and proprietary information in the improper and unlawful manner alleged herein. Defendants' misappropriation of the CZMI TRADE SECRETS was intentional, knowing, willful, malicious, fraudulent, and oppressive.

199.     As the direct and proximate result of Defendants' conduct, CZMI has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because CZMI's remedy at law is inadequate, CZMI seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information and to protect other legitimate business interests.  CZMI's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

200.     Pursuant to California Civil Code § 3426.2, CZMI is entitled to an injunction against the misappropriation and continued threatened misappropriation of trade secrets as alleged

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

herein and further asks the Court to restrain Defendants from using all trade secret information misappropriated from CZMI and to return all trade secret information to CZMI.

201.    CZMI has a substantial likelihood of success on the merits because of Defendants' blatant misappropriation of trade secrets as set forth herein.

202.    Defendants' conduct was willful, malicious and fraudulent.  CZMI is entitled to exemplary damages under California Civil Code § 3426.3(c).

203.    CZMI is entitled to an award of attorneys' fees for Defendants' misappropriation of trade secrets, pursuant to California Civil Code § 3426.4.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Against Tobias Kurzke, Greg Hoffmeyer, Genevieve Fay, Katalin Spencer, Terry Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi, and Michael Chen)

204.    CZMI incorporates all of the above paragraphs as though fully set forth herein.

205.    The Employment Agreements for Greg Hoffmeyer, Genevieve Fay, Katalin Spencer Charles Guibord, Jr., and Joseph Ciccanesi, are valid and enforceable.

206.    The TSCIP Agreements for Tobias Kurzke, Terry Keith Brock and Michael Chen are valid and enforceable.

207.    Pursuant to the applicable Employment and TSCIP Agreements, Tobias Kurzke, Greg Hoffmeyer, Genevieve Fay, Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi, Katalin Spencer and Michael Chen (the "Former Employees") agreed not to disclose or divulge, directly or indirectly, any of CZMI's trade secret, confidential or proprietary information.

208.    The agreements signed by Mr. Hoffmeyer and Mr. Ciccanesi are not governed by California law.  For any of the other employees who no longer reside in California, California law may be inapplicable to them as well.

209.    The Former Employees breached the Employment and TSCIP Agreements by improperly acquiring, using, and/or disclosing CZMI's trade secret, confidential or proprietary information as defined by their respective agreements with CZMI

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

210.     Upon information and belief, the Former Employees are still in possession of CZMI's trade secret, confidential or proprietary information, including but not limited to ▮ ▮. *See* Elman Decl., Ex. 3.

211.     The Former Employees' breaches are not excused and cannot be remedied, and will continue until enjoined.

212.     Mr. Hoffmeyer is in violation of the non-interference provisions of his agreement with CZMI.

213.     Mr. Ciccanesi is in violation of the non-compete provisions of his agreement with CZMI.

214.     As a direct and proximate result of the Former Employees' breach of the Employment and TSCIPA Agreements, CZMI has been and is being harmed.  CZMI is entitled to damages in an amount to be determined at trial.  CZMI is further entitled to injunctive relief against the Former Employees remedying their past improper conduct and preventing such conduct in the future.

## **FIFTH CAUSE OF ACTION**

### **Patent Infringement**

### **(Topcon)**

215.     CZMI hereby repeats and incorporates by reference the allegations of the preceding paragraphs as set forth above.

216.     Topcon has infringed at least Claim 1 of the '251 Patent in violation of 35 U.S.C. § 271(a).  *See* Elman Decl., Exs. 3, 4, 33.  Topcon's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.  Topcon's acts of making, using, testing, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of CZMI.  Topcon's infringement includes the manufacture, use, testing, sale, importation and/or offer for sale of Topcon's products and services, including Topcon's Glaucoma Module products.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

217. Topcon has been aware of the '251 Patent, and has acted recklessly and egregiously with conduct that is wanton, malicious, bad-faith, deliberate, wrongful, and flagrant by its continued infringing activity despite possessing specific knowledge of its infringement of the '251 Patent. Topcon has had specific knowledge and notice of its infringement of the '251 Patent since at least in or about December 20, 2019, when CZMI specifically identified and described products made, used, or sold by Defendants as infringing the '251 Patent.

218. On information and belief, despite its knowledge of the '251 Patent and its knowledge of its own infringement of that patent since at least in or about December 20, 2019, Topcon made no effort to design its products or services around the '251 Patent in order to avoid infringement. All of these actions demonstrate Defendants' blatant and egregious disregard for CZMI's patent rights.

## SIXTH CAUSE OF ACTION

### Tortious Interference With Prospective Economic Advantage

### (Topcon, Tobias Kurkze, Greg Hoffmeyer, Genevieve Fay, Terry Keith Brock, Charles Guibord, Jr., Joseph Ciccanesi, and Michael Chen)

219. CZMI incorporates paragraphs 1, 17-52, and 139-176 as though fully set forth herein. CZMI expressly does not incorporate the other paragraphs of this Third Amended Complaint, as this cause of action is separately and independently actionable.

220. CZMI has contracts and economic relationships with its customers, prospective customers and others in the ODx space in the highly competitive ophthalmic diagnostics industry. These contracts and economic relationships are of economic benefit to CZMI and contain the likelihood of future economic advantages to CZMI.

221. Defendants Topcon, Kurzke, Hoffmeyer, Fay, Brock, Guibord, Jr., Ciccanesi and Chen all have knowledge that CZMI has contractual relationships with customers, prospective customers, and others in the ODx space.

222. Defendants Kurzke, Hoffmeyer, Fay, Brock, Guibord, Jr., Ciccanesi and Chen all worked in roles for CZMI where they had contact with CZMI customers, prospective customers,

and others in the ODx space, such as consultants like Dr. Hood.  On information and belief, these defendants are still in contact with many CZMI customers, prospective customers, and others in the ODx space.

223.    The Former Employees had used this knowledge while part of CZMI, and Topcon had used this knowledge as a competitor to CZMI.

224.    Defendants Topcon, Kurzke, Hoffmeyer, Fay, Brock, Guibord, Jr., Ciccanesi and Chen tortiously interfered with CZMI's prospective economic advantage of this knowledge by intentionally communicating with CZMI's customers, potential customers, and others in the ODx space that CZMI's contracts could be manipulated, could be avoided, could be ignored, that CZMI was an "evil empire" in the ODx industry, and other negative actions towards CZMI.

225.    Defendants Topcon, Kurzke, Hoffmeyer, Fay, Brock, Guibord, Jr., Ciccanesi and Chen tortiously interfered with the prospective economic advantage of this knowledge by intentionally communicating with CZMI's customers, potential customers, and others in the ODx space because the Former Employees joined Topcon directly from CZMI, and in conjunction with other former CZMI employees, communicated that CZMI's contracts could be manipulated, could be avoided, could be ignored, that CZMI was an "evil empire" in the ODx industry, and other negative actions towards CZMI.

226.    Defendants Topcon, Kurzke, Hoffmeyer, Fay, Brock, Guibord, Jr., Ciccanesi and Chen tortiously interfered with the prospective economic advantage of this knowledge by intentionally communicating with CZMI's customers, potential customers, and others in the ODx space at meetings, trade shows and conferences ██████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████.

227.    These efforts constitute a separate and actionable violation under California common law beyond the prior causes of action related to CZMI TRADE SECRETS or CZMI Confidential Information.

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

228. As the direct and proximate result of Defendants' conduct, CZMI has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, CZMI respectfully requests the following relief:

229. Judgment in CZMI's favor and against Defendants on all causes of action alleged herein;

230. For damages in an amount to be further determined at trial;

231. For preliminary and permanent injunctive relief to 1) prevent the Former Employees from working on Topcon's ODx Products, 2) prevent the disclosure and use of CZMI TRADE SECRETS and CZMI Confidential Information, 3) prevent the destruction and deletion of any of the CZMI TRADE SECRETS currently in Topcon's possession, and 4) mandate the return of all CZMI TRADE SECRETS and CZMI Confidential Information. ███████████████████████████████████████.

232. For punitive damages;

233. For restitution;

234. For costs of suit incurred herein;

235. For prejudgment interest;

236. For attorneys' fees and costs; and

237. For such other and further relief as the Court may deem to be just and proper.

## **DEMAND FOR JURY TRIAL**

CZMI hereby demands trial by jury for all causes of action, claims or issues in this action that are triable as a matter of right to a jury.

Dated: April 3, 2020            Respectfully submitted,

WHITE & CASE LLP
BIJAL V. VAKIL
JEREMY T. ELMAN
JONATHAN E. KLAREN

WHITE & CASE LLP
PALO ALTO
ATTORNEYS AT LAW

[CORRECTED] THIRD AMENDED COMPLAINT
CASE NO: 4:19-cv-04162-SBA

DORSEY & WHITNEY LLP
JESSICA L. LINEHAN

/s/ Jeremy T. Elman

Attorneys for Plaintiff
Carl Zeiss Meditec, Inc.