UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CARL ZEISS MEDITEC, INC.**,<br><br>Plaintiff,<br><br>v.<br><br>**TOPCON MEDICAL SYSTEMS, INC.**, *et al.*,<br><br>Defendants. | Case No. 4:19-cv-04162-YGR<br><br>**PRETRIAL ORDER NO. 1**<br><br>Re: Dkt. Nos. 566 & 570 |

This Order resolves the outstanding dispute between the parties[1] concerning the identification of the trade secrets upon which the pending counts are based.

By way of background, the Corrected Fourth Amended Complaint ("C4AC") identifies three claims for misappropriation of trade secrets (Counts 1-3), two contract claims (Counts 4-5), and a copyright infringement claim (Count 6). (*See generally* Dkt. No. 483-3 (redacted).) Through the discovery process, plaintiff Carl Zeiss Meditec, Inc. ("Zeiss") has filed numerous disclosures identifying the trade secrets upon which their misappropriation claims are based. Following plaintiff's Fourth Supplemental Disclosure of Trade Secrets and the resulting discovery dispute, the Court instructed the parties to meet and confer on the trade secrets that form the basis of Counts 1-3. Following such discussions, plaintiff reduced the number of trade secrets they claim from seventy-three (73) to five (5).  As set forth in the Fifth Supplemental Disclosure of Trade Secrets, the five trade secrets are numbered as follows: Trade Secrets Nos. 1, 31, 46, 64, and 72. (*See* Dkt. No. 550-10 (redacted).) Of these five trade secrets, two (Trade Secrets Nos. 31 and 46)

---

[1] Defendants Topcon Medical Systems, Inc., Topcon Healthcare Solutions, Inc., and certain identified employees are collectively referred to as "Topcon."

To the extent there are references in this Order to information or documents which the parties have requested be seal, such requests are denied solely as to this Order on the grounds that the Court determines that its specific references thereto in this Order do not warrant sealing.

are disputed by Topcon.

Pending before the Court are letter briefs from Zeiss and Topcon regarding these two disputed trade secrets and the relevant discovery conducted thereto. Having carefully reviewed parties' letter briefs as well as their supporting materials and for the reasons given herein, the Court **FINDS** that plaintiff's proposed Trade Secret No. 31 does not constitute a trade secret as a matter of law, and the Court **STRIKES** plaintiff's proposed Trade Secret No. 46 as a procedurally improper attempt to insert a newly proposed trade secret into the instant proceedings. Accordingly, only Trade Secrets numbered 1, 64 and 72 will form the factual basis of Zeiss' underlying trade secret claims.

*   *   *

The instant dispute is but the latest attempt to articulate plaintiff's alleged trade secrets in a clear and actionable list.

In January 2023, the Court declined to expand the scope of a previously imposed injunction on the grounds that the relief sought was outside of the allegations contained in the Third Amended Complaint. (Dkt. No. 450.)  The Court granted leave for plaintiffs to amend the Fourth Amendment Complaint to address shortcomings with the motion identified by the Court. (*Id.*) Plaintiffs were admonished, however, to specifically address the trade secrets they believe were implicated in the allegedly improper conduct by Topcon. (*Id.*) Plaintiffs subsequently submitted a renewed motion for preliminary injunction in which they sought to respond to the Court's prior order by specifying the at-issue trade secrets. (Dkt. No. 482.)

At the March 10, 2023 hearing held on plaintiff's motion, the Court explained at length how plaintiff had largely failed to allege actionable trade secrets. (*See, e.g.*, Dkt. No. 519, Hearing Transcript at 104.) Counsel for plaintiff responded, "I certainly understand your explanation now . . . . it's perfectly clear," and remarked that he was "happy to" work with defendants to narrow the list of 73 alleged trade secrets in the Fourth Supplemental Disclosure of Trade Secrets to reflect only those alleged trade secrets plaintiff would seek to present at trial. (*See id.* at 106-08.)

Despite counsel's emphatic assurances that plaintiff would meet and confer with defendants to revise the list of disclosed trade secrets, plaintiff did not do so. It rebuffed

2

defendants' attempts to meet and served the Fifth Amended Disclosure of Trade Secrets on March 23, 2023, the day before opening expert reports were due.[2] (Dkt. No. 528.) Topcon subsequently filed a request for a case management conference to discuss plaintiff's Fifth Supplemental Disclosure of Trade Secrets and its impact on the pleadings. (*Id.*) The request asserted, among other things, that Topcon was prejudiced by Zeiss' filing of the Fifth Supplemental Disclosure of Trade Secrets so close in time to previously scheduled expert report and other discovery deadlines. (*Id.* at 3:9-17.) The Court subsequently scheduled a further case management conference for May 8, 2023. (Dkt. No. 541.)

Prior to that case management conference, the parties timely filed a joint statement regarding the Fifth Supplemental Disclosure of Trade Secrets. (Dkt. No. 550.) Topcon asserted therein that each of the five alleged trade secrets comprising the Fifth Supplemental Disclosure of Trade Secrets were "a departure from Zeiss' [Fourth Supplemental Disclosure of Trade Secrets]" but stated that they did not oppose Trade Secrets Nos. 1, 64, and 72. (*See generally id.* at 2-3.) Plaintiff rejected defendants' characterization of the Fifth Supplemental Disclosure of Trade Secrets "as injecting new trade secrets." (*Id.* at 6:11.)

///

---

[2] Though having multiple opportunities to do so, plaintiff has not challenged defendants' rendition of these events.

The Court notes that the parties have also disputed the trade secret disclosures before Magistrate Judge Beeler. On April 3, 2023, parties submitted a joint discovery letter brief regarding whether Zeiss' Fifth Supplemental Disclosure of Trade Secrets should be struck. Dkt. No. 533. Topcon generally contested the validity of the Fifth Supplemental Disclosure of Trade Secrets and sought an order limiting the scope of expert discovery to the trade secrets disclosed in the Fourth Supplemental Disclosure of Trade Secrets. *Id.* at 1. Zeiss rebuffed Topcon, arguing that the Fifth Supplemental Disclosure of Trade Secrets was "expressly requested" by this Court and taking the position that the Disclosure did not contain new secrets and instead represented a distillation of prior trade secret disclosures. *Id.* at 3-4.

Magistrate Judge Beeler responded in an order dated April 10, 2023. *See* Dkt. No. 540. That order noted that "parties have directed their opening expert reports at different trade-secret lists" as a result of "Zeiss [ ] [having] served its fifth disclosure on March 23 – one day before opening reports were due . . . ." *Id.* at 2. Magistrate Judge Beeler ordered the parties to "meet and confer more about a narrowed trade-secret list" and offered some guidance regarding the disclosures contained in the Fifth Supplemental Disclosure of Trade Secrets. *Id.* at 3-4.

After parties were unable to resolve the outstanding dispute concerning the Fifth Supplemental Disclosure of Trade Secrets at the May 8, 2023 conference, the Court ordered them to submit letter briefs on the two trade secret disclosures in dispute. (Dkt. No. 567.) Before the Court are those letter briefs with respect to Trade Secrets Nos. 31 and 46. The Court addresses each in turn.

**Trade Secret No. 31**. Zeiss' Fifth Supplemental Disclosure of Trade Secrets describes Trade Secret No. 31 as follows:

> The specific proprietary and confidential requirements and processes for creating and verifying a HFA Report (10-2 OD/OS, 10-2-HFAIIi, 24-2 OD/OS, 24-2 HFAIIi, 30-2 HFAIIi), described in TPCN_0012269.

(Dkt. No. 550-10 (redacted).) Notwithstanding this disclosure came on the last day of discovery, plaintiff *again* attempts to further revise[3] this trade secret in their letter brief to read:

> The specific proprietary and confidential requirements and processes for creating ~~and verifying~~ an S~~H~~FA[4] Report (10-2 OD/OS, 10-2-HFAIIi, 24-2 OD/OS, 24-2 HFAIIi, 30-2 HFAIIi), described in CZMI867-79 and TPCN_0012269.

(Dkt. No. 570, Pl.'s Letter Brief at 1) (tracking in red the revisions proposed in plaintiff's letter brief).

The parties' positions from each's letter brief are summarized as follows:

Topcon argues that Trade Secret 31 should be struck in its entirety for three reasons. First, defendants take issue with the identification of a trade secret by reference to a third-party document. (Dkt. No. 566, Def.'s Letter Brief at 1.) More particularly, Topcon argues "Zeiss is attempting to claim as its own trade secret the method developed by Topcon's contractor, Calcey, for extracting data off a PDF copy of an HFA report," namely a spreadsheet Calcey created,

---

[3] Plaintiff explains their further revisions were made "[b]ased on Judge Beeler's guidance, and upon meeting and conferring with Topcon, and as proposed [at the last case management conference.]" Pl.'s Letter Brief at 1. Further, the joint statement submitted prior to the May 8, 2023 case management conference explained that parties had agreed to swap "SFA" for "HFA" and to remove the word "verifying." Dkt. No. 550, Joint Case Management Statement at 7.

[4] "SFA" refers to a "Single Field Analysis," which is a type of Humphrey Field Analyzer ("HFA") report. *See* Dkt. No. 566, Defs.' Letter Brief at 1. The HFA is a device created by plaintiff that assists providers seeking to diagnose and treat significant issues related to glaucoma. C4AC ¶ 43 (redacted).

4

TPCN_0012269 (hereinafter, "Calcey Document"). (*Id.*) Second, defendants contend the "parameters and corresponding values"[5] contained in the Calcey Document cannot be Zeiss confidential information since they "are thoroughly taught by Zeiss in its manuals so that doctors know how to read HFA reports and diagnose patients," and are therefore public information. (Def.'s Letter Brief at 2.) Third, Topcon asserts the fifth formulation of Trade Secret No. 31 "has nothing in common with the prior version" and should therefore be rejected. (*Id.*) Defendants do not respond to the additional revisions plaintiff suggests in their letter brief.

Plaintiff makes three points in defense of Trade Secret No. 31. First, defendant has allegedly "incorrectly questioned the citation to" the Calcey Document. (Pl.'s Letter Brief at 1.) Second, the reference to CZMI867-79 (hereinafter, the "Specifications Document") in plaintiff's most recent revision of Trade Secret No. 31 is appropriate since it provides helpful context for the trade secret and has been "continuously cited" in plaintiff's papers since 2019. (*Id.* at 1-2.) Third, the Specifications Document "discloses how Zeiss creates the features that are contained in the Calcey document." (*Id.* at 2.)

The Court finds plaintiff's defense of Trade Secret No. 31 unpersuasive for three reasons. First, parties concede the Calcey Document, which Zeiss seeks to incorporate by reference into Trade Secret No. 31, was created by a subcontractor of Topcon, not by Zeiss. As a threshold matter, it strains credulity that a document created not by claimant but by a third party gives rise to an actionable trade secret. Such a document by definition is not secret to Zeiss and therefore does not give rise to an actionable secret. *See DVD Copy Control Assn., Inc. v. Bunner*, 31 Cal.4th 864, 881 (2003) ("Trade secrets['] . . . . only value consists in their being kept private.") (internal quotations & citations omitted).

---

[5] Defendants acknowledge in their letter brief that Zeiss's expert, Dr. Daft, was asked during a deposition to identify Zeiss confidential information reflected in the Calcey Document and could only point to a cell in the first tab of the spreadsheet specifying "that the extraction should proceed 'within 10 seconds.'" *See* Def.'s Letter Brief at 1 (citation omitted). The expert further suggested new technologies would not be valuable to Zeiss' competitors unless it facilitated data extraction from Zeiss reports in ten seconds or less as that is what consumers would require, and therefore that mention of the timing threshold renders the Calcey Document a Zeiss trade secret. Dkt. No. 565-14 (sealed version of Dr. Daft deposition transcripts, appended to Defs.' Letter Brief as Ex. 6, at 135:17-136:20).

Second, deposition testimony from Zeiss' expert that the Calcey Document contains Zeiss confidential information is unavailing. Defendants acknowledge that Zeiss' expert identified as Zeiss confidential information certain text in the Calcey Document stating that data extraction from SFA/HFA reports should be completed within 10 seconds. (Defs.' Letter Brief at 1.) In relevant part, the expert opined that, "The Zeiss . . . trade secret 31 [is] the performance specifications," such as the time it takes Topcon's solution to extract data from Zeiss' reports. (Dkt. No. 565-14 (sealed version of Dr. Daft deposition transcripts, appended to Defs.' Letter Brief as Ex. 6, at 134:20-135:1-4).) Yet, the expert simultaneously admitted that Zeiss does not engage in such data extraction since it is able to use the underlying raw data. (*See id.* at 137.) Thus, the testimony from Zeiss' expert, even if credited, addresses a timing requirement for a technological process (data extraction) which would only apply to Topcon, not Zeiss. Thus, Zeiss has failed to allege a trade secret that it, itself, practices or holds. *See, e.g.*, Cal. Civil Code § 3426.1(d) (defining "trade secret" under California law to refer to information, including methods or processes, of an entity that the entity derives value from and keeps private).

Third, Zeiss' attempt to add a cross-reference to the Specifications Document in its most recent iteration of Trade Secret No. 31 reads as an unconvincing attempt to salvage their otherwise flawed trade secret disclosure at the last possible moment and without affording defendant the opportunity to respond. By contrast to the Calcey Document, which was not created by Zeiss, the Specifications Document was prepared by Zeiss and sets forth the requirements for creating and formatting SFA/HFA reports. (*See* Dkt. No. 569-8 (sealed version of the Specifications Document, appended to Pl.'s Letter Brief as Ex. C).) Inclusion of a cross-reference to this document is inappropriate because, as stated above, there is a meaningful difference between the process by which Zeiss *generates* such reports and the process by which Topcon allegedly *extracts data* from the resulting PDFs. The Specifications Document addresses only the former and is not alleged to implicate the latter. Since Zeiss does not contend that Topcon generates SFA/HFA reports, it is unclear how the Specifications Document could be cited alongside the Calcey Document as reflecting the same confidential Zeiss processes.

///

As plaintiff's articulation of "Trade Secret No. 31" suffers from numerous flaws, the Court finds Trade Secret No. 31 fails to state an actionable trade secret and should, on those grounds, be struck.[6]

**Trade Secret No. 46**. Zeiss' Fifth Supplemental Disclosure of Trade Secrets identifies Trade Secret No. 46 as follows:

> Proprietary and confidential exportable, encrypted OCT data structures and formats to be analyzed in reports using common media types (PDF, EXPS, or XML) that can be decrypted by the IMG Export Software[7] that is expressed at CSMI0176117-119.

(Dkt. No. 550-10 (redacted).)

Defendants' argument is fundamentally that Trade Secret No. 46 concerns *the output data* of certain Zeiss algorithms, which cannot constitute a trade secret as such data is publicly and routinely disclosed. (Def.'s Letter Brief at 2.) Defendants correctly note that counsel for plaintiff conceded the same. In its own words, Zeiss previously represented that Trade Secret No. 46 claims "the OCT data that Zeiss exports in a raw encrypted format." (*See* Dkt. 550, Joint Case Management Statement at 8:11; *see also* Pl.'s Letter Brief at 2 ("This trade secret relates to the data structures that result from applying the algorithm identified in Trade Secret 72 . . . in reverse, to encrypt data, which can then be decrypted by that algorithm . . . .").) In other words, plaintiff seeks to claim as a trade secret the *output* of their algorithm, including the format of the output data.

Plaintiffs defend Trade Secret No. 46 on different grounds. They note that Topcon has previously objected to Trade Secret No. 46 because "encryption, as opposed to decryption, had not been sufficiently disclosed in prior trade secret disclosures." (*Id.*) Zeiss further asserts that encryption and decryption were disclosed in Zeiss' Fourth Supplemental Disclosure of Trade Secrets at Nos. 72 and 73 and that "all experts . . . were deposed on both encryption and

---

[6] The Court need not reach other arguments raised by the parties. For instance, plaintiff rejects defendants' earlier request to strike the word "processes" from Trade Secret No. 31, which defendant does not renew in their letter brief. *See, e.g.*, Pl.'s Letter Brief at 1.

[7] "IMG Export Software (comprised of the IMG License source code and IMG Encryption source code)" is a type of software provided by Zeiss to certain third parties for the purposes of decoding report data. *See* C4AC ¶ 68 (redacted).

decryption." (*Id.*) Plaintiff avers there is no meaningful difference between encryption and decryption since they "use the same algorithm, just run in different directions" and invokes authorities suggesting that use of a modified trade secret, such as in the context of decryption vs. encryption, may trigger liability. (*See id.* at 2 (citing to an Eastern District of Missouri case and the Restatement (First) of Torts for the proposition).) Lastly, Zeiss contends that Trade Secret No. 46 "is a counterpart to Trade Secret 72, and a revision of Trade Secret 73 . . . ."[8] (*Id.* at 3.)

The Court agrees with defendants that plaintiff's proposed Trade Secret No. 46 refers to the *outputs* of Zeiss' algorithms rather than the *methods* by which such algorithms operate. This much is clear from the plain text of the trade secret as identified by plaintiff.

The Court next considers whether Zeiss has previously identified a trade secret claiming the output of their algorithm. Zeiss claims their proposed Trade Secret No. 46 is an aggregation of earlier versions of Trade Secrets Nos. 72 and 73 which read:

> **Trade Secret No. 72:** Decrypting raw OCT data from Cirrus devices into standard image format so that it can be viewed outside of the CZMI environment.
> **Trade Secret No. 73:** Enabling the comparison of encrypted raw OCT data from Cirrus devices to decrypted OCT data in standard image format.

(*See* Dkt. No. 565-4 (sealed version of plaintiff's Fourth Trade Secret Disclosure, appended to Def.'s Letter Brief as Ex. 1).)

The Court finds plaintiff's reference to earlier Trade Secrets Nos. 72 and 73 as a means to save Trade Secret 46 unavailing. These previously claimed trade secrets do not refer to outputs. Instead, they refer to processes of encryption and decryption. As plaintiff points to no other earlier trade secret disclosures as encompassing proposed Trade Secret No. 46, the Court determines that Trade Secret No. 46 represents an attempt by plaintiff to claim a new trade secret.[9]

---

[8] Plaintiff views Trade Secret No. 46 as relating to "the encrypted format of Zeiss' internal [ ] files resulting from using Zeiss'' proprietary algorithm to establish an encryption," whereas Trade Secret No. 72 "is addressed to the proprietary algorithm itself." Pl.'s Letter Brief at 3.

[9] The notion that plaintiff may have disclosed proposed Trade Secret No. 46 in the context of making its source code available to Topcon is without merit. First and foremost, the Court considers whether the content of proposed Trade Secret No. 46 has been previously identified as a trade secret by Zeiss. It has not. Second, and as a factual matter, source code perhaps offers a window into *how* outputs are generated by algorithms but not the nature of the outputs themselves. It therefore strains credulity to assert that Topcon was on notice of proposed Trade Secret No. 46

This bald effort to reframe the scope of plaintiff's trade secret claims is both late and prejudicial. Discovery closed. Dispositive motions are in process and trial is approaching. Furthermore, plaintiff has already stated they do not intend to claim such outputs as a trade secret.[10] In light of this, the Court sees no reason to permit an about face on this key point at such a late stage in the instant proceedings.

*    *    *

For the foregoing reasons and based upon the repeated briefing on these issues, and further, to expedite and streamline the next phase of this litigation with a "just, speedy, and inexpensive determination" of this issue, the Court **FINDS** plaintiff's identification of Trade Secrets No. 31 without basis as a matter of law and **STRIKES** plaintiff's proposed Trade Secret No. 46 as an improper attempt to introduce a new trade secret into the proceedings after discovery has closed. *See* Fed. R. Civ. P. 1. Accordingly, Trade Secrets Nos. 31 and 46 cannot form the basis of plaintiff's trade secrets claims set forth in the C4AC. Plaintiff's trade secrets claim is therefore limited in scope to the undisputed trade secrets identified in plaintiff's Fifth Supplemental Disclosure of Trade Secrets and numbered 1, 64, and 72.

---

simply by having access to Zeiss' source code.

[10] While the procedural analysis is dispositive, the Court notes that plaintiff's failure to explain why the *outputs* of their algorithm constitute a trade secret as a matter of law is another ground on which their proposed Trade Secret No. 46 could be struck.

Zeiss' letter brief does not establish, as a threshold matter, how such outputs constitute a trade secret. Nor has plaintiff previously done so. In fact, they explicitly stated on the record that they do not claim such outputs as a trade secret and do not explain this flip flop. *See* Dkt. No. 572, Transcript of Proceedings held on May 8, 2023 at 18:9-13.

The Court suspects Zeiss' failure to plainly address how the outputs constitute a trade secret is indicative of the weaknesses of such a claim. Being distributed widely to Zeiss customers and affiliated researchers, the outputs would not appear secret to Zeiss. While it may be that the outputs are confidential to Zeiss or even proprietary information, this does not mean they are automatically trade secrets. In the absence of any filing setting forth Zeiss' view on how proposed Trade Secret No. 46 constitutes a trade secret and in light of the weaknesses with such a claim identified here, the Court finds an alternative ground exists for striking proposed Trade Secret No. 46 on the basis that it does not state an actionable trade secret as a matter of law.

**IT IS SO ORDERED.**

Dated: June 22, 2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**